**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| RCS CAPITAL CORPORATION, *et. al.* | Case No. 16-10223 (MFW) |
| Debtors.[1] | (Jointly Administered) |
| | <u>Confirmation Hearing Date</u>: **May 2, 2016 at 2:00 p.m. (ET)** |
| | <u>Confirmation Objection Deadline</u>: **April 22, 2016 at 4:00 p.m. (ET)** |

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT,**
**(II) DEADLINE FOR VOTING ON THE PLAN, (III) HEARING TO**
**CONSIDER CONFIRMATION OF THE PLAN, AND (IV) DEADLINE FOR**
<u>**FILING OBJECTIONS TO CONFIRMATION OF THE PLAN**</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

<u>APPROVAL OF DISCLOSURE STATEMENT</u>

1.      By Order dated March 21, 2016 [Docket No. 361] (the "**Initial Disclosure Statement Order**") and Order dated March 24, 2016 [Docket No. 381] (the "**Amended Disclosure Statement Order**" and together with the Initial Disclosure Statement Order, the "**Disclosure Statement Order**"), the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") approved the *Disclosure Statement With Respect to Second Amended Joint Plan of Reorganization for RCS Capital Corporation and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* attached as <u>Exhibit A</u> to the Amended Disclosure Statement Order (including all exhibits thereto and as amended, modified, or supplemented from time to time, the "**Disclosure Statement**") as containing adequate information within the meaning of section 1125 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), and authorized the Debtors to solicit votes to accept or reject the *Second Amended Joint Plan of Reorganization for RCS Capital Corporation and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* (including all exhibits thereto and amended, modified, or supplemented from time to time, the "**Plan**"), annexed as <u>Exhibit 1</u> to the Disclosure Statement.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement Order, as applicable.

<u>RELEASE, INJUNCTION AND EXCULPATION PROVISIONS CONTAINED IN PLAN</u>

2.      **PLEASE TAKE FURTHER NOTICE THAT ARTICLE XII OF THE PLAN CONTAINS CERTAIN RELEASE, INJUNCTION AND EXCULPATION PROVISIONS, WHICH ARE SET FORTH BELOW.  YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, INJUNCTION AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: RCS Capital Corporation (4716); American National Stock Transfer, LLC (3206); Braves Acquisition, LLC (6437); DirectVest, LLC (9461); J.P. Turner & Company Capital Management, LLC (7535); RCS Advisory Services, LLC (4319); RCS Capital Holdings, LLC (9238); Realty Capital Securities, LLC (0821); SBSI Insurance Agency of Texas, Inc. (9203); SK Research, LLC (4613); Trupoly, LLC (5836); and We R Crowdfunding, LLC (9785).  The Debtors' corporate headquarters and mailing address is located at 405 Park Avenue, 12th Floor, New York, NY 10022.

3. **Section 10.2 of the Plan contains the following settlement provision:**

To the extent applicable, pursuant to Bankruptcy Rule 9019, and in consideration for the classification, Distribution[2] and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against any Released Party,[3] arising out of, relating to or in connection with the business or affairs of or transactions with the Debtors.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.  The provisions of the Plan, including, without limitation, its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

4. **Section 10.3 of the Plan contains the following discharge provision:**

*Except as otherwise provided in the Plan or the Confirmation Order, upon the Effective Date and in consideration of the rights afforded herein and the payments and Distributions to be made hereunder, each holder (as well as any trustees and agents on behalf of each holder) of a Claim against the Debtors or an Interest in the Debtors shall be deemed to have forever waived, released and discharged such Claim or Interest.  On the Effective Date, all holders of such Claims and Interests shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim or Interest against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, the Creditor Trust,[4] the Creditor Trust Administrator,[5] the Creditor Trust Board,[6] or any of their assets or properties based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Interest.*

*Except as otherwise provided herein or in the Confirmation Order, all Persons who have held, now hold or may hold Claims against any of the Debtors or Interests in any of the Debtors and all other parties in interest, along with their respective present and former Representatives,[7] are permanently enjoined, from and after*

---

[2]   "**Distribution**" means a distribution provided for in the Plan by the Disbursing Agent or the Creditor Trust Administrator, as applicable, to holders of Allowed Claims in full or partial satisfaction of such Allowed Claims, and shall include distributions made by the Creditor Trust in respect of the Class A Units and Class B Units, as the context requires.

[3]   "**Released Parties**" means, collectively and individually, (a) the Debtors and Reorganized Debtors, (b) the employees of the Debtors (other than directors and officers) who are employed as of the Petition Date and do not voluntarily relinquish their positions as of a date prior to the Effective Date without the consent of the Company (c) the officers and directors of the Debtors who are employed or serving in such capacity as of the Effective Date, (d) officers and directors of the Debtors who are employed or serving in such capacity at any time following the Petition Date and terminated without cause prior to the Effective Date, (e) (i) Barclays Bank PLC, as the First Lien Agent, and (ii) the First Lien Lenders, (f) (i) Bank of America, N.A., as former Second Lien Agent, (ii) Wilmington Trust, National Association as successor Second Lien Agent, and (iii) the Second Lien Lenders, (g) Luxor and its officers, directors, agents, and principals, including in their capacity as officers and/or directors of the Debtors (to the extent employed as officers or directors as of the Petition Date), (h) the Convertible Notes Indenture Trustee, (i) the DIP Agent and DIP Secured Parties, (j) the Committee and its members (solely in their capacity as such), and (k) Representatives of each of the parties listed in clauses (a) through (j) provided, however, that Released Parties shall not include Excluded Parties and parties subject to Non-Released Causes of Action.

[4]   "**Creditor Trust**" means the trust to be established on the Effective Date by the Debtors or the Reorganized Debtors, as applicable, pursuant to the Plan for the benefit of holders of Allowed General Unsecured Claims and Allowed Second Lien Deficiency Claims, as described in more detail in Sections 4.3, 4.5, 5.17, and 6.11 of the Plan.

[5]   "**Creditor Trust Administrator**" means the administrator identified in the Plan Supplement to administer the Creditor Trust in accordance with the terms hereof and the Creditor Trust Agreement, which administrator shall be mutually acceptable to the Debtors, the Committee, and Luxor.

[6]   "**Creditor Trust Board**" has the meaning set forth in Section 5.17(j) of the Plan.

[7]   "**Representatives**" means, with respect to any Person and its Affiliates, such Person's or Affiliates' respective Affiliates, predecessors, successors, and assigns (whether by operation of law or otherwise), and with respect to any of the foregoing any officers, directors, principals, employees, subsidiaries, members, partners, managers, agents, attorneys, advisors, investment bankers, financial advisors, accountants or other professional of such Person or Affiliate, in each case in such capacity.

*the Effective Date, from: (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to such Claim or Interest against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, the Creditor Trust, the Creditor Trust Administrator, or the Creditor Trust Board (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, the Creditor Trust, the Creditor Trust Administrator, or the Creditor Trust Board with respect to such Claim or Interest; (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, the Creditor Trust, the Creditor Trust Administrator, or the Creditor Trust Board, or against the property or interests in property of the Debtors, their Estates, the Reorganized Debtors, the Released Parties, the Creditor Trust, the Creditor Trust Administrator, or the Creditor Trust Board with respect to such Claim or Interest; or (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligations due from the Debtors, their Estates, the Reorganized Debtors, the Released Parties, the Creditor Trust, the Creditor Trust Administrator, or the Creditor Trust Board, with respect to such Claim or Interest. Such injunction shall extend to any successors of the Debtors, their Estates, the Reorganized Debtors, the Released Parties, the Creditor Trust, the Creditor Trust Administrator, the Creditor Trust Board and their respective properties and interest in properties.*

5.      **Section 10.8 of the Plan contains the following injunctive provision:**

*Except as otherwise expressly provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtors or the Debtors' Estates are, with respect to any such Claims or Interests, permanently enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Reorganized Debtors, the Creditor Trust Administrator, the Creditor Trust, the Creditor Trust Board, the Creditor Trust Assets,[8] the Debtors' Estates or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, the Reorganized Debtors, the Creditor Trust Administrator, the Creditor Trust, the Creditor Trust Board, the Creditor Trust Assets, or the Debtors' Estates or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Reorganized Debtors, the Creditor Trust Administrator, the Creditor Trust, the Creditor Trust Board, the Creditor Trust Assets, or the Debtors' Estates or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained in the Plan shall preclude such Persons from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of the Plan, provided further, however, that nothing in the Plan shall (a) enjoin or otherwise impact the continued prosecution of the claims and causes of action asserted or that could be asserted against any non-Debtor in the Securities Litigation[9]; (b) preclude the lead plaintiffs in the Securities Litigation from conducting discovery of the Reorganized Debtors, including seeking production of documents from the Reorganized Debtors through a third-party subpoena with respect to any documents in the possession, custody, or control of the Reorganized Debtors or their agents; or (c) preclude the lead plaintiffs and/or the putative classes in the Securities Litigation from seeking any required relief from the Bankruptcy Court authorizing recovery on account of their Securities Litigation*

---

8      "**Creditor Trust Assets**" means (i) all Creditor Assets, (ii) all proceeds of Creditor Assets, including interest thereon accruing from and after the Effective Date, (iii) all Litigation Assets, and (iv) all Litigation Asset Proceeds, including interest thereon accruing from and after the Effective Date.

9      "**Securities Litigation**" means the ARCP Securities Litigation and the Weston Securities Litigation.

*Claims[10] from the Debtors and/or from any insurance company providing coverage to the Debtors, solely to the extent of available insurance coverage and any proceeds thereof. Nothing herein shall alter the Bankruptcy Court's reservation of jurisdiction pursuant to Section 12.1 of the Plan. For the avoidance of doubt, any recoveries on account of such Securities Litigation Claims against the Debtors shall be limited to, and any payments or settlements shall only be provided by available insurance coverage, if any, and no action shall be taken to collect any portion of any settlement, judgment, or other costs from the assets or properties of the Debtors or the Reorganized Debtors. For the further avoidance of doubt, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities discharged pursuant to Section 10.3 of the Plan, released pursuant to Section 10.6 of the Plan, or exculpated pursuant to Section 10.7 of the Plan.*

6.   **Section 10.6 of the Plan contains the following releases:**

*(a)   Without limiting any other applicable provisions of, or releases contained in, the Plan, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, for good and valuable consideration, including the Distributions to be made hereunder, the Debtors and the Reorganized Debtors, on behalf of themselves and their Affiliates, the Estates and their respective Representatives, successors, assigns and any and all entities who may purport to claim by, through, for or because of them shall forever release, waive and discharge all Causes of Action that they have, or had against any Released Party (the "Company Released Causes of Action") except with respect to any obligations arising under the Plan, the Definitive Documents[11] that by their terms survive the Effective Date, and any applicable orders of the Bankruptcy Court or other court of competent jurisdiction in the Chapter 11 Cases; provided, however, that the foregoing provisions shall have no effect on the liability of any entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted fraud, theft or willful misconduct.*

*(b)   As of the Effective Date, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plan and the Cash, contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each holder of a Claim (solely in its capacity as such) (i) whose Claim is Unimpaired by the Plan, (ii) that has voted to accept the Plan, or (iii) that has voted to reject the Plan but has not checked the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan, (provided that the each of the parties to the RSA[12] are and shall be deemed to elect to grant the releases provided in the Plan if the RSA has not terminated in accordance with its terms), will be deemed to forever release, waive and discharge all Causes of Action in any way relating to a Debtor, the Chapter 11 Cases, the Estates, the Plan, the exhibits to the Plan, the Plan Supplement, the Disclosure Statement, the RSA and the Term Sheets, the First Lien Facility,[13] the Second Lien Facility[14] or the Convertible Notes Indenture[15] that such Person*

---

10   "**Securities Litigation Claims**" means all Claims against any of the Debtors asserted by the lead plaintiffs or putative classes in the Securities Litigation, which Claims shall be classified in Class 7 or Class 10 as provided herein.

11   "**Definitive Documents**" means the Disclosure Statement, this Plan, the New Corporate Governance Documents, the Exit Credit Documents, the New Second Lien Credit Documents, the New Warrant Agreement, the Shareholders' Agreement, any other documents comprising the Plan Supplement, the Confirmation Order and all related implementing documents, agreements, exhibits, annexes and schedules (as such documents may be amended, modified or supplemented from time to time in accordance with the terms hereof and the RSA), reflecting the transactions embodied herein and otherwise which, unless a different approval standard is specified herein, shall be in form and substance reasonably acceptable to the Debtors, the Required Consenting Lenders, and, to the extent set forth in the RSA, Luxor, and with respect to the New Warrant Agreement, the Creditor Trust Agreement, the list of Excluded Parties, and the Litigation Assets Description, the Committee.

12   "**RSA**" or "**Restructuring Support Agreement**" means the Restructuring Support Agreement, dated as of January 29, 2016, among the Debtors, the Non-RCS Affiliates, certain Non-Debtor Affiliates, the First Lien Agent, the Required Consenting First Lien Lenders, the Second Lien Agent, the Required Consenting Second Lien Lenders and Luxor, as the same may be amended or otherwise modified in accordance with its terms, and the Term Sheets attached as exhibits thereto, attached as Exhibit B to the Declaration of David Orlofsky, Chief Restructuring Officer of RCS Capital Corporation, in Support of Chapter 11 Petitions and First Day Motions [ECF No. 17].

13   "**First Lien Facility**" means collectively the First Lien Credit Agreement together with all other "Loan Documents" as defined in the First Lien Credit Agreement.

14   "**Second Lien Facility**" means collectively the Second Lien Credit Agreement together with all other "Loan Documents" as defined in the Second Lien Credit Agreement.

*has, had or may have against any Released Party or their representatives or any employees, agents or partners of the Debtors (which release will be in addition to the discharge of Claims provided herein and under the Confirmation Order and the Bankruptcy Code), except with respect to any obligations arising under the Plan, the Exit Credit Documents,[16] the New Second Lien Credit Documents,[17] or any of the Definitive Documents that by their terms survive the Effective Date, or any act, event, injury, omission, transaction, or agreement arising after the Effective Date (other than Causes of Action relating to such act, event, injury, omission, transaction or agreement first arising or occurring prior to the Effective Date); provided, however, that the foregoing provisions will have no effect on the liability of any entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted fraud, theft or willful misconduct. For the avoidance of doubt, the foregoing release shall not release or enjoin the claims and causes of action asserted, or that could be asserted, against any non-Debtor in the Securities Litigation.*

*Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, of the releases in Sections 10.6(a) and (b) of the Plan, which includes, by reference, each of the related provisions and definitions contained herein and, further, will constitute the Bankruptcy Court's finding that such releases are (i) in exchange for the good and valuable consideration provided by the Debtors and the other Released Parties, representing a good faith settlement and compromise of the Claims released herein, (ii) in the best interests of the Debtors and all holders of Claims, (iii) fair, equitable, and reasonable, (iv) approved after due notice and opportunity for hearing, and (v) a bar to any of the releasing parties asserting any Claim released by the releasing parties against any of the Debtors or the other Released Parties or their respective property.*

*Each Person to which Sections 10.6(a) and/or (b) apply shall be deemed to have granted the releases set forth in those Sections notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of execution of the release.*

7.    **Section 10.7 of the Plan contains the following Exculpation and Limitation of Liability:**

*From and after the Effective Date, the Exculpated Parties[18] will neither have nor incur any liability to any entity, and no holder of a Claim or Interest, no other party in interest and none of their respective Representatives, shall have any right of action against any Exculpated Party, for any act taken or omitted to be taken in connection with, related to or arising out of the Chapter 11 Cases or the consideration, formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the exhibits to the Plan, the Plan Supplement, the Disclosure Statement, any transaction proposed in connection with the Chapter 11 Cases*

---

15    "**Convertible Notes Indenture**" means that certain Convertible Notes Indenture, dated as of April 29, 2014, among Holdings and the Convertible Notes Indenture Trustee (as further amended, restated, amended and restated, supplemented or otherwise modified from time to time).

16    "**Exit Credit Documents**" means the Exit Credit Agreement and all loan, guarantee, and security documents, intercreditor agreements, and all other agreements, instruments or documents relating to the Exit Facility, in form and substance acceptable to the Exit Facility Agent and the Exit Facility Lenders, reasonably acceptable to the Debtors, and consistent with the Exit Facility Term Sheet, in each case, as the same may be amended, restated, supplemented or otherwise modified from time to time.

17    "**New Second Lien Credit Documents**" means the New Second Lien Credit Agreement and all loan, guarantee, and security documents, intercreditor agreements, and all other agreements, instruments or documents relating to the New Second Lien Facility, which shall be in form and substance acceptable to the New Second Lien Facility Agent and the New Second Lien Facility Lenders, reasonably acceptable to the Debtors, and consistent with the New Second Lien Facility Term Sheet, in each case, as the same may be amended, restated, supplemented or otherwise modified from time to time.

18    "**Exculpated Parties**" means the Debtors and their predecessors, successors, and assigns (whether by operation of law or otherwise) other than Excluded Parties, the Committee and each of its members in their capacity as members of the Committee, and with respect to each of the foregoing, their respective officers, directors, principals, employees, subsidiaries, members, partners, managers, agents, attorneys, advisors, investment bankers, financial advisors, accountants or other professionals serving in such capacities during the period from the Petition Date up to and including the Effective Date.

*or any contract, instrument, release, or other agreement or document created or entered into or any other act taken or omitted to be taken, in connection therewith; provided, however, that the foregoing provisions will have no effect on:  (a) the liability of any entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan or (b) the liability of any entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted fraud, gross negligence or willful misconduct.*

### SUMMARY OF PLAN TREATMENT OF CLAIMS AND INTERESTS

8.      The following table designates the Classes of Claims against and Interests in the Debtors, for all purposes, including voting, confirmation and Distributions pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The following table specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to accept or reject the Plan.  A Claim or Interest will be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class; provided, however, that any Claim classified in Class 6 shall not be classified in any other Class.  A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date.

9.      **As described in Article XI of the Disclosure Statement, the Debtors' businesses are subject to a number of risks.  The uncertainties and risks related to the Reorganized Debtors make it difficult to determine a precise value of the Reorganized Debtors and distributions under the Plan.  The recoveries and estimates described in the following table represent the Debtors' best estimates given the information available on the date of the Disclosure Statement.  All statements herein relating to the amount of Claims and Interests are only estimates based on information known to the Debtors as of the date of the Disclosure Statement, and the final amounts of Allowed Claims may vary significantly from these estimates.**  In accordance with section 1123(a)(1) of the Bankruptcy Code, General Administrative Claims, DIP Claims, Professional Fee Claims, U.S. Trustee Fees, and Priority Tax Claims have not been classified.  Except as specifically noted therein, the Plan does not provide for payment of postpetition interest with respect to Allowed Claims.

| Class | Designation | Impairment | Recovery[19] and Treatment | Entitled to Vote |
|-------|-------------|------------|----------------------------|------------------|
| Class 1 | Priority Claims | No | 100%<br><br>The Debtors estimate that there will be up to approximately $2 million of Allowed Priority Claims.<br><br>Except to the extent that a holder of an Allowed Priority Claim agrees to a less favorable treatment, each holder of an Allowed Priority Claim will receive, in full satisfaction, settlement, release, and discharge of, and in exchange for such Priority Claim, Cash in the full amount of such Allowed Priority Claim on the Effective Date or, if later, the first Business Day after the date such Priority Claim becomes | No (deemed to accept) |

---

19  For a discussion of the estimated ranges of recovery rates, see Section 8.1(c) of the Disclosure Statement, "Creditors' Estimated Recovery Rates," of this Disclosure Statement.

| Class | Designation | Impairment | Recovery[19] and Treatment | Entitled to Vote |
|---|---|---|---|---|
| | | | Allowed. | |
| Class 2 | First Lien Claims | Yes | 90% to 100%[20]<br><br>The First Lien Claims as of the Petition Date will be Allowed in the aggregate amount of $556.0 million.[21]<br><br>On the Effective Date, (i) in exchange for and in full satisfaction, settlement, release, and discharge of its Pro Rata share of $50 million of the aggregate amount of Allowed First Lien Claims, each holder of an Allowed First Lien Claim shall receive its Pro Rata Share of 38.75% of the Reorganized Holdings Equity Interests, and (ii) in exchange for and in full satisfaction, settlement, release, and discharge of its Pro Rata share of $500 million of the aggregate amount of Allowed First Lien Claims, each holder of an Allowed First Lien Claim shall receive its Pro Rata share of the New Second Lien Facility.<br><br>In addition, holders of Allowed First Lien Claims may receive a Distribution from the Creditor Trust pursuant to Section 5.17(s) of the Plan. | Yes |
| Class 3 | Second Lien Claims | Yes | 0% to 36%<br><br>The Second Lien Claims will be Allowed in the aggregate amount of $153.2 million, with $50 million of such Allowed Claims to be treated as Secured Second Lien Claims and $103.2 million to be treated as Second Lien Deficiency Claims.<br><br>On the Effective Date (i) in exchange for and in full satisfaction, settlement, release, and discharge of its Pro Rata share of the aggregate Allowed Secured Second Lien Claims, each holder of an Allowed Second Lien Claim shall receive its Pro Rata Share of 38.75% of the Reorganized Holdings Equity Interests, and (ii) in exchange for and in full satisfaction, settlement, release, and discharge of its Pro Rata share of the aggregate Allowed Second Lien | Yes |

---

20  The 90-100% estimated recovery for holders of First Lien Claims is based solely on the face value of the New Second Lien Facility and does not reflect the implied or expected trading value of the New Second Lien Facility.

21  Notwithstanding the Allowed amount of the First Lien Claims, solely to the extent of their treatment under the Plan, the amount of the First Lien Claims will be deemed to be $550 million.  Agreement to this treatment under the Plan shall not be deemed a waiver or admission that the holders of First Lien Claims are in any way not entitled to the full value of their Claims for any other purpose.

| Class | Designation | Impairment | Recovery[1] and Treatment | Entitled to Vote |
|---|---|---|---|---|
| | | | Deficiency Claims, each holder of an Allowed Second Lien Claim will receive its Pro Rata share of Class B Units, entitling the holders thereof to receive a share of the distributions of the Litigation Asset Proceeds allocated to the holders of Class B Units pursuant to the Creditor Trust Distribution Schedule.  For the avoidance of doubt, holders of Allowed Second Lien Claims, subject to Section 5.17(s) of the Plan, will waive all rights to and will not receive any distributions of Creditor Assets or the proceeds thereof from the Creditor Trust.<br><br>In addition, holders of Allowed Second Lien Claims may receive a Distribution from the Creditor Trust on account of their Secured Second Lien Claims pursuant to Section 5.17(s) of the Plan. | |
| Class 4 | Other Secured Claims | No | 100%<br><br>The Debtors estimate that Other Secured Claims will be *de minimis*.<br><br>Unless a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Other Secured Claim, on the Effective Date, each Allowed Other Secured Claim shall be Reinstated, or, at the option of the Debtors or the Reorganized Debtors with the consent of the Required Consenting Lenders, each holder of an Allowed Other Secured Claim shall receive, either (i) Cash in the full amount of such Allowed Other Secured Claim, including any postpetition interest Allowed pursuant to section 506(b) of the Bankruptcy Code, (ii) the net proceeds of the sale or disposition of the collateral securing such Allowed Other Secured Claim to the extent of the value of the holder's secured interest in such collateral, (iii) the collateral securing such Allowed Other Secured Claim, or (iv) such other Distribution as necessary to satisfy the requirements of section 1129 of the Bankruptcy Code on account of such Allowed Other Secured Claim. | No (deemed to accept) |

| Class | Designation | Impairment | Recovery²¹ and Treatment | Entitled to Vote |
|-------|-------------|------------|--------------------------|------------------|
| Class 5 | General Unsecured Claims | Yes | 9%²² <br><br> On the Effective Date, each holder of an Allowed General Unsecured Claim, in exchange for and in full satisfaction, settlement, release, and discharge of such Allowed General Unsecured Claim, shall be deemed to receive its Pro Rata share of Class A Units, entitling the holders thereof to receive a share of the Creditor Trust Assets allocated to holders of General Unsecured Claims in accordance with the Creditor Trust Distribution Schedule and Section 6.11 of the Plan. Each holder of a General Unsecured Claim shall be permitted to reduce its Claim to $2,000 and receive, in lieu of the Distribution provided to holders of Claims in Class 5, Distribution as if the Claim is a Class 6 Convenience Class Claim. | Yes |
| Class 6 | Convenience Class | No | 100% <br><br> Each holder of an Allowed Convenience Class Claim will receive in exchange for and in full satisfaction, settlement, release, and discharge of such Allowed Convenience Class Claim, payment in full in Cash from the Reorganized Debtors on or as soon as reasonably practicable after the Effective Date in an amount not to exceed $2,000. | No (deemed to accept) |
| Class 7 | Subordinated Claims | Yes | Each holder of a Subordinated Claim shall receive no Distribution. | No (deemed to reject) |
| Class 8 | Intercompany Claims | No | On the Effective Date, each Intercompany Claim shall be reinstated or extinguished in the discretion of the Debtors with the written consent of the Required Consenting Lenders. | No (deemed to accept) |
| Class 9 | Intercompany Interests | No | On the Effective Date, each Class 9 Intercompany Interest will be Reinstated. | No (deemed to accept) |
| Class 10 | Holdings Equity Interests and Purchase-Related Claims | Yes | Each holder of a Holdings Equity Interest or Claim against Holdings in the Weston Securities Litigation shall receive no Distribution on account of such Interest or Claim. All Holdings Equity Interests will be deemed cancelled as of | No (deemed to reject) |

---

22 The 9% projected recovery on account of General Unsecured Claims is based on (i) approximately $171.4 million in claims and (ii) $16 million (cash and new warrants) in assets available for distributions, without taking into account the value of litigation assets and costs of administration of the Creditors Trust.

| Class | Designation | Impairment | Recovery* and Treatment | Entitled to Vote |
|-------|-------------|------------|-------------------------|------------------|
| | | | the Effective Date. | |

The recoveries set forth above are estimates and are contingent upon approval of the Plan as proposed.

## CONFIRMATION HEARING

10.     On **May 2, 2016 at 2:00 p.m. (Eastern Time)**, or as soon thereafter as counsel may be heard, a hearing (the "**Confirmation Hearing**") will be held before the Honorable Mary F. Walrath in the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 5th Floor, Courtroom No. 4, Wilmington, DE 19801 to consider confirmation of the Plan, as the same may be amended, modified, or supplemented from time to time, and for such other and further relief as may be just.  The Confirmation Hearing may be adjourned from time to time without further notice to creditors or other parties in interest, other than by an announcement of such an adjournment in open court at the Confirmation Hearing or any adjournment thereof or the filing of a notice or hearing agenda providing for the adjournment on the docket of the chapter 11 cases with the Bankruptcy Court.  The Plan may be modified in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Plan, and other applicable law, without further notice, prior to or as a result of the Confirmation Hearing.

## DEADLINE FOR OBJECTIONS TO CONFIRMATION OF THE PLAN

11.     Objections, if any, to confirmation of the Plan, including any supporting memoranda, must be in writing, filed with the Clerk of the Bankruptcy Court, 3rd Floor, 824 N. Market Street, Wilmington, DE 19801 together with proof of service, and shall:  (a) be made in writing; (b) state with particularity the legal and factual ground therefor, and, unless impracticable, propose modification to the Plan that would resolve such objection; (c) conform to the Bankruptcy Rules and Local Rules; and (d) be served by hand delivery or in a manner as will cause such objection to be **received** on or before **April 22, 2016 at 4:00 p.m. (Eastern Time)** by:  (i) Dechert, LLP, 1095 Avenue of the Americas, New York, NY 10036 (Attn.: Shmuel Vasser [shmuel.vasser@dechert.com] and Stephen M. Wolpert [stephen.wolpert@dechert.com], co-counsel to the Debtors; (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N. King Street, Wilmington, DE 19801 (Attn.: Robert S. Brady [rbrady@ycst.com] and Robert F. Poppiti, Jr. [rpoppiti@ycst.com]), co-counsel to the Debtors; (iii) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn.: Linda Casey [linda.casey@usdoj.gov]); (iv) Jones Day LLP, 222 East 41st Street, New York, NY 10017 (Attn.: Scott Greenberg [sgreenberg@jonesday.com] and Stacey L. Corr-Irvine [scorrirvine@jonesday.com]), co-counsel to the Required Consenting First Lien Lenders; (v) Morris Nichols Arsht & Tunnell LLP, 1201 N. Market St., 16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347 (Attn.: Derek C. Abbott [dabbott@mnat.com] and Tamara K. Minott [tminott@mnat.com]), co-counsel to the Required Consenting First Lien Lenders; (vi) Shearman & Sterling LLP, 599 Lexington Avenue New York, NY 10022 (Attn.: Joel Moss [joel.moss@shearman.com]), co-counsel to the First Lien Agent; (vii) Richards, Layton & Finger, PA, One Rodney Square, 920 North King Street, Wilmington DE 19801 (Attn.: Mark D. Collins [collins@rlf.com] and Brendan J. Schlauch [schlauch@rlf.com]), co-counsel to the First Lien Agent; (viii) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn.: Timothy Graulich [timothy.graulich@davispolk.com], Natasha Tsiouris [natasha.tsiouris@davispolk.com], and David Schiff [david.schiff@davispolk.com], co-counsel to the Required Consenting Second Lien Lenders; (ix) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, DE 19801 (Attn.: Adam G. Landis [landis@lrclaw.com] and Matthew B. McGuire [mcguire@lrclaw.com]), co-counsel to the Required Consenting Second Lien Lenders; (x) Covington & Burling LLP, 620 Eighth Avenue, New York NY 10018 (Attn.: Ronald A. Hewitt [rhewitt@cov.com] and Alex Clark [aclark@cov.com]), co-counsel to the Second Lien Agent; (xi) Fox Rothschild LLP, Citizens Bank Center, 919 North Market Street, Suite 300, Wilmington DE 19899 (Attn.: Jeffrey Schlerf [jschlerf@foxrothschild.com] and L. John Bird [lbird@foxrothschild.com]), co-counsel to the Second Lien Agent; (xii) Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attn.: Stephen D. Zide [szide@kramerlevin.com] and Rachel Ringer [rringer@kramerlevin.com]), co-counsel to Luxor; (xiii) Ashby and Geddes, PA, 500 Delaware Avenue, P.O. Box 1150, Wilmington DE 19899 (Attn.: William P. Bowden

[wbowden@ashby-geddes.com]), co-counsel to Luxor; (xiv) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn.: David M. Feldman [dfeldman@gibsondunn.com] and Matthew K. Kelsey [mkelsey@gibsondunn.com]); co-counsel to the Official Committee of Unsecured Creditors appointed in the chapter 11 cases; and (xv) Klehr Harrison Harvey Branzburg LLP, 919 N. Market St., Suite 1000, Wilmington, DE 19801 (Attn.: Richard M. Beck [rbeck@klehr.com] and Sally E. Veghte [sveghte@khler.com]).  Any objections not filed and served as set forth above will not be considered by the Bankruptcy Court and shall be overruled and deemed waived.

12.     Copies of the Disclosure Statement Order, the Plan, and the Disclosure Statement are available for inspection on the Bankruptcy Court's website at http://ecf.deb.uscourts.gov.  A login and password to the Bankruptcy Court's Public Access to Electronic Court Records ("**PACER**") website are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov.  Copies of the Disclosure Statement Order, the Plan, and the Disclosure Statement may also be examined between the hours of 8:00 A.M. and 4:00 P.M., Monday through Friday at the Office of the Clerk of the Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801.  Copies may also be obtained online at the website of the Debtors' claims agent, Prime Clerk LLC, at http://cases.primeclerk.com/RCSCapital, or by request to Prime Clerk at the following addresses and telephone number:  RCS Capital Corporation Ballot Processing, c/o Prime Clerk LLC, 830 Third Avenue, 3rd Floor, New York, NY 10022; (844) 794-3476; RCSballots@primeclerk.com.

Dated:   March 24, 2016
        Wilmington, DE

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Ian J. Bambrick*
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Robert F. Poppiti, Jr. (No. 5052)
Ian J. Bambrick (No. 5455)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1256

and

DECHERT LLP
Michael J. Sage
Shmuel Vasser
Stephen M. Wolpert
Janet Bollinger Doherty
Andrew C. Harmeyer
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*COUNSEL TO THE DEBTORS AND DEBTORS-IN-POSSESSION*