**<u>Exhibit A</u>**

**Further Amended Creditor Trust Agreement**

01:18636713.1

**THE RCS CREDITOR TRUST**

**CREDITOR TRUST AGREEMENT**

**BY AND AMONG**

**THE CREDITOR TRUSTEES,**

**THE DELAWARE TRUSTEE,**

**RCS CAPITAL CORPORATION**

**AND**

**THE OTHER DEBTORS LISTED ON THE SIGNATURE PAGES HERETO**

[●], 2016

**DRAFT 5/9/2016**

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS ............................................................................................2
    1.1    Definitions Incorporated from the Plan ............................................. 2
    1.2    Other Definitions .............................................................................. 2
    1.3    Meanings of Other Terms ............................................................... 11

ARTICLE II CREATION OF CREDITOR TRUST ....................................................11
    2.1    Creation of Trust ............................................................................ 11
    2.2    Purpose of Creditor Trust ............................................................... 11
    2.3    Status of Creditor Trust and the Creditor Trust Board ................... 12
    2.4    Retention of Professionals .............................................................. 12
    2.5    Transfer of Creditor Trust Assets .................................................. 12
    2.6    Title to Creditor Trust Assets ........................................................ 15
    2.7    Valuation ......................................................................................... 15
    2.8    No Reversion to Debtors; Distribution of Remaining Assets ......... 15
    2.9    Fiscal Year ..................................................................................... 15
    2.10   Creditor Trust Budget .................................................................... 16
    2.11   Insurance ........................................................................................ 16
    2.12   Books and Records ......................................................................... 17
    2.13   No Interest or Accruals .................................................................. 17

ARTICLE III ISSUANCE OF UNITS .........................................................................17
    3.1    Number and Series of Units ............................................................ 17
    3.2    Issuance and Distribution of Units ................................................. 18
    3.3    Evidence of Units ........................................................................... 20
    3.4    Manner of Distribution of Units ..................................................... 20
    3.5    Transfers of Units; Absence of Market for Units .......................... 21
    3.6    Rights of Unitholders ..................................................................... 21
    3.7    Interest Beneficial Only ................................................................. 21
    3.8    Conflicting Claims .......................................................................... 22
    3.9    Unitholder Liability to Third Persons ............................................ 22
    3.10   Actions in the Right of the Creditor Trust ..................................... 22

ARTICLE IV DISTRIBUTIONS TO UNITHOLDERS; RIGHTS OFFERING.........22
    4.1    Distributions .................................................................................... 22
    4.2    [Reserved] ....................................................................................... 26
    4.3    Distribution Record Date; Distributable Creditor Trust Assets ...... 26
    4.4    Distributions in Respect of Disputed General Unsecured Claims ... 27
    4.5    Determinations of and Adjustments to Estimated Amounts ........... 28
    4.6    Withholding and Reporting Requirements ...................................... 29
    4.7    Disbursing Agent ........................................................................... 29
    4.8    Rights Offerings ............................................................................. 29
    4.9    Incurrence of Debt ......................................................................... 31

ARTICLE V BOARD OF TRUSTEES ................................................................................. 31
5.1    General .................................................................................................................. 31
5.2    Membership ........................................................................................................... 31
5.3    Compensation ........................................................................................................ 32
5.4    Authority ............................................................................................................... 32
5.5    Actions of the Creditor Trust Board ..................................................................... 35
5.6    Meetings ................................................................................................................ 35
5.7    Chairman of the Creditor Trust Board .................................................................. 36
5.8    Fiduciary Duty and Standard of Care ................................................................... 37

ARTICLE VI OPERATION OF THE CREDITOR TRUST ................................................. 37
6.1    Prohibited Activities ............................................................................................. 37
6.2    Resolution of Disputed General Unsecured Claims ............................................. 37
6.3    Disputed Claims Reserve ...................................................................................... 38
6.4    Creditor Trust Administrative Expense Reserve ................................................... 38
6.5    Creditor Trust Litigation Expense Reserve .......................................................... 40
6.6    Reporting and Access to Information .................................................................... 42
6.7    Creditor Trust Management ................................................................................... 43
6.8    Creditor Trust Agents ........................................................................................... 45

ARTICLE VII DELAWARE TRUSTEE .............................................................................. 45
7.1    Appointment .......................................................................................................... 45
7.2    Powers ................................................................................................................... 45
7.3    Compensation ........................................................................................................ 47
7.4    Duration and Replacement .................................................................................... 47

ARTICLE VIII TAX MATTERS ......................................................................................... 48
8.1    Tax Treatment ....................................................................................................... 48
8.2    Tax Reporting ........................................................................................................ 48
8.3    Tax Payment .......................................................................................................... 49

ARTICLE IX LIMITATION OF LIABILITY AND INDEMNIFICATION ....................... 50
9.1    Limitation of Liability ........................................................................................... 50
9.2    Indemnification ..................................................................................................... 51

ARTICLE X DURATION OF CREDITOR TRUST ............................................................ 52
10.1    Duration ............................................................................................................... 52
10.2    Post-Termination ................................................................................................. 52
10.3    Destruction of Books and Records ...................................................................... 53
10.4    Discharge ............................................................................................................. 53

ARTICLE XI MISCELLANEOUS PROVISIONS .............................................................. 53
11.1    Governing Law .................................................................................................... 53
11.2    Jurisdiction .......................................................................................................... 53
11.3    Severability .......................................................................................................... 53
11.4    Notices ................................................................................................................. 54
11.5    Headings .............................................................................................................. 54

| | | |
|---|---|---|
| 11.6 | Plan Documents | 54 |
| 11.7 | Confidentiality | 54 |
| 11.8 | Entire Creditor Trust Agreement | 55 |
| 11.9 | Named Party | 55 |
| 11.10 | Amendment | 56 |
| 11.11 | Counterparts | 57 |

**Exhibits and Schedules**

Exhibit A – Certificate of Trust


Schedule A – Creditor Trust Administrator Compensation

## THE RCS CREDITOR TRUST
## CREDITOR TRUST AGREEMENT

This Creditor Trust Agreement, dated as of [_____], 2016 (this "Creditor Trust Agreement"), is entered into by and among RCS Capital Corporation ("RCS"), American National Stock Transfer, LLC, Braves Acquisition, LLC, DirectVest, LLC, J.P. Turner & Company Capital Management, LLC, RCS Advisory Services, LLC, RCS Capital Holdings, LLC, Realty Capital Securities, LLC, SBSI Insurance Agency of Texas Inc., SK Research LLC, Trupoly, LLC and We R Crowdfunding, LLC (each as a debtor and debtor-in-possession, and collectively, the "Debtors"), and [_____], or its successor, as Delaware Trustee, and the Creditor Trustees whose names appear as such on the signature page to this Creditor Trust Agreement.

## RECITALS

A.     On January 31, 2016, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court (the "Bankruptcy Case").

B.     On or about February 1, 2016, the Debtors filed the Joint Plan of Reorganization for RCS Capital Corporation and its Affiliated Debtors under Chapter 11 of the Bankruptcy Code, and on or about February 5, 2016, the Debtors filed the related disclosure statement (as amended, revised and supplemented and as approved, the "Disclosure Statement").

C.     On or about March 21, 2016, the Bankruptcy Court approved the Disclosure Statement and on or about March 24, 2016, the Bankruptcy Court issued an amended order approving the Disclosure Statement as amended.

D.     On or about April 7, 2016, the Debtors filed the Revised Second Amended Joint Plan of Reorganization for RCS Capital Corporation and its Affiliated Debtors under Chapter 11 of the Bankruptcy Code (as amended, revised and supplemented and as confirmed, the "Plan") in connection with the motion to approve the Supplement to Disclosure Statement with Respect to Revised Second Amended Joint Plan of Reorganization for RCS Capital Corporation and its Affiliated Debtors under Chapter 11 of the Bankruptcy Code (as amended, revised and supplemented and as approved, the "Disclosure Statement Supplement").

E.     On or about April 11, 2016, the Bankruptcy Court approved the Disclosure Statement Supplement.

F.     On or about [DATE], the Bankruptcy Court issued an order confirming the Plan.

G.     As of the date of this Creditor Trust Agreement, the Effective Date of the Plan occurred.

H.     The Plan provides for a creditor trust (as so formed and administered   in accordance with the terms of this Creditor Trust Agreement, the "Creditor Trust") to liquidate and distribute the Creditor Trust Assets to holders of General Unsecured Claims and Second

Lien Deficiency Claims that are Allowed on the Effective Date or that become Allowed after the Effective Date.

I.    Upon the filing of the Certificate of Trust (as defined below), the Creditor Trust shall be formed.

J.    This Creditor Trust Agreement is being executed to establish and provide for the administration of the Creditor Trust and the liquidation and distribution of the Creditor Trust Assets as contemplated by the Plan, and to otherwise facilitate the implementation of the Plan.

K.    The Creditor Trust is intended to qualify as a liquidating trust, within the meaning of Treasury Regulations section 301.7701-4(d), to be treated as a "grantor trust" for federal income tax purposes, and to be exempt from the requirements of the Investment Company Act of 1940 pursuant to Section 3(c)(5) and Sections 7(a) and 7(b) thereof.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants contained herein, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

1.1    <u>Definitions Incorporated from the Plan</u>.  Other than the terms defined below or elsewhere in this Creditor Trust Agreement, capitalized terms shall have the meaning assigned to them in the Plan.

1.2    <u>Other Definitions</u>.

(a)    "**Accredited Investor**" has the meaning assigned to that term in Rule 506(a) promulgated under the Securities Act of 1933, as amended.

(b)    "**Allowed Amount**" means, with respect to any Allowed General Unsecured Claim (including a Disputed General Unsecured Claim to the extent it becomes Allowed) or Allowed Second Lien Deficiency Claim, the dollar amount of such Claim that is Allowed.

(c)    "**Allowed General Unsecured Claim**" means a General Unsecured Claim that is at any relevant time Allowed.

(d)    "**Allowed Second Lien Deficiency Claim**" means a Second Lien Deficiency Claim that is at any relevant time Allowed.

(e)    "**Business Day**" means any day other than a Saturday, Sunday or legal holiday on which the banks in the City of New York, Borough of Manhattan, or Wilmington, Delaware are authorized to remain closed.

(f)    "**Cause**" means, with respect to any Creditor Trustee,

(i)        such Creditor Trustee's conviction of a felony or any other crime involving moral turpitude; or

(ii)        any act or failure to act by such Creditor Trustee involving actual dishonesty, fraud, misrepresentation, theft or embezzlement; or

(iii)        such Creditor Trustee's willful and repeated failure to substantially perform his/her duties under this Creditor Trust Agreement and the Trust Act; or

(iv)        such Creditor Trustee's incapacity, such that s/he is unable to substantially perform his/her duties under this Creditor Trust Agreement and the Trust Act for more than ninety (90) consecutive days.

(g)        "**Certificate of Trust**" means the certificate of trust of the Creditor Trust as required by sections 3810 of the Trust Act, substantially in the form set forth in <u>Exhibit A</u> to this Creditor Trust Agreement, and filed in connection with the formation of the Creditor Trust.

(h)        "**Class**" means each of (i) the class of Units consisting of Class A Units, (ii) the class of Units consisting of Class B Units and (iii) the class of Units consisting of Class C Units, if any.

(i)        "**Class A Units**" means units of the class of beneficial interests in the Creditor Trust, consisting of twelve (12) Series, issued by the Creditor Trust that entitles the holder thereof to receive Distributable Creditor Trust Assets in the manner provided with respect to Class A Units under <u>Article IV</u>.  Each Series of Class A Units will be associated with a particular Debtor, and only holders of Allowed General Unsecured Claims against that Debtor will receive Class A Units of the Series associated with that Debtor.

(j)        "**Class B Units**" means units of the class of beneficial interests in the Creditor Trust issued by the Creditor Trust that entitles the holder thereof to receive Distributable Creditor Trust Assets from the Creditor Trust in the manner provided with respect to Class B Units under <u>Article IV</u>.

(k)        "**Class C Units**" means units of the class of beneficial interests in the Creditor Trust, consisting of one or more Series, issuable by the Creditor Trust upon exercise of Rights in a Rights Offering under <u>Article IV</u>.

(l)        "**Confidentiality Parties**" has the meaning assigned in <u>Section 11.7</u>.

(m)        "**Corresponding Debtor**" has the meaning assigned in <u>Section 3.1(b)</u>.

(n)        "**Creditor Assets**" means (i) the $15 million in Cash transferred to the Creditor Trust by the Debtors on the Effective Date and (ii) the New Warrants.

(o)        "**Creditor Trust"** has the meaning assigned in the Recitals.

(p)    "**Creditor Trust Administrative Expense Reserve**" means an amount of Cash, or other assets, set aside from time to time by or under the direction of the Creditor Trust Board for paying costs, fees and expenses, and reserving for liabilities, including contingent liabilities, of the Creditor Trust, other than for purposes of pursuing the Creditor Trust Causes of Action or otherwise pursuing, preserving or protecting the Litigation Assets, as provided in Section 6.4.

(q)    "**Creditor Trust Administrator**" means the officer of the Creditor Trust having primary executive responsibility for the Creditor Trust, as provided in Section 6.7.

(r)    "**Creditor Trust Agents**" means the advisors, professionals and other agents, including any disbursement agent, of the Creditor Trust appointed or engaged by the Creditor Trust Board or by Creditor Trust Management in accordance with the provisions of this Creditor Trust Agreement.

(s)    "**Creditor Trust Agreement**" has the meaning assigned in the Preamble.

(t)    "**Creditor Trust Assets**" means all property held from time to time by the Creditor Trust, including (i) all Creditor Assets, (ii) all proceeds of Creditor Assets, including interest thereon accruing from and after the Effective Date, (iii) all Litigation Assets (iv) all Litigation Asset Proceeds, including interest thereon accruing from and after the Effective Date, and (v) all Cash and non-Cash assets held in the Disputed Claims Reserve, the Creditor Trust Administrative Expense Reserve and the Creditor Trust Litigation Expense Reserve.

(u)    "**Creditor Trust Bailee**" has the meaning assigned in Section 2.5(b)(i).

(v)    "**Creditor Trust Beneficiaries**" means (i) the holders of Units and (ii) any holder of a Disputed General Unsecured Claim that may in the future be entitled to receive a distribution of Class A Units from the Disputed Claims Reserve.

(w)    "**Creditor Trust Board**" means the board consisting of the Creditor Trustees appointed to administer and oversee the affairs of the Creditor Trust, as provided in this Creditor Trust Agreement.

(x)    "**Creditor Trust Budget**" has the meaning assigned in Section 2.10(a).

(y)    "**Creditor Trust Causes of Action**" means any and all claims, causes of action, controversies, obligations, suits, judgments, damages, demands, debts, rights, preference actions, fraudulent conveyance actions and other claims or causes of action under sections 510, 544, 545, 546, 547, 548, 549, 550 and 553 of the Bankruptcy Code and other similar state law claims and causes of action, Liens, indemnities, guaranties, suits, liabilities, judgments, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, suspected or unsuspected, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before,

on, or after the Petition Date, in contract or in tort, arising in law, equity or pursuant to any other theory of law, in each case transferred to the Creditor Trust pursuant to the Plan.  For the avoidance of doubt, Creditor Trust Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim, in each case transferred to the Creditor Trust pursuant to the Plan.

(z)    "**Creditor Trust Litigation Expense Reserve**" means an amount of Cash, or other assets, set aside from time to time by or under the direction of the Creditor Trust Board for paying costs, fees and expenses of pursuing the Creditor Trust Causes of Action or otherwise pursuing, preserving or protecting the Litigation Assets.

(aa)    "**Creditor Trust Litigation Expense Sub-Reserve**" has the meaning assigned in Section 6.5(c)(i).

(bb)    "**Creditor Trust Management**" has the meaning assigned in Section 6.7(a).

(cc)    "**Creditor Trustee**" means each initial Creditor Trustee whose name appears as such on the signature page to this Creditor Trust Agreement and any member of the Creditor Trust Board subsequently appointed pursuant to Section 5.2(e).

(dd)    "**Debtors**" has the meaning assigned in the Preamble.

(ee)    "**Delaware Trustee**" means Wilmington Savings Fund Society, FSB, or its successor, which is appointed in accordance with this Creditor Trust Agreement to comply with the requirement of section 3807 of the Trust Act.

(ff)    "**Disputed Claims Estimation Date**" means the date on which the Estimated Amount has been determined for all Disputed General Unsecured Claims.

(gg)    "**Disputed Claims Reserve**" means the reserve of Class A Units maintained by the Creditor Trust, together with all Creditor Trust Assets theretofore distributed in respect of such Class A Units, for distribution to holders of Disputed General Unsecured Claims that are subsequently Allowed.

(hh)    "**Disputed General Unsecured Claims**" means General Unsecured Claims that at any relevant time are Disputed Claims.

(ii)    "**Distributable Creditor Trust Assets**" means the Distributable Creditor Trust RCS Assets and the Distributable Creditor Trust Litigation Assets, as the case may be.

(jj)    "**Distributable    Creditor    Trust    Litigation    Assets**" means    the Distributable Creditor Trust RCS Litigation Assets and the Distributable Creditor Trust RCS Debtor Subsidiary Litigation Assets.

(kk)    "**Distributable Creditor Trust RCS Assets**" means (x) Cash constituting Creditor Assets, other than Cash that the Creditor Trust Board has determined to allocate to the Creditor Trust Administrative Expense Reserve or the Creditor Trust Litigation Expense Reserve; (y) New Warrant Proceeds, other than Cash constituting New Warrant Proceeds that the Creditor Trust Board has determined by Unanimous Consent to allocate to the Creditor Trust Administrative Expense Reserve or the Creditor Trust Litigation Expense Reserve and (z) Cash constituting Creditor Assets and New Warrant Proceeds in each case previously allocated to the Creditor Trust Administrative Expense Reserve or the Creditor Trust Litigation Expense Reserve which the Creditor Trust Board has determined to withdraw from the Creditor Trust Administrative Expense Reserve or the Creditor Trust Litigation Expense Reserve for distribution to holders of Series A-1 Units.

(ll)    "**Distributable Creditor Trust RCS Debtor Subsidiary Litigation Assets**" means (x) Net Litigation Proceeds constituting RCS Debtor Subsidiary Litigation Assets other than such Net Litigation Proceeds allocated to the Creditor Trust Litigation Expense Reserve, (y) such Net Litigation Proceeds as were previously allocated to the Creditor Trust Litigation Expense Reserve that the Creditor Trust Board has determined to withdraw from the Creditor Trust Litigation Expense Reserve for distribution to Unitholders in accordance with Section 4.1(d) and (z) such amounts previously allocated to the Creditor Trust Litigation Expense Reserve and applied pursuant to Section 6.5(c)(v).

(mm)    "**Distributable Creditor Trust RCS Litigation Assets**" means (w) Net Litigation Proceeds constituting RCS Litigation Assets other than Net Litigation Proceeds allocated to the Creditor Trust Administrative Expense Reserve or the Creditor Trust Litigation Expense Reserve, (x) such Net Litigation Proceeds as were previously allocated to the Creditor Trust Administrative Expense Reserve or the Creditor Trust Litigation Expense Reserve that the Creditor Trust Board has determined to withdraw from the Creditor Trust Administrative Expense Reserve or the Creditor Trust Litigation Expense Reserve for distribution to Unitholders in accordance with Section 4.1(c), and (y) such amounts as were previously allocated to the Creditor Trust Administrative Expense Reserve or the Creditor Trust Litigation Expense Reserve and applied pursuant to Sections 6.4(c)(iv) or 6.5(c)(iv)(d).

(nn)    "**Distribution Date**" means any date, as determined by the Creditor Trust Board, on which the Creditor Trust makes a distribution of Distributable Creditor Trust Assets to Unitholders (including the Disputed Claims Reserve).

(oo)    "**Distribution Record Date**" means a date selected by the Creditor Trust Board preceding each Distribution Date, as the record date for determining the holders of Units (including the Disputed Claims Reserve) entitled to participate in the distribution on such Distribution Date.

(pp)    "**Estimated Amount**" means the estimated amount of a Disputed General Unsecured Claim, as determined by the Creditor Trust Board, which shall either be (i)

the amount as estimated by the Bankruptcy Court pursuant to an Estimation Order, (ii) pursuant to an order of the Bankruptcy Court entered in the Bankruptcy Case, (iii) an amount mutually agreed between the Creditor Trust Administrator and the holder of such Disputed General Unsecured Claim or (iv) if no agreement has been reached and no Estimation Order or other order of the Bankruptcy Court has been entered with respect to such Disputed Claim by such time as determined by the Creditor Trust Board in its discretion, the greater of (A) the liquidated amount listed in the Schedules, and (B) the liquidated amount set forth in a proof of claim or application for payment filed with the Bankruptcy Court.

(qq)    "**FDIC**" means the Federal Deposit Insurance Corporation or any successor institution.

(rr)    "**Fiscal Year**" means any fiscal year of the Creditor Trust, as provided in Section 2.9 hereof.

(ss)    "**Initial Distribution Date**" means the date determined by the Creditor Trust Board occurring as soon as reasonably practicable on or after the Initial Unit Distribution Date on which the Creditor Trust makes, or causes to be made, the initial distribution of Distributable Creditor Trust Assets to Unitholders (including to the Disputed Claims Reserve).

(tt)    "**Initial Distribution Record Date**" means the record date for determining Unitholders (including the Disputed Claims Reserve) entitled to receive the initial distribution of Distributable Creditor Trust Assets, which such date shall not be prior to the Disputed Claims Estimation Date.

(uu)    "**Initial Unit Distribution Date**" means the date determined by the Creditor Trust Board occurring as soon as reasonably practicable after the Effective Date, on which the Creditor Trust makes, or causes to be made, the initial distribution of Units to holders of Allowed General Unsecured Claims (including the Disputed Claims Reserve) and Allowed Second Lien Deficiency Claims entitled to receive Units hereunder as of the Initial Unit Distribution Record Date.

(vv)    "**Initial Unit Distribution Record Date**" means the Voting Deadline, which is the record date for determining the Creditor Trust Beneficiaries holding Allowed Claims that are entitled to receive a distribution of Units on the Initial Unit Distribution Date; provided that to the extent the allowance of a Claim as of the Initial Unit Distribution Record Date is contingent only upon the effectiveness of the Plan, such Claim shall be deemed to be Allowed as of the Initial Unit Distribution Record Date.

(ww)    "**Litigation Assets**" means the RCS Litigation Assets and the RCS Debtor Subsidiary Litigation Assets.

(xx)    "**Luxor**" means Luxor Capital Group L.P., together with its Affiliates or managed accounts as holders of the Convertible Notes, the Senior Unsecured Notes, the common Holdings Equity Interests, and the Holdings Preferred Equity Interests.

(yy)    "**Major Holder**" means as of any date of measurement, any holder of Series A-1 Units or Class B Units whose Units (on a by-institution rather than a by-account

basis) constitute at least 5% of all of the outstanding Series A-1 Units or Class B Units, as applicable, including for these purposes any Series A-1 Units held in the Disputed Claims Reserve.

(zz)    "**Majority Consent**" means the affirmative consent of a majority of the members constituting the whole Creditor Trust Board whether by a meeting in person or in lieu of a meeting in accordance with Section 5.6(f), or if at the time there shall be only one member of the Creditor Trust Board, the consent of such member, either given at a meeting called for that purpose or by written consent in lieu of a meeting in accordance with Section 5.6(f).

(aaa)    "**Net Litigation Proceeds**" means, with respect to any Litigation Assets, the Cash proceeds or recoveries thereof, net of all costs, fees and expenses, expended or incurred, whether by Cash payment, on account, through contingency arrangements or otherwise, directly or indirectly, as determined by the Creditor Trust Board, in connection with the generation, realization or receipt of such proceeds.

(bbb)    "**New Common Stock**" means the common stock of Reorganized Holdings, and any securities issued in exchange or substitution thereof pursuant to any reclassification, reorganization, merger, combination, exchange offer or other business combination transaction.

(ccc)    "**New Warrant Proceeds**" means all cash, securities or other assets received by the Creditor Trust upon exercise of, in exchange for or otherwise upon the sale, other transfer or other disposition of New Warrants.

(ddd)    "**New Warrants**" means warrants to acquire New Common Stock issued on account of Allowed General Unsecured Claims against RCS in accordance with the terms and conditions of the Plan.

(eee)    "**Nominating Party**" means a party entitled under Section 5.17(j)(1) of the Plan to select a member of the Creditor Trust Board, which parties specifically include (1) Luxor, (2) the Convertible Notes Indenture Trustee and (3) the Committee.

(fff)    "**Plan**" has the meaning assigned in the Recitals.

(ggg)    "**Plan Documents**" means, collectively, the Plan, the Confirmation Order and this Creditor Trust Agreement.

(hhh)    "**Pro Rata**" means, when referring to any Unitholder, in such proportion as the number of Units of the respective Class or Series, as applicable, held by such Unitholder bears to the total number of Units of such Class or Series outstanding, including, in the case of the Class A Units or any Series thereof, the Class A Units or any Series thereof held in the Disputed Claims Reserve; provided that where the Series A-1 Units and Class B Units are treated as a single Class, the term means in such proportion as the number of Series A-1 Units and/or Class B Units held by such Unitholder bears to the total number of Series A-1 Units and Class B Units outstanding, including the Series A-1 Units held in the Disputed Claims Reserve; provided further that for purposes of Section

<u>4.8</u>, the Pro Rata determination shall be made only with respect to holders of Series A-1 Units or Class B Units entitled to participate in the Rights Offering.

(iii)    "**RCS**" has the meaning assigned in the Preamble.

(jjj)    "**RCS Debtor Subsidiary Litigation Assets**" means all Non-Released Company Causes of Action held by the applicable Subsidiary Debtor, other than (a) Retained Causes of Action and (b) Causes of Action retained by the Non-RCS Affiliates under the Prepackaged Plan, and all rights, interests, and defenses related thereto, in each case in respect of matters arising prior to the Effective Date.  For the avoidance of doubt, "RCS Debtor Subsidiary Litigation Assets" includes, without limitation, all Causes of Action of the RCS Debtor Subsidiaries in respect of matters arising prior to the Effective Date against, or that may be brought against, the Excluded Parties (other than the RCAP Holdings Setoff Cause of Action), all rights, interests, and defenses related thereto and all recoveries thereon or other proceeds thereof.

(kkk)    "**RCS Litigation Assets**" means all (i) Non-Released Company Causes of Action held by RCS other than Retained Causes of Action, (ii) Non-Released Affiliate Causes of Action other than Causes of Action retained by the Non-RCS Affiliates under the Prepackaged Plan, and (iii) RIA Causes of Action and, in the case of (i), (ii), and (iii) all rights, interests, and defenses related thereto, in each case in respect of matters arising prior to the Effective Date. For the avoidance of doubt, "RCS Litigation Assets" includes, without limitation, all Causes of Action of RCS, the Non-RCS Affiliates, and the Registered Investment Advisors in respect of matters arising prior to the Effective Date against, or that may be brought against, the Excluded Parties (other than the RCAP Holdings Setoff Cause of Action), and all rights, interests, and defenses related thereto, all recoveries thereon or other proceeds thereof.

(lll)    "**RCS Unit Amount**" means one hundred dollars ($100.00).[1]

(mmm)"**Reorganized Holdings**" means RCS, as reorganized under the Plan.

(nnn)    "**Rights**" means non-transferable rights to acquire a particular Series of Class C Units.

(ooo)    "**Rights Offering**" means an offering of Rights to holders of Series A-1 Units and holders of Class B Units, Pro Rata as provided in <u>Section 4.8</u>.

(ppp)    "**Series**" means each Series of Units established and designated under or in accordance with the provisions of this Agreement.

(qqq)    "**Subsidiary Debtor**" means a Debtor other than RCS.

(rrr)    "**Subsidiary Debtor Unit Amount**" means the Allowed Amount or Estimated Amount, as determined by the Creditor Trust Board of a General Unsecured Claim against a Subsidiary Debtor for which one Unit of the corresponding Series of Class A Units is

---

[1] NTD: RCS Unit amount anticipated to be $100.

issuable, which may be different for each Series of Class A Units but which shall be the same for all General Unsecured Claims against the Corresponding Debtor.

(sss) "**Subsidiary Series**" means each Series of Class A Units other than the Series A-1 Units.

(ttt) "**Subsidiary Series Units**" means, as to a holder of Class A Units, such holder's Class A Units within each Series of Class A Units other than the Series A-1 Units.

(uuu) "**Tax Authority**" means a federal, state, local, or foreign government, or agency, instrumentality, or employee thereof, court or other body (if any) charged with the administration of any law relating to Taxes.

(vvv) "**Tax Code**" means the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

(www) "**Taxes**" means all (a) federal, state, local, or foreign taxes, including, without limitation, all net income, alternative minimum, net worth or gross receipts, capital, value added, franchise, profits, estimated, property, transfer and sales or use taxes, and (b) interest, penalties, fines, additions to tax or additional amounts imposed by any Tax Authority or paid in connection with any item described in clause (a) hereof.

(xxx) "**Tax Return**" means a return, declaration, form, election, letter, report, statement, estimate, information return, or other information filed or required to be filed with respect to any Taxes, including any schedule or attachment thereto or amendment thereof, including any claim for a Tax refund.

(yyy) "**Trust Act**" means, the Delaware Statutory Trust Act, 12 Del. C. § 3801 et seq., as the same may from time to time be amended, or any successor statute.

(zzz) "**Trustee**" means any of the Creditor Trustees and the Delaware Trustee.

(aaaa) "**Unanimous Consent**" means the affirmative consent of all members constituting the whole Creditor Trust Board whether by a meeting in person or in lieu of a meeting in accordance with Section 5.6(f), or if at the time there shall be only one member of the Creditor Trust Board, the consent of such member, either given at a meeting called for that purpose or by written consent in lieu of a meeting in accordance with Section 5.6(f).

(bbbb) "**Unit Distribution Date**" means a date, as determined from time to time by the Creditor Trust Board, on which Class A Units shall be distributed from the Disputed Claims Reserve to holders of Disputed General Unsecured Claims that have become Allowed in the period between the second preceding Unit Distribution Record Date (or in the case of the Initial Unit Distribution Date, from the Initial Unit Distribution Record Date) and the first preceding Unit Distribution Record Date.

(cccc) "**Unit Distribution Record Date**" means a date, as determined from time to time by the Creditor Trust Board, for the determination of the holders of Disputed General Unsecured Claims that have become Allowed since the preceding Unit Distribution

Record Date (or in the case of the Initial Unit Distribution Date, from the Initial Unit Distribution Record Date) to receive a distribution of Class A Units from the Disputed Claims Reserve on the following Unit Distribution Date.

(dddd) "**Units**" means the Class A Units, the Class B Units and the Class C Units.

(eeee) "**Unitholder**" means a holder of one or more Units, including the Disputed Claims Reserve.

(ffff)    "**Unit Register**" has the meaning assigned in <u>Section 3.3(a)</u>.

(gggg) "**Voting Deadline**" means the date set forth in the order of the Bankruptcy Court approving the Disclosure Statement as the deadline for, among other things, voting to accept or reject the Plan.

1.3    <u>Meanings of Other Terms</u>.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neutral, if appropriate; words importing the singular number shall include the plural number and vice versa; and words importing persons shall include firms, associations, corporations and other entities.    All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code; the Bankruptcy Rules; the Tax Code; or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Creditor Trust Agreement, and the word "herein" and words of similar import refer to this Creditor Trust Agreement as a whole and not to any particular Article, Section or subdivision of this Creditor Trust Agreement.  The term "including" shall mean "including, without limitation."

## ARTICLE II
## CREATION OF CREDITOR TRUST

2.1    <u>Creation of Trust</u>.

(a)    The Creditor Trust shall be deemed to have been created effective as of the filing of the Certificate of Trust.

(b)    The Creditor Trust shall bear the name "RCS Creditor Trust," and the Creditor Trust Board may, in connection with the exercise of its powers and duties hereunder, either use this name or such variation thereof as the Creditor Trust Board may from time to time approve.

2.2    <u>Purpose of Creditor Trust</u>.

(a)    The Creditor Trust is established for the purpose of liquidating and distributing the Creditor Trust Assets in accordance with Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose hereunder.

01:18593549.3

(b)     This Creditor Trust Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust.  The Creditor Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall any of the Trustees or the Unitholders, for any purpose be, or be deemed to be or be treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.  The relationship of the Unitholders to the Trustees shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Creditor Trust Agreement.

2.3     Status of Creditor Trust and the Creditor Trust Board.

(a)     Subject to the terms of the Confirmation Order, the Creditor Trust shall be the successor-in-interest to the Debtors with respect to any Creditor Trust Causes of Action (but not, for the avoidance of doubt, including any (i) Causes of Action released under the Plan or (ii) Retained Causes of Action) that was or could have been commenced by any of the Debtors prior to the Effective Date and shall be deemed substituted for each such Debtor as the party in any such litigation.

(b)     From and after the Effective Date, the Creditor Trust, acting through Creditor Trust Management under the direction of the Creditor Trust Board, will be the representative of the Estates as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code and shall have the rights and powers provided in the Bankruptcy Code in addition to any rights and powers granted in the Plan Documents, in each case for purposes of carrying out the purposes and intents of this Creditor Trust Agreement, including but not limited to the right to object to General Unsecured Claims.

(c)     All Creditor Trust Causes of Action are preserved and retained and may be enforced by the Creditor Trust pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

2.4     Retention of Professionals.

(a)     The Creditor Trust shall have the right to retain such professionals as are necessary and proper to discharge its functions, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court.

(b)     The Creditor Trust Board shall adopt reasonable policies regarding the billing practices, hourly rates, discounts and required budget practices of professionals retained to provide services to the Creditor Trust to ensure the Creditor Trust receives cost-effective, efficient representation in the best interest of the Unitholders.

2.5     Transfer of Creditor Trust Assets.

(a)     On the Effective Date, the Debtors or the Reorganized Debtors, as the case may be, the Non-RCS Affiliates and the Registered Investment Advisors shall transfer all assets constituting the Creditor Assets and Litigation Assets, in the form existing on such date, to the Creditor Trust, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other persons and entities to the maximum extent

contemplated by and permissible under section 1141 of the Bankruptcy Code. The Creditor Trust shall have such incidents of ownership in the Creditor Trust Assets as are necessary to undertake the actions and transactions authorized in the Plan Documents.  The transfer of the Creditor Trust Assets shall be exempt from any stamp, real estate transfer, mortgage recording, sales, use or other similar Tax pursuant to section 1146 of the Bankruptcy Code.

(b)     Notwithstanding the foregoing, if on the Effective Date, any of the assets constituting the Creditor Assets or the Litigation Assets cannot be transferred to the Creditor Trust or it is deemed impractical to do so by the Creditor Trust Board or the Creditor Trust Administrator, for any reason, for example, because the Creditor Trust has not yet established accounts for the purpose of holding Cash or because of a restriction on transferability under applicable non-bankruptcy law that is not superseded by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code:

(i)     Subject to clauses (ii) and (iii) of this Section 2.5(b), the Reorganized Debtors, or the Non-RCS Affiliates or the Registered Investment Advisors, as the case may be (each a "Creditor Trust Bailee"), shall continue to hold such Creditor Trust Assets, as bailee for the account of the Creditor Trust, and the Creditor Trust Administrator shall be deemed to have been designated as a representative of the Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Creditor Trust Assets on behalf of the Debtors until such time as the Creditor Trust informs the applicable Creditor Trust Bailee that the Creditor Trust may receive such Creditor Trust Assets, whereupon such Creditor Trust Assets shall be promptly transferred to the Creditor Trust; provided that the proceeds of the sale or other disposition of any such assets retained by the a Creditor Trust Bailee shall nevertheless be deemed to constitute Creditor Trust Assets, and to likewise be held by the applicable Creditor Trust Bailee, and be turned over as soon as practicable to the Creditor Trust pursuant to this Creditor Trust Agreement as if such transfer had not been restricted under applicable non-bankruptcy law.

(ii)     the Creditor Trust Administrator and Creditor Trust Board shall use commercially reasonable efforts to promptly cause transfer of such Creditor Trust Assets to the Creditor Trust; and

(iii)     any Dissolving Debtor (as defined in the Plan) shall be permitted to transfer assets on the Effective Date and be dissolved pursuant to Section 5.2 of the Plan; provided that such Dissolving Debtor shall preserve Creditor Trust Assets for the benefit of the Creditor Trust prior to and/or contemporaneously with such Dissolving Debtor's dissolution.

(c)     The Creditor Trust may commence an action in the Bankruptcy Court to resolve any dispute regarding the allocation of the proceeds of any Creditor Trust Assets retained by a Creditor Trust Bailee (or any successors thereto) pursuant to the Plan Documents.

(d)     In connection with the Creditor Trust Causes of Action, any applicable privilege or immunity of the Debtors, the Reorganized Debtors, the Non-RCS Affiliates or the

Registered Investment Advisors (including, but not limited to, any attorney-client privilege or work-product privilege) attaching to any documents or communications (whether written or oral), and all defenses, claims, counterclaims, and rights of setoff or recoupment shall vest in the Creditor Trust and may be asserted by the Creditor Trust Management or, as directed by the Creditor Trust Management, any Creditor Trust Agent or other representative of the Creditor Trust.  Nothing in this Creditor Trust Agreement nor any action taken by the Debtors, the Reorganized Debtors, the Non-RCS Affiliates, or the Registered Investment Advisors shall (or shall be deemed to be) a waiver of any privilege or immunity, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).  Notwithstanding the provision by any Debtor, Reorganized Debtor, Non-RCS Affiliate, or Registered Investment Advisor of any privileged information to the Creditor Trust (including to the Creditor Trust Board, the Creditor Trust Management, any Creditor Trust Agent or other party or person associated with the Creditor Trust), such privileged information shall remain privileged.  The Creditor Trust shall have no right to waive the attorney-client privilege, work product, or other protection or immunity of any new information received from the Reorganized Debtors.  The Reorganized Debtors, the Non-RCS Affiliates and the Registered Investment Advisors retain the right to waive their own privileges or immunities.

(e)     Subject to Section 6.6, the Debtors, the Reorganized Debtors, the Non-RCS Affiliates or the Registered Investment Advisors, as the case may be, upon reasonable advance notice, shall deliver or cause to be delivered to the Creditor Trust copies of any and all books and records that relate primarily to or that may be reasonably required in connection with the Creditor Trust Assets, whether held by the Debtors, the Reorganized Debtors, the Non-RCS Affiliates or the Registered Investment Advisors, as the case may be, their agents, representatives, advisors, attorneys, accountants and any other professionals hired by the Debtors, the Reorganized Debtors or the Non-RCS Affiliates or the Registered Investment Advisors, as the case may be, and upon reasonable advance notice, provide reasonable access to such employees, agents, advisors, attorneys, accountants or any other professionals with knowledge of matters relevant to the Creditor Trust Assets.

(f)     On or prior to the Effective Date, the Debtors or the Reorganized Debtors shall deliver, or cause to be delivered, to the Creditor Trust a complete list of all General Unsecured Claims and Second Lien Deficiency Claims, reflected on the claims registry as of the Initial Unit Distribution Record Date.  The list shall include, to the extent reasonably available to the Debtors or Reorganized Debtors, the names and addresses of the holders of such Claims and the amounts thereof, and in the case of General Unsecured Claims that are known to the Debtors or Reorganized Debtors to be Disputed, the amounts thereof as filed and the Estimated Amounts thereof.  The list of Disputed General Unsecured Claims shall include the details of all known objections (whether asserted or not) in respect of such Claims to the extent reasonably available to the Debtors or Reorganized Debtors.  On or as soon as practicable following the Effective Date, the Debtors shall also deliver or cause to be delivered to the Creditor Trust a list of all changes to the foregoing information between the Initial Unit Distribution Record Date and the Effective Date.

(g)     The Creditor Trust, as successor in interest to the Estates to the extent provided for in the Plan Documents, may (i) execute and deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as

01:18593549.3

14

may be needed), and (ii) take, or cause to be taken, all such further action in order to evidence, vest, perfect or effectuate the transfer of all of the Creditor Trust Assets to the Creditor Trust and consummate transactions contemplated by and to otherwise carry out the intent of the Plan Documents.

   2.6 <u>Title to Creditor Trust Assets</u>.  Subject to <u>Sections 2.5(a)</u> and <u>2.5(b)</u>, upon the transfer of the Creditor Assets and Litigation Assets, the Creditor Trust shall succeed to all of the right, title and interest in the Creditor Assets and Litigation Assets of the Debtors, the Non-RCS Affiliates or the Registered Investment Advisors, as the case may be, and no other Person, including the Debtors or Reorganized Debtors, will have any further rights or interest in or with respect to the Creditor Assets, Litigation Assets or the Creditor Trust.

   2.7 <u>Valuation</u>.  As soon as reasonably practicable after the Effective Date, but in no event later than one hundred and twenty (120) days thereafter, the Creditor Trust Board shall make a good faith determination of the value of the assets transferred to the Creditor Trust.  Such aggregate valuation shall be delivered to each Unitholder in accordance with <u>Section 11.4</u>, and shall be in such detail and including such supporting information as determined by the Creditor Trust Board, in reliance on its professionals, to be reasonably necessary or appropriate for the use and understanding thereof, and shall be used consistently by all parties (including, without limitation, the Debtors, the Reorganized Debtors, the Creditor Trust and the Unitholders) for all federal income tax purposes.

   2.8 <u>No Reversion to Debtors; Distribution of Remaining Assets</u>.

   (a) In no event shall any part of the Creditor Trust Assets revert to or be distributed to or for the benefit of any Debtor or the Reorganized Debtors or the Non-RCS Affiliates or the Registered Investment Advisors, as the case may be.

   (b) To the extent that after satisfaction in full of all of the costs and expenses of the administration of the Creditor Trust, after all Disputed General Unsecured Claims have been either Allowed or disallowed, after all Allowed General Unsecured Claims and Allowed Second Lien Deficiency Claims have been paid pursuant to the Plan Documents, after satisfaction of all other obligations or liabilities of the Creditor Trust incurred or assumed in accordance with the Plan Documents (including distributions required to be made pursuant to Section 5.17(s) of the Plan), after the Creditor Trust has made the maximum distribution of Distributable Creditor Trust Assets in respect of the Units to the extent reasonably practicable, and after the affairs of the Creditor Trust have been finally wound up and concluded in accordance with the provisions of <u>Section 10.1</u> hereof and section 3808 of the Trust Act, there shall remain any Creditor Trust Assets, the Creditor Trust shall distribute such remaining Creditor Trust Assets to an organization, selected by the Creditor Trust Board, described in section 501(c)(3) of the Tax Code and exempt from U.S. federal income tax under section 501(a) of the Tax Code that is unrelated to the Reorganized Debtors, the Creditor Trust or any member of the Creditor Trust Board.

   2.9 <u>Fiscal Year</u>.  Except for the first and last years of the Creditor Trust, the Fiscal Year of the Creditor Trust shall be the calendar year.  For the first and last years of the Creditor Trust, the Fiscal Year of the Creditor Trust shall be such portion of the calendar year

that the Creditor Trust is in existence.  The term fiscal quarter, or similar references, as used in this Creditor Trust Agreement, shall have a correlative meaning.

2.10    Creditor Trust Budget.

(a)    There shall be prepared a reasonably detailed annual plan and budget for the Creditor Trust (any such plan and budget, as it may be amended from time to time in accordance with the terms hereof, the "Creditor Trust Budget") for each Fiscal Year, except that the Creditor Trust Budget for the first Fiscal Year, if less than six calendar months, may be combined with the Creditor Trust Budget for the next succeeding Fiscal Year, and the Creditor Trust Budget for the last Fiscal Year, if less than six calendar months, may be combined with the Creditor Trust Budget for the immediate prior Fiscal Year.  The Creditor Trust Budget shall set forth (on an annual basis) in reasonable detail: (i) the assumptions underlying the projected recoveries and expenses associated with the administration of the Creditor Trust for the annual budget, and the funding of the Creditor Trust Administrative Expense Reserve and the Creditor Trust Litigation Expense Reserve in respect thereof, and (ii) the anticipated distributions to the Unitholders.

(b)    Except as otherwise approved by the Creditor Trust Board, the form of each Creditor Trust Budget shall be substantially the same as the form of the initial Creditor Trust Budget.

(c)    Not less than thirty (30) days before the beginning of each Fiscal Year (other than the first Fiscal Year and other than the second Fiscal Year, if the initial Creditor Trust Budget covers such Fiscal Year, and other than the last Fiscal Year, if the Creditor Trust Budget for the next preceding Fiscal Year covers such Fiscal Year), the Creditor Trust Management shall submit to the Creditor Trust Board a proposed Creditor Trust Budget for such Fiscal Year, together with a comparison to the Creditor Trust Budget then in effect and an explanation of the differences between the two in reasonable detail.  The Creditor Trust Budget for such Fiscal Year shall not become effective until approved by Majority Consent of the Creditor Trust Board, and until so approved, the Creditor Trust Budget for the prior year shall constitute the Creditor Trust Budget for the subsequent year on an interim basis.

(d)    Amendments, if any, to the Creditor Trust Budget shall not become effective unless and until approved by Majority Consent of the Creditor Trust Board.

(e)    Except as otherwise approved by Majority Consent of the Creditor Trust Board, the amount expended in any Fiscal Year (or, if the initial or final Creditor Trust Budget shall cover a combined period as provided above, in such combined period) on any item of expense set forth in the Creditor Trust Budget shall not exceed by more than fifteen percent (15%) the budgeted amount therefor set forth in the Creditor Trust Budget for the relevant Fiscal Year or combined period.

2.11    Insurance.  The Creditor Trust shall maintain customary insurance coverage, including any appropriate tail coverage, for the protection of the Trustees and Creditor Trust Administrator (which coverage shall be primary to any other coverage potentially available to such persons) and may procure insurance coverage for such employees

as the Creditor Trust Board may determine in its discretion, and the cost thereof shall be reflected in the Creditor Trust Budget.

2.12    Books and Records.

(a)    The Creditor Trust Board shall cause to be stored and maintained books and records for the period commencing on the date hereof through the termination of the Creditor Trust, containing such information concerning the Creditor Trust Assets, the conduct of the affairs of the Creditor Trust and rights and treatment of the Unitholders, in such detail and for such periods of time as may be necessary to enable the Creditor Trust to make full and proper accounting in respect thereof and to comply with applicable provisions of law. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the Creditor Trust.

(b)    The Creditor Trust shall be authorized without further application to the Bankruptcy Court or notice to any party, to abandon or otherwise destroy books and records (whether in electronic or paper format) in accordance with and subject to Section 10.3.

(c)    Anything in the Trust Act to the contrary notwithstanding, and without limiting the provisions of Section 6.6(d), no Unitholder shall have the right to obtain from the Creditor Trust any of its books or records except as expressly provided in this Creditor Trust Agreement or by order of the Bankruptcy Court, or as may otherwise be expressly permitted by the Creditor Trust Board.

2.13    No Interest or Accruals. Except as otherwise may be expressly provided in the Plan Documents, holders of Claims shall not be entitled to interest on the distributions provided for in this Creditor Trust Agreement, regardless of whether such distributions are made on or at any specified time after the Effective Date.

## ARTICLE III
## ISSUANCE OF UNITS

3.1    Number and Series of Units

(a)    The Creditor Trust shall issue such number of Class A Units, and in such Series, as shall be necessary, in accordance and consistent with the Plan, to satisfy the Allowed General Unsecured Claims and the Estimated Amount of the Disputed General Unsecured Claims against each of the Debtors, as more particularly provided in Section 3.1(b), including issuance of Class A Units to the Disputed Claims Reserve in respect of Disputed General Unsecured Claims pending the resolution of such claims. The Creditor Trust shall issue such number of Class B Units as shall be necessary, in accordance and consistent with the Plan, to satisfy the Allowed Second Lien Deficiency Claims. The Creditor Trust may issue such number of Class C Units, and in such Series, as determined by the Creditor Trust Board in accordance with Section 4.8.

(b)    The Class A Units shall be issued in twelve Series designated Series A-1 through Series A-12. Each Series of Class A Units will be associated with a particular Debtor (each such Debtor as listed opposite a Series below is referred to as the "Corresponding Debtor" of such Series). Each holder of an Allowed General Unsecured Claim against a Debtor shall be issued Class A Units of the Series associated with that Debtor in accordance with Section 3.2 as follows:

| Series | Debtor |
|--------|--------|
| Series A-1 | RCS |
| Series A-2 | American National Stock Transfer, LLC |
| Series A-3 | Braves Acquisition, LLC |
| Series A-4 | DirectVest, LLC |
| Series A-5 | J.P. Turner & Company Capital Management, LLC |
| Series A-6 | RCS Advisory Services, LLC |
| Series A-7 | RCS Capital Holdings, LLC |
| Series A-8 | Realty Capital Securities, LLC |
| Series A-9 | SBSI Insurance Agency of Texas Inc. |
| Series A-10 | SK Research LLC |
| Series A-11 | Trupoly, LLC |
| Series A-12 | We R Crowdfunding, LLC |

The Class A Units of each Series of Class A Units shall be referred to herein by its Series, for example, as Series A-1 Units, Series A-2 Units, and so forth.

(c)    The number of Units issuable in respect of a General Unsecured Claim shall be determined as follows:

(i)    There shall be issued one Series A-1 Unit (i) for each RCS Unit Amount of an Allowed General Unsecured Claim against RCS, valued at its Allowed Amount; and (ii) in the case of issuances to the Disputed Claims Reserve, for each RCS Unit Amount of a Disputed General Unsecured Claim against RCS, valued at its Estimated Amount.

(ii)    There shall be issued one Unit of each other Series of Class A Units (i) for each respective Subsidiary Debtor Unit Amount of an Allowed General Unsecured Claim against the Corresponding Debtor, valued at its Allowed Amount; and (ii) in the case of issuances to the Disputed Claims Reserve, for each respective Subsidiary Debtor Unit Amount of a Disputed General Unsecured Claim against the Corresponding Debtor, valued at its Estimated Amount.

(iii)    There shall be issued one Class B Unit for each RCS Unit Amount of an Allowed Second Lien Deficiency Claim.

3.2    Issuance and Distribution of Units.

(a)    The Class A Units issued or distributed to holders of Allowed General Unsecured Claims entitled to receive Class A Units hereunder and under the Plan shall be in full and final satisfaction of such Allowed General Unsecured Claims, and the Class B Units issued or distributed to holders of Allowed Second Lien Deficiency Claims entitled to receive Class B Units hereunder and under the Plan shall be in full and final satisfaction of such Allowed Second Lien Deficiency Claims.

(b)    On the Initial Unit Distribution Date, there shall be issued—

(i)    to each holder of one or more Allowed General Unsecured Claims against RCS as of the Initial Unit Distribution Record Date, a number of Series A-1 Units equal to (x) the Allowed Amount of such Allowed General Unsecured Claims divided by (y) the RCS Unit Amount;

(ii)    to each holder of one or more Allowed General Unsecured Claims against each Subsidiary Debtor as of the Initial Unit Distribution Date, a number of Class A Units of the Subsidiary Series corresponding to the Debtor against which such Allowed General Unsecured Claim has been Allowed equal to (x) the Allowed Amount of such Allowed General Unsecured Claim, divided by (y) the respective Subsidiary Debtor Unit Amount; and

(iii)    to each holder of one or more Allowed Second Lien Deficiency Claims as of the Initial Unit Distribution Record Date, a number of Class B Units equal to (x) the Allowed Amount of such Allowed Second Lien Deficiency Claims, divided by (y) the RCS Unit Amount.

(c)

(i)    As soon as practicable after the Disputed Claims Estimation Date there shall be deposited to the Disputed Claims Reserve, (x) a number of Series A-1 Units equal to the Estimated Amount of the Disputed General Unsecured Claims against RCS divided by the RCS Unit Amount, and (y) a number of Units of the respective Series of Class A Units equal to the Estimated Amount of the Disputed General Unsecured Claims against the applicable Debtor Subsidiary divided by the respective Subsidiary Debtor Unit Amount.

(ii)    Each holder of a Disputed General Unsecured Claim that is subsequently Allowed, in whole or in part, shall be issued from the Disputed Claims Reserve on the Unit Distribution Date next following the date that the Claim becomes Allowed, or if such date occurs in the period between a Unit Distribution Record Date and the corresponding Unit Distribution Date, on the following Unit Distribution Date, a number of Class A Units of the respective Series equal to the number of Class A Units of the respective Series that would have been issued to such holder in respect of the Allowed Amount of such Disputed General Unsecured Claim that became Allowed had such Allowed Amount constituted an Allowed General Unsecured Claim on the Initial Unit

Distribution Date, together with such other distributions as provided in Section 4.4(b).

(d)     No fractional Units will be issued or distributed.  Instead, the number of Units shall be rounded up or down as follows: (i) fractions less than one-half (1/2) shall be rounded to the next lower whole number and (ii) fractions equal to or greater than one-half (1/2) shall be rounded to the next higher whole number.  For the purposes of determining the number of Class A Units to which a holder of Allowed General Unsecured Claims is entitled, all Allowed General Unsecured Claims of such holder shall be aggregated on a per-Series basis.  For the purposes of determining the number of Class B Units to which a holder of Allowed Second Lien Deficiency Claims is entitled, all Allowed Second Lien Deficiency Claims of such holder (on a by-account rather than a by-institution basis) shall be aggregated.  The total number of Units to be distributed pursuant to this Creditor Trust Agreement shall be adjusted as necessary to account for such rounding.  No consideration shall be provided in lieu of fractional Units that are rounded down.

(e)     The issuance or distribution of Units in accordance with this Section 3.2 shall be subject to the provisions of Section 3.4.

3.3     Evidence of Units.

(a)     Except as otherwise provided in this Creditor Trust Agreement, Units shall be issued in registered form without certificates, on a Unit register (the "Unit Register") maintained for this purpose by the Creditor Trust.  The Creditor Trust Board shall from time to time designate a registrar, which shall record on the Unit Register the ownership of each Unit, and shall reflect on the Unit Register all transfers of Units. The Creditor Trust Administrator shall serve as the initial registrar.

(b)     If the aggregate number of Units issued shall at any time be increased to comply with any legal or regulatory requirements, appropriate adjustments shall be made on the Unit Register.

3.4     Manner of Distribution of Units.

(a)     On the Initial Unit Distribution Date, the Creditor Trust Administrator shall record on the Unit Register (i) the name of each holder of an Allowed General Unsecured Claim as of the Initial Unit Distribution Record Date and the number and Series of Class A Units issuable to such holder pursuant to Section 3.2(b)(i)-(ii) and (ii) the name of each holder of an Allowed Second Lien Deficiency Claim as of the Initial Unit Distribution Record Date and the number of Class B Units issuable to such holder pursuant to Section 3.2(b)(iii).

(b)     On each Unit Distribution Date following the date on which Disputed General Unsecured Claims are Allowed, in whole or in part, or if such date occurs in the period between a Unit Distribution Record Date and the corresponding Unit Distribution Date, on the next following Unit Distribution Date, the registrar shall record on the Unit Register the name of each holder of Disputed General Unsecured Claims whose Claims are Allowed and the number and Series of Class A Units issuable to such holders pursuant to Section 3.2(c)(i).

(c)    The Creditor Trust shall be authorized to withhold and retain Units otherwise issuable to holders of Allowed General Unsecured Claims or Allowed Second Lien Deficiency Claims that are subject to tax withholding to the extent required by applicable Tax laws, and any Units so withheld shall be deemed issued in satisfaction of such Claims for all purposes of the Plan and this Creditor Trust Agreement.  The Creditor Trust shall also be authorized to apply cash and other Creditor Trust Assets allocable to amounts distributed in respect of any such retained Units to satisfy such Tax withholding obligations in accordance with <u>Section 4.6</u>.

3.5    <u>Transfers of Units; Absence of Market for Units</u>.

(a)    Units shall be freely negotiable and transferable to the extent provided herein and the provisions of applicable securities laws.  Transfers of Units shall be recorded on the Unit Register in accordance with such practices and procedures as shall be prescribed by the Creditor Trust Administrator under the supervision of the Creditor Trust Board, <u>provided</u> that that the Creditor Trust Administrator need not reflect any transfer and will give notice to such holder that no transfer has been recognized in the event the Creditor Trust Administrator reasonably believes that such transfer may constitute a violation of applicable laws or might cause the Creditor Trust to be required to register Units under, and/or to become subject to the reporting requirements of Sections 13 or 15(d) of, the  Securities Exchange Act of 1934, as amended (the "<u>Exchange Act</u>"), and <u>provided</u> <u>further</u> that the Creditor Trust Administrator may request from any proposed transferor any information or any representations regarding the transfer which it reasonably deems necessary in order to determine whether the Creditor Trust might, immediately after such transfer, become required to so register Units under, and/or become subject to the such reporting requirements of, the Exchange Act..

(b)    No Unitholder that is not an Excluded Party shall be permitted to transfer any Unit or economic participation therein to an Excluded Party without the prior written consent of the Creditor Trust Administrator.

(c)    The Units shall not be listed by the Creditor Trust on a national securities exchange or interdealer quotation system. Neither the Creditor Trust nor anyone acting on its behalf shall, directly or indirectly, engage in any activity designed to facilitate or promote trading in the Units, including by placing advertisements, distributing marketing materials, or collecting or publishing information regarding prices at which the interests may be transferred; <u>provided</u> that no activity undertaken by the Creditor Trust in compliance with the terms of the Plan Documents shall be deemed to facilitate or promote trading in the Units for these purposes.

3.6    <u>Rights of Unitholders</u>.  Each Unitholder shall be entitled to participate in the rights and benefits due to it hereunder on account of its Units.  Each Unitholder shall take and hold the same, subject to all the terms and conditions of the Plan Documents.  The interest of a Unitholder is hereby declared and shall be, in all respects, personal property.

3.7    <u>Interest Beneficial Only</u>.  Except as expressly provided hereunder, a Unitholder shall have no title to, right to, possession of, management of or control of the Creditor Trust or the Creditor Trust Assets.  The ownership of Units shall not entitle any

Unitholder to any title in or to the Creditor Trust Assets or to any right to call for a partition or division of such assets or to require an accounting, except as may be specifically provided herein.

3.8    Conflicting Claims.  If any conflicting claims or demands are made or asserted with respect to one or more Units, or a beneficial interest therein, the Creditor Trust (as determined by the Creditor Trust Board in its sole discretion, or by the Creditor Trust Administrator pursuant to delegated authority of the Creditor Trust Board) shall be entitled to refuse to comply with any such conflicting claims or demands.  In so refusing, the Creditor Trust may elect to make partial or no payments or distributions with respect to the Units at issue pending the resolution of such conflict, and the Creditor Trust shall be entitled to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive and continuing jurisdiction over resolution of such conflicting claims or demands.  Neither the Creditor Trust, the Creditor Trust Board, the Creditor Trust Management nor the Creditor Trust Agents shall be or become liable to any party for either (i) a determination to continue making distributions pursuant to its books and records, without regard to the conflicting claims or demands; or (ii) a determination to partially or completely cease payments or distributions with respect to the subject Unit or Units.  In the event that the Creditor Trust determines to cease payments, it shall be entitled to refuse to act until either (x) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court (or such other court of proper jurisdiction) or (y) all differences have been resolved by a written agreement among all of such parties and the Creditor Trust, which agreement shall include a complete release of the Creditor Trust, the Creditor Trust Board and the Creditor Trust Management from liability resulting from any actions taken or not taken in pursuant to this Section 3.8, which release shall be in form and substance reasonably satisfactory to the Creditor Trust Board.

3.9    Unitholder Liability to Third Persons.  No Unitholder shall be subject to any personal liability whatsoever, in tort, contract or otherwise, to any person in connection with the Creditor Trust Assets or the affairs of the Creditor Trust, to the fullest extent provided by section 3803(a) of the Trust Act.

3.10    Actions in the Right of the Creditor Trust.  No Unitholder or Unitholders shall have the right to bring an action in the right of the Creditor Trust to recover a judgment pursuant to section 3816 of the Trust Act, unless such Unitholder or Unitholders, individually or collectively, own twenty-five percent (25%) or more of the aggregate outstanding Units without distinction as to Class or Series.

**ARTICLE IV**
**DISTRIBUTIONS TO UNITHOLDERS; RIGHTS OFFERING**

4.1    Distributions.

(a)    General.  A Unit of a particular Class and/or Series shall entitle the holder thereof to receive Distributable Creditor Trust Assets distributable by the Creditor Trust to holders of Units of that Class and/or Series, when and as such distributions are made pursuant to this Creditor Trust Agreement in accordance with this Section 4.1.

(b)    Distributions to Holders of Series A-1 Units.

(i)    Initial Distribution. On the Initial Distribution Date, the Creditor Trust shall distribute to each holder of Series A-1 Units of record as of the Initial Distribution Record Date (including the Disputed Claims Reserve) such holder's Pro Rata share of the Cash constituting Distributable Creditor Trust RCS Assets as of the Effective Date.

(ii)    Subsequent Distributions.    As and to the extent that Distributable Creditor Trust RCS Assets become available for distribution, as determined by the Creditor Trust Board, the Creditor Trust Board shall establish a Distribution Record Date and a Distribution Date for the distribution of such assets, and the Creditor Trust shall make distribution of such assets on such Distribution Date (including the Disputed Claims Reserve) to the holders of Series A-1 Units of record on such Distribution Record Date, Pro Rata. Distributions of Distributable Creditor Trust RCS Assets shall be made at least annually; provided, however, that annual distributions are not required to be made if the Creditor Trust Board determines that the aggregate amount of Distributable Creditor Trust RCS Assets at the time is such as would make the distribution impracticable, in which case such Distributable Creditor Trust RCS Assets will be included in Distributable Creditor Trust RCS Assets on a subsequent Distribution Date.

(iii)    Distributions of New Warrants.    At any time and from time to time after the Disputed Claims Estimation Date, the Creditor Trust Board may in its discretion make distributions of all or a portion of the New Warrants to the holders of Series A-1 Units, including the Disputed Claims Reserve.    In such case, the Creditor Trust Board shall establish a Distribution Record Date and a Distribution Date for the distribution of such New Warrants to such holders, and the Creditor Trust shall make distribution of such New Warrants on such Distribution Date to the holders of Series A-1 Units of record on such Distribution Record Date, Pro Rata.

(c)    Distribution of RCS Litigation Assets.    As and to the extent that Distributable Creditor Trust RCS Litigation Assets become available for distribution before or after the Initial Distribution Date, as determined by the Creditor Trust Board, the Creditor Trust Board shall establish a Distribution Record Date and a Distribution Date for the distribution of such assets, which such Distribution Record Date shall be no earlier than the Disputed Claims Estimation Date, and the Creditor Trust shall distribute such assets on such Distribution Date to the holders of Series A-1 Units, holders of Class B Units and holders Class C Units, if any, of record on such Distribution Record Date.

If there shall be outstanding at any time Class C Units in one or more Series, distributions of Distributable Creditor Trust RCS Litigation Assets, as between the holders of Series A-1 Units and holders of Class B Units, on the one hand, and holders of Class C Units (including among holders of different Series of Class C Units), on the other, shall be made in such order of priority as determined by the Creditor Trust Board in accordance with Section 4.8. Notwithstanding any other provision in this Creditor Trust Agreement, as between the holders of Series A-1 Units, including the Disputed Claims Reserve, and holders of Class B

Units, distributions of Distributable Creditor Trust RCS Litigation Assets shall be made in the following order of priority:

(i)     *first*, to the holders of Series A-1 Units, Pro Rata, until the Creditor Trust has distributed thirty million dollars ($30,000,000) pursuant to this Section 4.1(c)(i);

(ii)     *second*, to holders of Series A-1 Units and holders of Class B Units (together considered for these purposes as a single Class), without priority or preference of Series A-1 Units over Class B Units or Class B Units over Series A-1 Units, Pro Rata, until the Creditor Trust has made aggregate distributions in an amount equal to the RCS Unit Amount in respect of each Series A-1 Unit;

(iii)     *third*, to holders of Class B Units, Pro Rata, until the Creditor Trust has made aggregate distributions in an amount equal to the RCS Unit Amount in respect of each Class B Unit;

(iv)     *fourth*, interest at the applicable rate in respect of all Allowed General Unsecured Claims and all Allowed Second Lien Deficiency Claims; and

(v)     *fifth,* to (w) the agent for the benefit of holders of Allowed First Lien Claims, to the extent the treatment provided under Section 4.2 of the Plan does not provide for payment of such holders' Claims under the First Lien Facility, including post-petition interest, in full, (x) the agent for the benefit of holders of Allowed Secured Second Lien Claims, to the extent the treatment provided under Section 4.3 of the Plan does not provide for payment of such holders' Claims under the Second Lien Facility, including post-petition interest, in full, (y) holders of Allowed Subordinated Claims in the sub-Classes of Class 7 that correspond to the Debtors to which such remaining Creditor Trust Assets are attributable, and (z) holders of Allowed Holdings Equity Interests and Purchase-Related Claims in Class 10, each in their order of priority under the Bankruptcy Code.

Distributions of Distributable Creditor Trust RCS Litigation Assets shall be made at least annually; provided, however, that annual distributions are not required to be made if the Creditor Trust Board determines that the aggregate amount of Distributable Creditor Trust RCS Litigation Assets at the time is such as would make the distribution impracticable, in which case such Distributable Creditor Trust RCS Litigation Assets will be included in Distributable Creditor Trust RCS Litigation Assets on the following Distribution Date.

(d)     Distribution of RCS Debtor Subsidiary Litigation Assets.

(i)     As and to the extent that Distributable Creditor Trust RCS Debtor Subsidiary Litigation Assets become available for distribution before or after the Initial Distribution Date, as determined by the Creditor Trust Board,

the Creditor Trust Board shall establish a Distribution Record Date and a Distribution Date for the distribution of such assets, which such Distribution Record Date shall be no earlier than the Disputed Claims Estimation Date to the holders of Class A Units of the Series whose Litigation Assets are to be distributed, and the Creditor Trust shall distribute such assets on such Distribution Date to such holders of record on such Distribution Record Date, Pro Rata on a per Series basis.

(ii)    In the event that the Creditor Trust has made distributions aggregating the respective Subsidiary Debtor Unit Amount in respect of the Units of any Series of Class A Units (other than the Series A-1 Units), including interest at the applicable rate, any additional Distributable Creditor Trust RCS Debtor Subsidiary Litigation Assets attributable to the Corresponding Debtor that may become available for distribution shall be distributed in accordance with the priorities set forth in Section 4.1(c)(ii) through (v). For the avoidance of doubt, such additional Distributable Creditor Trust RCS Debtor Subsidiary Litigation Assets shall be distributed Pro Rata to holders of Series A-1 Units and the holders of the Class B Units (together considered for these purposes as a single Class), without priority or preference of Series A-1 Units over Class B Units or Class B Units over Series A-1 Units, and no distributions made under this Section 4.1(d)(ii) shall count toward the $30,000,000 threshold provided in Section 4.1(c)(i).

(iii)    Distributions of Distributable Creditor Trust RCS Debtor Subsidiary Litigation Assets shall be made at least annually; provided, however, that annual distributions are not required to be made if the Creditor Trust Board determines that the aggregate amount of Distributable Creditor Trust RCS Debtor Subsidiary Litigation Assets for any corresponding Series at the time is such as would make the distribution impracticable, in which case such Distributable Creditor Trust RCS Debtor Subsidiary Litigation Assets of such corresponding Series will be included in Distributable Creditor Trust RCS Debtor Subsidiary Litigation Assets on the following Distribution Date.

(e)    If Cash is released from the Disputed Claims Reserve and is distributed to Unitholders in accordance with the provisions of Section 4.4(c) or Section 4.5(c) (other than on account of a Disputed General Unsecured Claim that has become Allowed), all future distributions to Unitholders made in accordance with this Section 4.1, including the distribution of the released Cash, shall be made in such order of priority as required by Section 4.1, determined as if such released Cash had not been previously distributed.

(f)    The Creditor Trust shall maintain such records (including records relating to the transfer of claims), shall establish such distribution record dates and distribution dates and shall undertake such other actions, at any time or from time, as shall be necessary or advisable to facilitate the distributions, if any, required to be made in accordance with clause (iv) of Section 4.1(c).

(g)     Any Litigation Assets distributable pursuant to this <u>Section 4.1</u> consisting of proceeds of a Cause of Action brought by the Creditor Trust on behalf of two or more Debtors shall be allocated among the holders of the Series of Units corresponding to such Debtors in such manner as the Creditor Trust Board determines is fair and equitable; <u>provided, however</u>, that any allocation of Litigation Assets under this <u>Section 4.1(g)</u> for the benefit of holders of Series A-1 Units or Class B Units shall be consistent with the terms of <u>Section 4.1(c)</u> and <u>Section 4.1(d)</u>.

4.2     [Reserved].

4.3     <u>Distribution Record Date; Distributable Creditor Trust Assets</u>.

(a)     The provisions of this <u>Section 4.3</u> shall separately apply to distributions of Distributable Creditor Trust RCS Assets, Distributable Creditor Trust RCS Litigation Assets and Distributable Creditor Trust RCS Debtor Subsidiary Litigation Assets.  References in this <u>Section 4.3</u> to Unitholders are to the holders of Units of the applicable Class or Series entitled to receive the respective distributions, and references in this <u>Section 4.3</u> to Cash and the sufficiency of such Cash shall refer to the Cash otherwise distributable with respect to the applicable Class or Series.

(b)     The Distribution Record Date for purposes of determining the Unitholders entitled to receive a distribution on any Distribution Date shall be no less than fifteen (15) and no more than thirty (30) days prior to the corresponding Distribution Date.

(c)     Except with respect to the Initial Distribution Date, the Creditor Trust Board shall make a determination of the Distributable Creditor Trust Assets distributable on any Distribution Date in advance of the corresponding Distribution Record Date, giving due regard for the Cash anticipated to be held by the Creditor Trust as of such Distribution Date (not including Cash held in the Disputed Claims Reserve or the other reserves maintained by the Creditor Trust), and the sufficiency of the Cash held in or that may be required to be added to the Creditor Trust Administrative Expense Reserve or the Creditor Trust Litigation Expense Reserve, as applicable, or that may be available to be released from the Creditor Trust Administrative Expense Reserve or the Creditor Trust Litigation Expense Reserve as no longer necessary for the purposes thereof, as applicable.

(d)     Following its determination of the Distributable Creditor Trust Assets to be distributed on any Distribution Date pursuant to <u>Section 4.3(c)</u>, but no later than five (5) Business Days in advance of the corresponding Distribution Record Date, unless otherwise determined by the Creditor Trust Board for good reason shown, the Creditor Trust shall deliver a notice to each Unitholder entitled to receive a distribution setting forth the Distribution Record Date, the Distribution Date and the Distributable Creditor Trust Assets to be distributed, in the aggregate, on a per Series basis and on a per Unit basis.  Such notice may be given as provided in <u>Section 11.4</u> or by press release of general circulation.

(e)     For purposes of making any distribution of Distributable Creditor Trust Assets, the term "of record" or any similar term means the holders of the Units as reflected on the Unit Register.

01:18593549.3

4.4    Distributions in Respect of Disputed General Unsecured Claims.

(a)    The Creditor Trust shall resolve or cause to be resolved Disputed General Unsecured Claims, as provided in Section 6.2.

(b)    If a Disputed General Unsecured Claim is Allowed, in whole or in part, there shall be released to the holder from the Disputed Claims Reserve, on the Unit Distribution Date next following the date that such Claim becomes Allowed, or if such date occurs in the period between a Unit Distribution Record Date and the corresponding Unit Distribution Date, on the next following Unit Distribution Date (i) a number of Class A Units of the appropriate Series corresponding to such Claim, or the Allowed portion thereof, as the case may be, as provided in Section 3.2(c)(i); and (ii) the Distributable Creditor Trust Assets and New Warrants, if any (in the case of the Series A-1 Units), distributed to the Disputed Claims Reserve in respect of such Class A Units since the Effective Date.

(c)    Subject to Section 4.5(b), if a Disputed General Unsecured Claim is disallowed, in whole or in part, then, on the Unit Distribution Date next following the date of the determination not to Allow such Claim, in whole or in part, or if such date occurs in the period between a Unit Distribution Record Date and the corresponding Unit Distribution Date, on the next following Unit Distribution Date, there shall be released from the Disputed Claims Reserve (i) a number of Class A Units of the respective Series equal to the amount of the Disputed General Unsecured Claim that is disallowed divided by the RCS Unit Amount or the relevant Subsidiary Debtor Unit Amount, as applicable, which Class A Units of such Series shall be cancelled and retired; and (ii) the Distributable Creditor Trust Assets and New Warrants, if any (in the case of the Series A-1 Units) distributed to the Disputed Claims Reserve in respect of such Class A Units since the Effective Date, which Distributable Creditor Trust Assets and New Warrants, if any (in the case of the Series A-1 Units), shall become unreserved and unrestricted, and which shall be either (x) added to the Creditor Trust Administrative Expense Reserve (in the case of the Series A-1 Units) or the Creditor Trust Litigation Expense Sub-Reserve attributable to the Series of Class A Units to be cancelled and retired, or (y) made available for distribution to the holders of Units in the applicable Series in accordance with the distribution provisions set forth in Section 4.1, as determined by the Creditor Trust Board; provided that the Creditor Trust Board may, in its sole discretion, retain such number of Class A Units of the respective Series, New Warrants, if any (in the case of the Series A-1 Units), and such amount of Distributable Creditor Trust Assets in the Disputed Claims Reserve that would otherwise have been cancelled, retired or made unreserved or unrestricted, as applicable, pursuant to this Section 4.4(c), if it determines that such Class A Units, New Warrants, if any (in the case of the Series A-1 Units), and Distributable Creditor Trust Assets may be necessary to satisfy Disputed General Unsecured Claims corresponding to the respective Series of Class A Units that may become Allowed in the future.

(d)    At such time as all Disputed General Unsecured Claims corresponding to a Series of Class A Units have been resolved, any remaining Class A Units of such Series in the Disputed Claims Reserve shall be cancelled and any remaining Distributable Creditor Trust Assets in the Disputed Claims Reserve shall become unreserved and unrestricted, and shall be either (x) added to the Creditor Trust Administrative Expense Reserve (in the case of the Series A-1 Units) or the Creditor Trust Litigation Expense Sub-Reserve attributable to the Series of

Class A Units to be cancelled and retired, or (y) made available for distribution to the holders of the respective Series of Class A Units pursuant to Section 4.1, as determined by the Creditor Trust Board.  Any New Warrants held in the Disputed Claims Reserve at the time all Disputed General Unsecured Claims corresponding to the Series A-1 Units have been resolved shall be distributed to the holders of the Series A-1 Units, Pro Rata.

      (e)     If any Class A Units shall be cancelled and retired, then from and after the Unit Distribution Date on which such cancellation occurs, all determinations of the Pro Rata amounts distributable to Unitholders shall be made excluding such Class A Units.

      4.5     <u>Determinations of and Adjustments to Estimated Amounts</u>.

      (a)     As soon as practicable on or after the Effective Date, the Creditor Trust Board shall determine or cause to be determined the Estimated Amount for all Disputed General Unsecured Claims.  The Creditor Trust Board from time to time may make immaterial technical adjustments, or seek an adjusted determination from the Bankruptcy Court of, the Estimated Amounts of the Disputed General Unsecured Claims.

      (b)     If there shall be an increase in the Estimated Amounts of the Disputed General Unsecured Claims corresponding to any Series of Class A Units in accordance with Section 4.5(a), no additional Class A Units of such Series or Cash, or New Warrants if any have been previously distributed to holders of Series A-1 Units, shall be added to the Disputed Claims Reserve.  In such a case, however, the Creditor Trust Board may determine to retain in the Disputed Claims Reserve such number of Class A Units of such Series and such amount of Distributable Creditor Trust Assets, and such number of New Warrants if any have been distributed to the holders of Series A-1 Units, as would be necessary to satisfy the increase in Estimated Amounts, as provided in Section 4.4(c).

      (c)     If there shall be a decrease in the Estimated Amounts of the Disputed General Unsecured Claims corresponding to a Series of Class A Units in accordance with Section 4.5(a), the Creditor Trust Board may, but shall not be required to, determine to release from the Disputed Claims Reserve (i) a number of Class A Units of such Series equal to the amount of the decrease in the Estimated Amount of the Disputed General Unsecured Claims divided by the RCS Unit Amount or the Subsidiary Debtor Unit Amount, as applicable, which Class A Units of such Series shall be cancelled and retired; and (ii) the Distributable Creditor Trust Assets and New Warrants, if any (in the case of the Series A-1 Units), distributed to the Disputed Claims Reserve in respect of such Class A Units since the Effective Date, which Distributable Creditor Trust Assets and New Warrants, if any (in the case of the Series A-1 Units), shall become unreserved and unrestricted, and which shall be either (x) added to the Creditor Trust Administrative Expense Reserve (in the case of the Series A-1 Units) or the Creditor Trust Litigation Expense Sub-Reserve attributable to the Series of Class A Units to be cancelled and retired, or (y) made available for distribution to the Unitholders in accordance with the distribution provisions set forth in Section 4.1; <u>provided</u> that the Creditor Trust Board, may in its sole discretion, retain such number of Class A Units of the respective Series, New Warrants, if any (in the case of the Series A-1 Units), and amount of Distributable Creditor Trust Assets in the Disputed Claims Reserve that would otherwise have been cancelled, retired or made unreserved or unrestricted, as applicable, pursuant to this Section 4.5(c), if it

determines that such Class A Units, New Warrants, if any (in the case of the Series A-1 Units), and Distributable Creditor Trust Assets may be necessary to satisfy Disputed General Unsecured Claims corresponding to the respective Series of Class A Units that may become Allowed in the future.

4.6     Withholding and Reporting Requirements.   The Creditor Trust may withhold and pay to the appropriate Tax Authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or distribution to the Unitholders. All such amounts withheld and paid to the appropriate Tax Authority shall be treated as amounts distributed to such holders for all purposes of the Plan and this Creditor Trust Agreement. To the extent an amount has been placed in escrow pending resolution of the need to withhold, and the Creditor Trust determines that no withholding is required, such amounts shall be distributed to the Unitholders with respect to whom such amounts were previously withheld.   The Creditor Trust shall be authorized to collect such tax information from the Unitholders (including social security numbers or other tax identification information) as it in its sole discretion deems necessary to effectuate the Plan and this Creditor Trust Agreement.   To that end, the Creditor Trust shall send to each Unitholder a written communication requesting that the Unitholder provide certain tax information and the specifics of their holdings to the extent the Creditor Trust or such Disbursing Agent deems appropriate (including completing the appropriate Internal Revenue Service Form W-8 or Internal Revenue Service Form W-9, as applicable to each holder).   The Creditor Trust may refuse to make a distribution to any Unitholder that fails to furnish such information in a timely fashion, until such information is delivered; provided, however, that, upon the delivery of such information by a Unitholder, the Creditor Trust shall make such distribution(s) to which the Unitholder is entitled, without interest; provided further that, if the holder fails to comply with such a request within one (1) year, during which time the Creditor Trust has made reasonable efforts to follow up on such request, (i) any pending distribution(s) allocated to such Unitholder shall be deemed an unclaimed distribution to be treated as the Creditor Trust Board determines in its discretion; and (ii) the Creditor Trust shall not be required to allocate any future distributions to such holder unless and until the holder provides the requested tax information; and provided further that, if the Creditor Trust fails to withhold in respect of amounts received or distributable with respect to any such holder and the Creditor Trust is later held liable for the amount of such withholding, such holder shall reimburse the Creditor Trust for such liability including interest, penalties, fines and other additional amounts with respect thereto.   Notwithstanding the foregoing, each Unitholder that receives a distribution under the Plan shall have the sole and exclusive responsibility for the payment of any Taxes imposed by any governmental unit, including income, withholding and other Taxes, on account of such distribution.

4.7     Disbursing Agent.   The Creditor Trust Administrator shall initially be the Disbursing Agent responsible for distributing the Units.   The Creditor Trust Board or the Creditor Trust Administrator may engage one or more agents to make distributions, including distributions of Units.   References in this Creditor Trust Agreement to distributions by the Creditor Trust shall include distributions made by a Disbursing Agent.

4.8     Rights Offerings.

(a)    If the Creditor Trust Board determines by Unanimous Consent that there are, or there are likely to be, insufficient funds (i) in the Creditor Trust Administrative Expense Reserve to satisfy reasonable costs and expenses of the Creditor Trust and other obligations and liabilities incurred, assumed or reasonably anticipated by the Creditor Trust (or to which the Creditor Trust Assets are otherwise subject), other than with respect to the Litigation Assets, or (ii) in the Creditor Trust Litigation Expense Reserve for the purpose of paying costs, fees and expenses of pursuing the Creditor Trust Causes of Action or otherwise pursuing, preserving or protecting the Litigation Assets, the Creditor Trust Board may cause only by Unanimous Consent the Creditor Trust to (x) conduct at any time, or from time to time, one or more Rights Offerings of Class C Units or (y) borrow sufficient funds, on terms approved by Unanimous Consent and in accordance with Section 4.9, to satisfy such cost and expenses or pay such costs, fees and expenses, as applicable.  A Rights Offering shall be conducted by distributing Rights to the holders of Series A-1 Units and holders of Class B Units who are Accredited Investors.  Such distribution shall be made Pro Rata to the Unitholders entitled to participate in the Rights Offering.  The terms of each Right distributed in a particular Rights Offering shall be identical to all other Rights distributed in that Rights Offering, but Rights distributed in different Rights Offerings may have such other terms as determined by the Creditor Trust Board by Unanimous Consent.  Exercise of the Rights shall be at the election of the holders thereof, and no holder of a Class A-1 Unit or holder of Class B Unit shall suffer any penalty for the failure to exercise a Right, except to the extent of the reduction, Pro Rata with all other holders of Series A-1 Units and/or holders of Class B Units, in the distributions that may otherwise be payable out of Litigation Assets on account of the distributions payable to holders of Class C Units, as provided in Section 4.8(b) below.

(b)    Distributions to holders of Class C Units shall be made solely out of (x) Distributable Creditor Trust RCS Litigation Assets and (y) RCS Debtor Subsidiary Litigation Assets only to the extent they become distributable to holders of Series A-1 Units and the holders of the Class B Units under Section 4.1(d)(ii) above, as the Creditor Trust Board shall determine, either (i) as a preferred return, together with a cumulative dividend at a fixed or floating rate, with such priority over distributions to holders of Series A-1 Units, holders of Class B Units or holders of Class C Units of any other Series, as the Creditor Trust Board shall determine by Unanimous Consent; (ii) as a participation in distributions of Distributable Creditor Trust RCS Litigation Assets, in such fixed percentage and in such order of priority over distributions to holders of Series A-1 Units, holders of Class B Units or holders of Class C Units of any other Series as the Creditor Trust Board shall determine by Unanimous Consent; or (iii) as a combination of distributions under clauses (i) and (ii) of this Section 4.8(b); provided that any preferred return or participation in distributions provided to holders of Class C Units pursuant to this Section 4.8(b) shall not affect the relative allocations of distributions of Distributable Creditor Trust Litigation Assets between the holders of Series A-1 Units, on the one hand, and the Class B Units, on the other hand, which shall be made pursuant to the terms of Section 4.1(c) and Section 4.1(d)(ii).

(c)    Subject to the foregoing provisions of this Section 4.8, the terms and conditions of a Rights Offering shall be as determined by the Creditor Trust Board by Unanimous Consent, including:

(i)    the terms and designation of the Series of Class C Units that are the subject of the Rights Offering;

(ii)    the exercise price per Class C Unit of each Right distributed in the Rights Offering;

(iii)    whether oversubscription rights shall be available in the Rights Offering;

(iv)    the time period during which the Rights distributed in the Rights Offering may be exercised;

(v)    the manner of payment of the exercise price of the Rights distributed in the Rights Offering; and

(vi)    the basis, if any, on which the Creditor Trust may terminate the Rights Offering prior to its consummation.

(d)    The Creditor Trust shall distribute to holders of Rights in a Rights Offering such information concerning the business and affairs of the Creditor Trust and the Litigation Assets as the Creditor Trust Board shall determine and as shall be such as to comply with applicable securities laws.

(e)    The Creditor Trust Board shall take such actions as are fair and equitable in the discretion of the Creditor Trust Board to compensate Unitholders that are not Accredited Investors for such Unitholders' inability to participate in the Rights Offering.

4.9    <u>Incurrence of Debt</u>.  If the Creditor Trust Board determines pursuant to <u>Section 4.8(a)</u> that the Creditor Trust may be required to incur debt to fund a shortfall in the Creditor Trust Administrative Expense Reserve or the Creditor Trust Litigation Expense Reserve, the Creditor Trust shall deliver a notice to each Major Holder describing the general terms under which the Creditor Trust is contemplating such debt incurrence.  Notices delivered pursuant to this <u>Section 4.9</u> shall be delivered in accordance with <u>Section 11.4</u> and shall be sent no less than 14 days prior to the execution of any commitment letter, fee letter, or other definitive documents governing such incurrence of, or any obligation to pursue the incurrence of, such debt.

## ARTICLE V
## BOARD OF TRUSTEES

5.1    <u>General</u>.   The affairs of the Creditor Trust shall be managed by, or under the direction, of the Creditor Trust Board, which shall have such powers and authority as are provided in this <u>Article V</u> and as elsewhere set forth in this Creditor Trust Agreement and in the Trust Act.

5.2    <u>Membership</u>.

(a)    The Creditor Trust Board shall consist of three (3) Creditor Trustees. Each Creditor Trustee shall be a natural person at least 18 years of age.  Each Person appointed

01:18593549.3

as a Creditor Trustee shall be deemed a trustee under the Trust Act, with all privileges and immunities appurtenant thereto, and, as necessary or applicable, shall be deemed appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The initial Creditor Trustees are set forth on the signature page to this Creditor Trust Agreement, each of whom shall be selected by one of the Nominating Parties.  By execution hereof, each Creditor Trustee accepts his or her trusteeship of the Creditor Trust on the terms set forth herein.

(b)    Each Creditor Trustee shall hold office until the earlier of (i) the termination of the Creditor Trust, (ii) the resignation, death or disability of such Creditor Trustee or (iii) the removal of such Creditor Trustee in accordance with this Creditor Trust Agreement.

(c)    Any Creditor Trustee may resign upon thirty (30) days' prior written notice to the other members of the Creditor Trust Board.

(d)    A Creditor Trustee may be removed only for Cause by order of the Bankruptcy Court upon application of the other members of the Creditor Trust Board acting unanimously.

(e)    In the event of a vacancy on the Creditor Trust Board, whether as a result of the resignation, death, disability or removal of a Creditor Trustee, the Nominating Party that appointed the Creditor Trustee that has resigned, died, become disabled or has been removed shall for a period of sixty (60) days have an exclusive right to appoint a replacement Creditor Trustee.  If such Nominating Party fails to appoint a replacement Creditor Trustee within sixty (60) days of such vacancy as aforesaid, the remaining Creditor Trustees shall, by Unanimous Consent, either (x) promptly appoint a replacement Creditor Trustee or (y) determine to reduce the board size and thereby eliminate the vacancy.

5.3    Compensation.    The initial aggregate compensation of the Creditor Trustees shall be $90,000 per annum. The Creditor Trust Board shall have the authority, by Unanimous Consent to alter the compensation of the Creditor Trustees, which may include their expenses, if any, of attendance at meetings of the Creditor Trust Board or any committee thereof, which compensation shall be included in the Creditor Trust Budget.

5.4    Authority.

(a)    The Creditor Trust Board shall be responsible for exercising the authority and performing the obligations of the Creditor Trust expressly provided for in this Creditor Trust Agreement, otherwise giving effect to the intents and purposes of this Creditor Trust Agreement, and exercising the rights of trustees under the Trust Act.

(b)    Without limiting the generality of the preceding subsection, and in furtherance thereof, the Creditor Trust Board shall be expressly authorized and empowered to undertake, acting as appropriate through the Creditor Trust Administrator and Creditor Trust Agents, the following actions on behalf of the Creditor Trust, without the need for any additional approvals, authorization, or consents and without any further notice to or action, order or approval of the Bankruptcy Court; provided, that all such actions are undertaken in a

manner consistent with the purposes and intents of the Creditor Trust and this Creditor Trust Agreement:

(i)    to hold, manage, dispose of, sell, convert to Cash, and distribute the Creditor Trust Assets, including investigating, prosecuting and resolving the Creditor Trust Causes of Action included therein;

(ii)    to hold the Creditor Trust Assets for the benefit of Creditor Trust Beneficiaries and, in its capacity overseeing the Creditor Trust Administrator acting as a Disbursing Agent, the holders of Allowed General Unsecured Claims and Allowed Second Lien Deficiency Claims, whether such beneficiaries' and holders' Claims are Allowed on or after the Effective Date;

(iii)    to establish and administer the Creditor Trust Administrative Expense Reserve and the Creditor Trust Litigation Expense Reserve, and to fund each of them from time to time, as and to the extent deemed necessary by the Creditor Trust Board pursuant to Sections 6.4(b) and 6.5(b), and to otherwise enter into such arrangements as the Creditor Trust Board deems necessary or advisable to finance the prosecution of the Creditor Trust Causes of Action, subject to (x) with respect to any agreement or arrangement to finance the prosecution of the Creditor Trust Causes of Action, Sections 4.8 and 4.9, (y) in the case of the Creditor Trust Administrative Expense Reserve, Section 6.4, and (z) in the case of the Creditor Trust Litigation Expense Reserve, Section 6.5;

(iv)    to establish and administer the Disputed Claims Reserve;

(v)    to incur, assume or guarantee any debt in the furtherance of the purposes of the Creditor Trust, or incur any lien in respect of any such debt of the Creditor Trust, subject to Section 4.9;

(vi)    to appoint, engage, review, supervise, remove, replace and determine the compensation payable to the Creditor Trust Management and Creditor Trust Agents;

(vii)    to supervise the Creditor Trust Administrator in settling or otherwise resolving Disputed General Unsecured Claims in accordance with the terms of the Plan Documents;

(viii)    to the extent consistent with the terms of the Plan, to investigate, prosecute, settle, liquidate, dispose of, and/or abandon the Creditor Trust Assets, including Creditor Trust Causes of Action and other Litigation Assets, and to direct the Creditor Trust Administrator in respect of the Litigation Assets;

(ix)    to monitor and enforce the implementation of the Plan insofar as relating to the Creditor Trust Assets;

(x)    to file all Tax Returns and regulatory forms, returns, reports and other documents and financial information required to be filed with respect to the Creditor

01:18593549.3

33

Trust, including filing Tax Returns as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and reports required to be filed with the Bankruptcy Court;

(xi)    to make distributions of Distributable Creditor Trust Assets to Unitholders;

(xii)    to retain in the Creditor Trust for the benefit of the holders of Class A Units, or distribute to the holders of Series A-1 Units, the New Warrants, in whole or in part, and if New Warrants are retained in the Creditor Trust, to determine whether and when to exercise such New Warrants and, if the holder of a New Warrant has the right by its terms to elect the type of consideration to be received upon exercise thereof, or to elect to exchange the New Warrant for securities or other consideration, to exercise that right of election;

(xiii)    to maintain and dispose of the books and records transferred to the Creditor Trust, as provided in Section 2.12 and Section 10.3;

(xiv)    to prepare and disseminate reports, as provided in Section 6.6;

(xv)    to enter into and exercise rights under contracts that are necessary or desirable to the administration of the Creditor Trust and execute any documents or pleadings related to the liquidation of the Creditor Trust Assets or other matters related to the Creditor Trust;

(xvi)    to establish and maintain bank accounts and terminate such accounts;

(xvii)    to bring suits or defend itself against such suits, if any, in connection with any matter arising from or related to the Plan Documents that affects in any way the rights or obligations of the Creditor Trust, the Creditor Trust Beneficiaries or, in its capacity overseeing the Creditor Trust Administrator acting as a Disbursing Agent, the holders of Allowed General Unsecured Claims and Allowed Second Lien Deficiency Claims (whether such Claims are Allowed as of the Effective Date or become Allowed at any subsequent time), in their capacities as such;

(xviii)    to obtain and maintain insurance coverage (including tail insurance) with respect to the liabilities and obligations of the Creditor Trust Board and the Creditor Trust Administrator, and, if so determined by the Creditor Trust Board, such other insurance as the Creditor Trust Board determines as appropriate for the circumstances from time to time;

(xix)    to invest Creditor Trust Assets (including any earnings thereon or proceeds therefrom) in the manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities, including Revenue Procedure 94-45, 1994-2 C.B. 684; provided, however, that the Creditor Trust Board shall only authorize investments that are temporary investments in short-term government securities, time deposits, certificates of deposit,

bankers' acceptances, commercial paper and money market funds or similar temporary, liquid, short-term investments;

(xx)    to take all actions necessary and appropriate to minimize any adverse Tax consequences to the Creditor Trust Beneficiaries; provided that such actions do not result in an adverse Tax consequence to the Creditor Trust and are consistent with and are not contrary to the treatment of the Creditor Trust as a "grantor trust" for United States federal income Tax purposes; and

(xxi)    to remove and replace the Delaware Trustee.

(c)    The Creditor Trust Board shall comply with all applicable laws, shall act to maximize the distributions to Unitholders to the extent reasonably possible under the circumstances and in furtherance of the purposes of this Creditor Trust.

5.5    Actions of the Creditor Trust Board.

(a)    Unless otherwise specified in this Creditor Trust Agreement, the Creditor Trust Board shall act by Majority Consent.

(b)    Notwithstanding anything to the contrary contained herein, the following actions of the Creditor Trust Board shall require Unanimous Consent:

(i)    to incur, assume or guarantee any debt in the furtherance of the purposes of the Creditor Trust, or incur any lien in respect of any such debt of the Creditor Trust;

(ii)    to remove, replace and determine the compensation payable to the Creditor Trust Administrator;

(iii)    to exercise, exchange or otherwise sell, transfer or dispose of New Warrants or to allocate Cash constituting New Warrant Proceeds to the Creditor Trust Administrative Expense Reserve or the Creditor Trust Litigation Expense Reserve; and

(iv)    to cause the Creditor Trust to conduct a Rights Offering in accordance with Section 4.8.

5.6    Meetings.

(a)    The Creditor Trust Board shall hold regular meetings, at such time and at such place as shall from time to time be determined by the Creditor Trustees.  No notice of regular meetings need be given.

(b)    Special meetings of the Creditor Trust Board may be called by the Chairman of the Creditor Trust Board, any two (2) Creditor Trustees or the Creditor Trust Administrator.

(c)    Written notice of the time and place of special meetings of the Creditor Trust Board shall be given to each Creditor Trustee by either personal delivery, facsimile or

other means of electronic communication at least two (2) Business Days prior to such meeting. Notice of a meeting of the Creditor Trust Board need not be given to any Creditor Trustee who signs a waiver of notice either before or after the meeting. Attendance of a Creditor Trustee at a meeting shall constitute a waiver of notice of such meeting, except when a Creditor Trustee states, at the beginning of the meeting, any objection to the transaction of business because the meeting has not been convened or called in accordance with applicable law or this Creditor Trust Agreement.

(d)    A majority of the members constituting the whole Creditor Trust Board shall constitute a quorum for the transaction of business at such meeting of the Creditor Trust Board, but if less than a majority is present at a meeting, the Creditor Trustee present may adjourn the meeting from time to time. When a meeting is adjourned to another time or place (whether or not a quorum is present), prompt notice shall be given of the adjourned meeting and the time and place thereof will be announced at the meeting at which the adjournment is taken. At the adjourned meeting, the Creditor Trustees may transact any business which might have been transacted at the original meeting.

(e)    Meetings may be held in person within or without the State of Delaware, telephonically or electronically, and upon such notice as may be determined from time to time in accordance with this Agreement, and any member of the Creditor Trust Board who participates by such means shall be deemed to be present for purposes of quorum under Section 5.6(d).

(f)    Members of the Creditor Trust Board may also act by written consent in lieu of a meeting, which consent may be less than unanimous, provided each of the Creditor Trustees shall have received notice of the action to be taken by written consent in lieu of a meeting at least two (2) Business Days in advance of the effectiveness thereof. Such act by written consent shall require no less than Majority Consent or, if such act requires Unanimous Consent under this Creditor Trust Agreement, Unanimous Consent. Any such written consent shall be filed with the minutes of the proceedings of the Creditor Trust Board as soon as reasonably practicable.

5.7    Chairman of the Creditor Trust Board.

(a)    The Creditor Trust Board may elect from among its members a Chairman of the Creditor Trust Board. The Chairman of the Creditor Trust Board may be removed and replaced as Chairman at any time by Majority Consent of the Creditor Trust Board.

(b)    The Chairman of the Creditor Trust Board shall preside at all meetings of the Creditor Trust Board at which he or she shall be present and shall exercise such other functions, authorities and duties as may be prescribed by the Creditor Trust Board. If the Chairman of the Creditor Trust Board is not present for a meeting, a Creditor Trustee chosen by a majority of the members of the Creditor Trust Board present, shall act as chairman at such meeting of the Creditor Trust Board. The Chairman of the Creditor Trust Board shall not be considered an officer of the Creditor Trust solely by virtue of serving in such capacity.

01:18593549.3

36

5.8    Fiduciary Duty and Standard of Care.

(a)    Each Creditor Trustee's powers are exercisable solely in a fiduciary capacity on behalf of the Creditor Trust and the Creditor Trust Beneficiaries consistent with, and in furtherance of, the purpose of the Creditor Trust and not otherwise, and in accordance with applicable law, including the Trust Act.  Each Creditor Trustee in the exercise of his or her duties hereunder shall act in accordance with principles of good faith and fair dealing.

(b)    No Creditor Trustee in a personal capacity shall have the authority to bind the Creditor Trust Board.

## ARTICLE VI
## OPERATION OF THE CREDITOR TRUST

6.1    Prohibited Activities.

(a)    The Creditor Trust Board, the Creditor Trust Management and the Creditor Trust Agents shall hold the Creditor Trust out as a trust in the process of liquidation, whose activities are limited to the liquidation of the Creditor Trust Assets on behalf, and for the benefit, of the Creditor Trust Beneficiaries and, in the Creditor Trust Administrator's capacity as Disbursing Agent, the holders of Allowed General Unsecured Claims (whether such Claims are Allowed as of the Effective Date or become Allowed at any subsequent time) and Allowed Second Lien Deficiency Claims and the other purposes set forth in this Creditor Trust Agreement.  Without limiting the foregoing, the Creditor Trust shall not hold itself out as an investment company, and no part of the Creditor Trust Assets shall be caused by the Creditor Trust Board to be used or disposed of in furtherance of any trade or business.

(b)    The Creditor Trust shall not engage in any investments or activities inconsistent with the treatment of the Creditor Trust as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d) or under applicable Internal Revenue Service guidelines, rulings or other controlling authorities, including Revenue Procedure 94-45, 1994-2 C.B. 684.

6.2    Resolution of Disputed General Unsecured Claims.

(a)    The Creditor Trust Administrator is authorized to administer, dispute, object to compromise or otherwise resolve, on behalf of the Creditor Trust, all Disputed General Unsecured Claims without further Bankruptcy Court order and, subject to the approval of the Creditor Trust Board, may delegate this authority to one or more Creditor Trust Agents. If the Creditor Trust Administrator or Creditor Trust Agent, as applicable, and the holder of a Disputed General Unsecured Claim are unable to reach a settlement on a Disputed General Unsecured Claim, or if the Creditor Trust Administrator or Creditor Trust Agent, as applicable, determines to disallow a Disputed General Unsecured Claim, the Creditor Trust Administrator shall submit an objection to the Disputed General Unsecured Claim to the Bankruptcy Court for resolution. Service of this objection shall be made in accordance with any of the following manners: (i) in accordance with Bankruptcy Rule 3007, (ii) to the extent counsel for a holder of the Disputed General Unsecured Claim is unknown, by first-Class mail, postage prepaid, on the signatory on the proof of claim filed such holder or other representative identified on the

proof of claim or any attachment thereto (or at the last known address of such holder if no proof of claim is Filed or if the Creditor Trust Administrator have been notified in writing of a change of address), or (iii) by first-Class mail, postage prepaid, on any counsel that has appeared on behalf of the holder and has not withdrawn such appearance. If it is determined that the Bankruptcy Court does not have jurisdiction to resolve any Disputed General Unsecured Claim, then such Disputed General Unsecured Claim shall be submitted to the United States District Court for the District of Delaware for resolution. The Creditor Trust Administrator shall file with the Bankruptcy Court a bi-annual notice of Disputed General Unsecured Claims resolved and/or settled during the prior quarter following the end of each fiscal quarter, starting with the first complete fiscal quarter after the Effective Date. Any objections to Disputed General Unsecured Claims shall be served and filed on or before the later of (i) one year after the Effective Date, or (ii) such other date as may be fixed by the Bankruptcy Court, after notice and a hearing, with notice only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

(b)    Disputed General Unsecured Claims that become Allowed, in whole or in part, shall be satisfied exclusively out of the Disputed Claims Reserve, in the manner provided in Article III and Article IV, and in the order in which such Disputed General Unsecured Claims are Allowed. In the event the Class A Units of a Series remaining in the Disputed Claims Reserve, and Distributable Creditor Trust Assets and New Warrants, if any (in the case of the Series A-1 Units), distributed with respect thereto, shall be insufficient to satisfy all the Disputed General Unsecured Claims corresponding to such Series that have become Allowed, in the manner such Claims would have been satisfied had such Disputed General Unsecured Claims been Allowed on the Initial Unit Distribution Record Date, and are due to be satisfied with distributions from the Disputed Claims Reserve on any Unit Distribution Date, the Disputed General Unsecured Claims applicable to such Series shall be satisfied pro rata in proportion to their respective Allowed Claim amounts. After all Class A Units of a Series, and Distributable Creditor Trust Assets and New Warrants, if any (in the case of the Series A-1 Units), distributed with respect thereto, have been distributed from the Disputed Claims Reserve, no further distributions shall be made in respect of Disputed General Unsecured Claims applicable to such Series.

6.3    Disputed Claims Reserve.

(a)    On or as soon as practicable following the Effective Date, the Creditor Trust shall establish the Disputed Claims Reserve, into which there shall be deposited the number of Class A Units determined in accordance with Section 3.2(c). All Class A Units and other assets in the Disputed Claims Reserve shall be the property of the Creditor Trust and not of the holder of any Claim or any other person.

(b)    All Cash held in the Disputed Claims Reserve shall be maintained with a United States FDIC insured financial institution, and may be maintained in an interest-bearing account, as the Creditor Trust Board may from time to time determine. The Cash in the Disputed Claims Reserve shall be held separately and shall not be commingled with any other Cash constituting Creditor Trust Assets.

6.4    Creditor Trust Administrative Expense Reserve.

(a)      On the Effective Date, there shall be established a Creditor Trust Administrative Expense Reserve for the purpose of maintaining Cash allocated and retained by the Creditor Trust from time to time in an amount necessary (subject to the Creditor Trust Budget) to satisfy reasonable costs and expenses of the Creditor Trust and other obligations and liabilities incurred, assumed or reasonably anticipated by the Creditor Trust (or to which the Creditor Assets are otherwise subject) in accordance with the Plan Documents, other than with respect to the Litigation Assets, including without limitation (i) fees and costs incurred in connection with the protection, preservation, liquidation and distribution of the Creditor Assets; (ii) the fees and costs incurred in connection with investigating, prosecuting and resolving Disputed General Unsecured Claims; (iii) the fees and costs of maintaining the Disputed Claims Reserve and the Creditor Trust Administrative Expense Reserve; (iv) reserves for any judgments, settlements or other Cash liabilities or potential liabilities that are or may be payable by the Creditor Trust, as determined by the Creditor Trust Board; (v) the compensation of the Delaware Trustee, the Creditor Trustees and the Creditor Trust Management, and the expenses that may be incurred by them in the performance of their duties hereunder; (vi) any Taxes imposed on the Creditor Trust or in respect of the Creditor Trust Assets or otherwise, including any Taxes imposed on the Disputed Claims Reserve payable from the Creditor Trust Administrative Expense Reserve in accordance with Section 8.3(b); (vii) the fees and expenses of the Creditor Trust Agents, and professional fees; and (viii) such other costs, fees and expenses as shall be provided for in the Creditor Trust Budget and as may be incurred in carrying out the purposes and intents of this Creditor Trust Agreement.  The Creditor Trust Administrative Expense Reserve shall initially be funded from Cash included in the Creditor Assets, in such amount as determined by the Creditor Trust Board, provided that the aggregate initial funding of (i) the Creditor Trust Administrative Expense Reserve pursuant to this Section 6.4(b) and (ii) the Litigation Expense Reserve pursuant to Section 6.5(b), shall be not less than three million dollars ($3,000,000).  Thereafter, additional amounts may be added to the Creditor Trust Administrative Expense Reserve, in each case in such amounts and at such times as determined by the Creditor Trust Board, (x) by transfer of funds from the Creditor Trust Litigation Expense Sub-Reserve attributable to the RCS Litigation Assets, (y) from Cash constituting New Warrant Proceeds, and (z) from the proceeds of any Rights Offering or any indebtedness incurred by the Creditor Trust.

(c)      If any funds in the Creditor Trust Administrative Expense Reserve are not required for purposes of set forth in Section 6.4(a), such funds shall be applied as follows:

(i)      *First*, to the extent the Creditor Trust Administrator determines that any additional amounts are required therefor, such amounts shall be deposited to the Creditor Trust Litigation Expense Sub-Reserve established with respect to RCS Litigation Assets;

(ii)      *Second*, to the extent any Cash constituting New Warrant Proceeds has been deposited to the Creditor Trust Administrative Expense Reserve, an amount equal to (I) the amount of such deposited Cash proceeds plus (II) any commercially reasonable return on such Cash as the Creditor Trust Board shall determine to apply shall be distributed to the holders of Series A-1 Units;

(iii)    *Third*, to the extent any funds transferred from the Creditor Trust Litigation Expense Sub-Reserve established with respect to the RCS Litigation Assets have been deposited to Creditor Trust Administrative Expense Reserve (other than as repayment pursuant to Section 6.5(c)(iv)(c)), an amount equal to the amount of such funds shall be returned to the Creditor Trust Litigation Expense Sub Reserve established with respect to the RCS Litigation Assets;

(iv)    *Fourth,* to the extent the proceeds of any Rights Offering have been deposited to the Creditor Trust Administrative Expense Reserve, an amount equal to such proceeds shall become Distributable Creditor Trust RCS Litigation Assets; and

(v)    *Fifth*, any such remaining funds shall be distributed Pro Rata to the holders of Series A-1 Units.

(d)    Except as determined by the Creditor Trust Administrator, the Creditor Trust Administrative Expense Reserve shall not be required to be held separately and may be commingled with unrestricted funds of the Creditor Trust; provided that funds in the Creditor Trust Administrative Expense Reserve shall be separately accounted for.

6.5    Creditor Trust Litigation Expense Reserve.

(a)    On the Effective Date, there shall be established a Creditor Trust Litigation Expense Reserve for the purpose of maintaining Cash allocated and retained by the Creditor Trust from time to time in an amount necessary (subject to the Creditor Trust Budget) to satisfy reasonable costs and expenses of the Creditor Trust of pursuing the Causes of Action included in the Litigation Assets or otherwise pursuing, preserving or protecting the Litigation Assets, including without limitation (i) the fees and expenses of counsel and other professionals engaged by the Creditor Trust for the purpose of pursuing the Creditor Trust Causes of Action; (ii) the compensation of the Creditor Trust Management, to the extent engaged with respect to pursuing, preserving or protecting the Litigation Assets; (iii) the fees and costs of maintaining the Creditor Trust Litigation Expense Reserve; (iv) any Taxes imposed on the Creditor Trust with respect to the Litigation Assets; and (v) such other costs, fees and expenses as shall be provided for in the Creditor Trust Budget and as may be incurred in connection with pursuing, preserving or protecting the Litigation Assets.

(b)    The Creditor Trust Litigation Expense Reserve shall initially be funded from Cash included in the Creditor Assets, in such amount as determined by the Creditor Trust Board provided that the aggregate initial funding of (i) the Litigation Expense Reserve pursuant to this Section 6.5(b) and (ii) the Creditor Trust Administrative Expense Reserve pursuant to Section 6.4(b), shall be not less than three million dollars ($3,000,000).  Thereafter, additional amounts may be added to the Creditor Trust Litigation Expense Reserve, in each case in such amounts and at such times as determined by the Creditor Trust Board, (v) by transfer of funds from the Creditor Trust Administrative Expense Reserve, (w) from the proceeds of RCS Litigation Assets, (x) from the proceeds of RCS Debtor Subsidiary Litigation Assets, (y) from Cash constituting New Warrant Proceeds, and (z) from the proceeds of any Rights Offering or any indebtedness incurred by the Creditor Trust.

(c)     The Creditor Trust Administrator shall apply funds in the Creditor Trust Litigation Expense Reserve to pursuing such Creditor Trust Causes of Action, and pursuing preserving or protecting such of the Litigation Assets, as it shall determine under the direction of the Creditor Trust Board, subject to the following provisions:

(i)     There shall be established sub-reserves (each a "Creditor Trust Litigation Expense Sub-Reserve") in the Creditor Trust Litigation Expense Reserve with respect to the RCS Litigation Assets and, separately, the RCS Debtor Subsidiary Litigation Assets attributable to each Subsidiary Debtor.

(ii)     The initial Cash from the Creditor Trust Assets, any transfers from the Creditor Trust Administrative Expense Reserve, proceeds of RCS Litigation Assets and proceeds of any Rights Offering shall be deposited to the Creditor Trust Litigation Expense Sub-Reserve established with respect to the RCS Litigation Assets.  Proceeds of any RCS Debtor Subsidiary Litigation Assets shall be deposited to the Creditor Trust Litigation Expense Sub-Reserve established with respect to the RCS Debtor Subsidiary Litigation Assets of the respective Corresponding Debtor.

(iii)     If and to the extent funds from any Creditor Trust Litigation Expense Sub-Reserve are utilized for purposes of Litigation Assets attributable to any Debtor entity other than the Debtor entity with respect to which such Creditor Trust Litigation Expense Sub-Reserve was established, then, before any distribution is made to the holders of any Series or Class of Units entitled to receive the proceeds of such Litigation Assets, there shall be returned to the Creditor Trust Litigation Expense Sub-Reserve from which such utilized funds were obtained an amount equal to (I) the funds so utilized plus (II) any commercially reasonable return on such funds as the Creditor Trust Board shall determine to apply.

(iv)     If any funds in the Creditor Trust Litigation Expense Sub-Reserve established with respect to RCS Litigation Assets are not required for purposes of the Litigation Assets, such funds shall be applied as follows:

(a)     First, to the extent the Creditor Trust Administrator determines that any additional amounts are required therefor, such funds shall be deposited to the Creditor Trust Administrative Expense Reserve;

(b)     Second, to the extent any Cash constituting New Warrant Proceeds have been deposited to such Creditor Trust Litigation Expense Sub-Reserve, an amount equal to (I) the amount of such deposited Cash proceeds plus (II) any commercially reasonable return on such Cash as the Creditor Trust Board shall determine to apply, shall be distributed to the holders of Series A-1 Units;

(c)     Third, to the extent any funds transferred from the Creditor Trust Administrative Expense Reserve have been deposited to such Creditor Trust Litigation Expense Sub-Reserve (other than as repayment pursuant to Section

6.4(c)(iii)), an amount equal to the amount of such funds shall be returned to the Creditor Trust Administrative Expense Reserve; and

(d)     *Fourth*, any remaining funds shall become Distributable Creditor Trust RCS Litigation Assets.

(v)     If any funds in the Creditor Trust Litigation Expense Sub-Reserve established with respect to RCS Debtor Subsidiary Litigation Assets are not required for purposes of the Litigation Assets, such funds shall become Distributable Creditor Trust RCS Debtor Subsidiary Litigation Assets available for distribution pursuant to Section 4.1(d).

(vi)     The Creditor Trust Administrator shall charge the common costs and expenses of pursuing, preserving or protecting the Litigation Assets, including those enumerated in Section 6.5(a), among the Creditor Trust Litigation Expense Sub-Reserves in such manner as it determines is fair and equitable.

(d)     Except as determined by the Creditor Trust Administrator, funds in the Creditor Trust Litigation Expense Reserve, or any Creditor Trust Litigation Expense Sub-Reserve, shall not be required to be held separately and may be commingled with unrestricted funds of the Creditor Trust; provided that funds in the Creditor Trust Litigation Expense Reserve, and in any Creditor Trust Litigation Expense Sub-Reserve shall be separately accounted for.

6.6     Reporting and Access to Information.

(a)     For so long as the Creditor Trust is in existence, the Reorganized Debtors shall (i) cooperate with the Creditor Trust with respect to the transfer to the Creditor Trust of the Litigation Assets and the channeling to the Creditor Trust of all General Unsecured Claims, including by providing copies of all books and records of the Reorganized Debtors in connection therewith, and (ii) shall reasonably cooperate with the Creditor Trust as reasonably requested regarding the Litigation Assets, including by providing documentation, access to employees for interviews and testimony and/or other evidence. Such cooperation will be without charge to the Creditor Trust, except that the Creditor Trust shall reimburse the Reorganized Debtors for their reasonable out-of-pocket expenses.

(b)     The Creditor Trust shall cause to be prepared financial and other reports as, in the determination of the Creditor Trust Board, are necessary or desirable for administering the Creditor Trust, and as are otherwise in furtherance of the intents and purposes of this Creditor Trust Agreement. Without limitation, the Creditor Trust Board shall also cause to be timely prepared, filed and distributed such additional statements, reports and submissions (x) as may be necessary to cause the Creditor Trust to be in compliance with applicable law, including to the extent otherwise necessary to allow the Units to be transferrable and tradable in accordance with applicable law, or (y) as may be otherwise required from time to time by the Bankruptcy Court.

(c)     The Creditor Trust Management shall provide to holders a bi-annual statement in narrative form briefly describing the activities of the Creditor Trust during the two

preceding quarters, in such detail and covering such matters as the Creditor Trust Administrator determines is appropriate in its discretion. The Creditor Trust may also provide such other information regarding the affairs of the Creditor Trust as the Creditor Trust Board, or the Creditor Trust Management acting by delegation of the Creditor Trust Board, determines from time to time to provide in its discretion.

(d)     Section 3819(a) of the Trust Act notwithstanding, Creditor Trust Beneficiaries shall have the right to obtain from the Creditor Trust only (i) the materials required to be provided by the Creditor Trust Management in <u>Section 6.6(c)</u> and (ii) a copy of the governing instrument and the Certificate of Trust and all amendments thereto, together with copies of any written powers attorney pursuant to which the governing instrument and any certificate and any amendments thereto have been executed.

6.7     <u>Creditor Trust Management</u>.

(a)     The officers of the Creditor Trust shall consist of a Creditor Trust Administrator, a secretary and such other officers as the Creditor Trust Board shall deem appropriate (all such officers being collectively referred to as the "<u>Creditor Trust Management</u>").

(b)     The initial Creditor Trust Administrator shall be [●], who shall be entitled to receive as compensation for services in the administration of the Creditor Trust the amounts set forth on <u>Schedule A</u> attached hereto. Such compensation shall be paid out of the Creditor Trust Administrative Expense Reserve or the Creditor Trust Litigation Expense Reserve, as applicable, and shall be consistent with the Creditor Trust Budget. In the event of the death, resignation or removal from office of the initial Creditor Trust Administrator, a successor shall be appointed by the Creditor Trust Board.

(c)     The officers of the Creditor Trust shall be appointed by the Creditor Trust Board and shall hold office until their successors are appointed and qualified or until their earlier death, resignation or removal from office. Any officer may resign at any time by communicating notice of such resignation to the Creditor Trust Board. Any officer may be removed at any time by the Creditor Trust Board with or without cause. The compensation of such officers shall be as determined by the Creditor Trust Board. Such compensation shall be paid out of the Creditor Trust Administrative Expense Reserve or the Creditor Trust Litigation Expense Reserve, as applicable, and shall be consistent with the Creditor Trust Budget.

(d)     The Creditor Trust Administrator shall have the general executive responsibility for the conduct of the affairs of the Creditor Trust, shall perform the functions and take the actions provided for or permitted under this Creditor Trust Agreement, the Plan or in any other agreement executed by the Creditor Trust and shall have such other functions, authority and duties as customarily appertain to the office of the chief executive of a liquidating trust or as may be prescribed by the Creditor Trust Board, subject in each case to the oversight of the Creditor Trust Board and the strategies adopted by the Creditor Trust Board, including but not limited to:

(i)    having general responsibility for the administration of the Creditor Trust;

(ii)    effecting the distribution of Distributable Creditor Trust Assets to Unitholders, as authorized by the Creditor Trust Board consistent with the terms of this Creditor Trust Agreement;

(iii)    having general responsibility for the prosecution and compromise or settlement of the Creditor Trust Causes of Action, including retaining and overseeing counsel and other professionals engaged for the purposes thereof;

(iv)    administering, disputing, objecting to, compromising, or otherwise resolving Disputed General Unsecured Claims that were not otherwise resolved prior to the Effective Date;

(v)    preparing the Creditor Trust Budget and such other documentation and reports as shall be required by the Creditor Trust Board;

(vi)    making payment in respect of the expenses of the Creditor Trust, including establishing appropriate checks and controls to assure that funds are expended in accordance with the Creditor Trust Budget and as otherwise authorized by the Creditor Trust Board;

(vii)    hiring, supervising, compensating and terminating employees of the Creditor Trust, and retaining, overseeing, compensating and terminating any service professionals and other agents engaged with respect to the administration of the Creditor Trust, consistent with the Creditor Trust Budget and as otherwise authorized by the Creditor Trust Board, to the extent delegated to the Creditor Trust Administrator, as provided in this Section 6.7 and in Section 6.8;

(viii)    carrying out the filings required to be made by the Creditor Trust, as described in Section 5.4(b)(x), and providing the statements to Creditor Trust Beneficiaries required to be furnished to them in accordance with Section 8.2(a);

(ix)    executing contracts, agreements, leases, undertakings and other documents in the name and on behalf of the Creditor Trust, consistent with the Creditor Trust Budget and as otherwise authorized by the Creditor Trust Board; and

(x)    communicating with Creditor Trust Beneficiaries and other interested persons on behalf of the Creditor Trust.

Such responsibilities may be carried out directly by the Creditor Trust Administrator, or through employees and agents of the Creditor Trust under the supervision of the Creditor Trust Administrator, except as the Creditor Trust Board shall otherwise direct.

(e)    The secretary of the Creditor Trust shall keep a record of all proceedings of the Creditor Trust Board.  The secretary shall have such other functions, authority and duties as customarily appertain to the office of secretary of a commercial entity or as may be prescribed by the Creditor Trust Board.

(f)    Any officer who is appointed from time to time by the Creditor Trust Board and whose duties are not specified in this Creditor Trust Agreement shall perform such duties and have such functions, authority and duties as may be prescribed by the Creditor Trust Board.

6.8    <u>Creditor Trust Agents</u>.  The Creditor Trust may employ such Creditor Trust Agents, including counsel, advisors, administrators and other professionals, as deemed reasonably necessary or desirable by the Creditor Trust Board to carry out the intents and purposes of the Creditor Trust, without further order from the Bankruptcy Court.  Creditor Trust Agents shall be appointed, and their appointment may be terminated, by the Creditor Trust Board or, if authority in respect thereof is delegated by the Creditor Trust Board to the Creditor Trust Administrator, the Creditor Trust Administrator.  Creditor Trust Agents shall be compensated on such basis as approved by the Creditor Trust Board and shall be paid without further motion, application, notice or other order of the Bankruptcy Court.  The fees and expenses of Creditor Trust Agents shall be satisfied out of the Creditor Trust Administrative Expense Reserve or the Creditor Trust Litigation Expense Reserve, as applicable, and shall be consistent with the Creditor Trust Budget.

## ARTICLE VII
## DELAWARE TRUSTEE

7.1    <u>Appointment</u>.  The Delaware Trustee shall act solely for the purpose of complying with the requirement of section 3807 of the Trust Act, and its powers and obligations hereunder shall become effective upon its execution of this Creditor Trust Agreement.

7.2    <u>Powers</u>.

(a)    Notwithstanding any provision hereof to the contrary, the duties and responsibilities of the Delaware Trustee shall be limited solely to (i) accepting legal process served on the Creditor Trust in the State of Delaware and (ii) the execution of any certificates required to be filed with the office of the Delaware Secretary of State that the Delaware Trustee is required to execute under section 3811 of the Trust Act (including without limitation the Certificate of Trust).  Except as provided in the foregoing sentence, the Delaware Trustee shall have no management responsibilities or owe any fiduciary duties to the Creditor Trust, the Creditor Trust Board, the Creditor Trust Beneficiaries or any other distributee of the Creditor Trust hereunder. The filing of the Certificate of Trust with the Secretary of State of the State of Delaware as provided under the Trust Act is hereby ratified.

(b)    By its execution hereof, the Delaware Trustee accepts the trusteeship of the Creditor Trust on the terms set forth herein. Except as otherwise expressly set forth in <u>Section 7.2(a)</u>, the Delaware Trustee shall not have any duty or liability with respect to the

administration of the Creditor Trust, the investment of the Creditor Trust Assets or the distribution of the Creditor Trust Assets to the Unitholders, and no such duties shall be implied. The Delaware Trustee shall not be liable for the acts or omissions of the Creditor Trust Board or the Creditor Trust Management, nor shall the Delaware Trustee be liable for supervising or monitoring the performance of the duties and obligations of the Creditor Trust Board or the Creditor Trust Management under this Creditor Trust Agreement. The Delaware Trustee shall not be obligated to give any bond or other security for the performance of any of its duties hereunder. The Delaware Trustee shall not be personally liable under any circumstances, except for its own gross negligence, bad faith or willful misconduct in the performance of its express duties under this Creditor Trust Agreement. Without limiting the foregoing:

(i)    the Delaware Trustee shall not be personally liable for any error of judgment made in good faith, except to the extent such error of judgment constitutes willful misconduct, bad faith or gross negligence in the performance of its express duties under this Creditor Trust Agreement;

(ii)    the Delaware Trustee shall not have any duty or obligation to manage or deal with the Creditor Trust Assets, or to otherwise take or refrain from taking any action under the Creditor Trust Agreement except as expressly provided in Section 7.2(a), and no implied trustee duties or obligations shall be deemed to be imposed on the Delaware Trustee;

(iii)    no provision of this Creditor Trust Agreement shall require the Delaware Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder if the Delaware Trustee has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iv)    the Delaware Trustee shall not be personally liable for the validity or sufficiency of this Creditor Trust Agreement, the value or sufficiency of the Creditor Trust Assets or for the due execution hereof by the other parties hereto;

(v)    the Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect;

(vi)    the Delaware Trustee may request the Creditor Trust Board to provide a certificate with regard to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vii)    in the exercise of its duties hereunder, the Delaware Trustee (I) may act directly or through agents or attorneys pursuant to agreements entered

into with any of them and shall not be liable for the acts or omissions of any agents or attorneys selected by it in good faith, and (II) may consult with counsel selected by it in good faith and employed by it, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel;

(viii)   the Delaware Trustee acts solely as Delaware Trustee hereunder and not in its individual capacity, and all persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this Creditor Trust Agreement shall look only to the Creditor Trust Assets for payment or satisfaction thereof;

(ix)   the Delaware Trustee shall not be personally liable for any representation, warranty, covenant, agreement, or indebtedness of the Creditor Trust; and

(x)   the Delaware Trustee shall not incur liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties.  The Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any entity party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.  As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Delaware Trustee may for all purposes hereof rely on a certificate, signed by an officer of the Creditor Trust, as to such fact or matter, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon.

7.3   <u>Compensation</u>.  The Delaware Trustee shall be entitled to receive compensation out of the Creditor Trust Administrative Expense Reserve for the services that the Delaware Trustee performs in accordance with this Creditor Trust Agreement in accordance with such fee schedules as shall be agreed from time to time by the Delaware Trustee and the Creditor Trust Board, and if so required by the Plan Documents or applicable law, as approved by the Bankruptcy Court.  The Delaware Trustee may also consult with counsel (who may be counsel for the Creditor Trust Board) with respect to those matters that relate to the Delaware Trustee's role as the Delaware Trustee of the Creditor Trust, and the reasonable legal fees incurred in connection with such consultation and any other reasonable out-of-pocket expenses of the Delaware Trustee shall be reimbursed out of the Creditor Trust Administrative Expense Reserve.

7.4   <u>Duration and Replacement</u>.  The Delaware Trustee shall serve for the duration of the Creditor Trust or until the earlier of (i) the effective date of the Delaware Trustee's resignation, or (ii) the effective date of the removal of the Delaware Trustee. The Delaware Trustee may resign at any time by giving thirty (30) days' written notice to the Creditor Trust Board; <u>provided, however,</u> that such resignation shall not be effective until such

time as a successor Delaware Trustee has accepted appointment. The Delaware Trustee may be removed with the Majority Consent of the Creditor Trust Board, by providing thirty (30) days' written notice to the Delaware Trustee; provided, however, that such removal shall not be effective until such time as a successor Delaware Trustee has accepted appointment.  Upon the resignation or removal of the Delaware Trustee, the Creditor Trust Board shall appoint a successor Delaware Trustee.  If no successor Delaware Trustee shall have been appointed and shall have accepted such appointment within forty-five (45) days after the giving of such notice of resignation or removal, the Delaware Trustee may petition the Bankruptcy Court for the appointment of a successor Delaware Trustee.  Any successor Delaware Trustee appointed pursuant to this Section shall be eligible to act in such capacity in accordance with this Creditor Trust Agreement and, following compliance with this Section, shall become fully vested with the rights, powers, duties and obligations of its predecessor under this Creditor Trust Agreement, with like effect as if originally named as Delaware Trustee. Any such successor Delaware Trustee shall notify the Delaware Trustee of its appointment by providing written notice to the Delaware Trustee and upon receipt of such notice, the Delaware Trustee shall be discharged of its duties herein.  Any such successor Delaware Trustee shall also file an amendment to the Certificate of Trust as required by the Trust Act.

## ARTICLE VIII
## TAX MATTERS

      8.1    Tax Treatment.

      (a)    For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Reorganized Debtors, the Creditor Trust Board and the Unitholders) shall treat the transfer of the Creditor Trust Assets to the Creditor Trust as:

      (i)    a transfer of the Creditor Trust Assets (subject to any obligations relating to those assets) directly to Unitholders, other than Creditor Trust Assets that are allocable to Disputed General Unsecured Claims (which shall be treated as a transfer of such assets to the Disputed Claims Reserve based on the number of Units held in the Disputed Claims Reserve), followed by

      (ii)    the transfer by such Unitholders to the Creditor Trust of such Creditor Trust Assets in exchange for the Units.

      (b)    Accordingly, those holders of Allowed General Unsecured Claims and Allowed Second Lien Deficiency Claims receiving Units shall be treated for United States federal income tax purposes as the grantors and owners of their respective shares of the Creditor Trust Assets other than Creditor Trust Assets that are allocable to Disputed General Unsecured Claims (which shall be treated as a transfer of such assets to the Disputed Claims Reserve based on the number of Units held in the Disputed Claims Reserve). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

      8.2    Tax Reporting.

(a)       The Creditor Trust shall file Tax Returns treating the Creditor Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with the Plan.  The Creditor Trust also shall annually send (or otherwise make available) to each holder of a beneficial interest in the Creditor Trust a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their United States federal income tax returns or to forward the appropriate information to their respective beneficial holders with instructions to report such items on their United States federal income tax returns.  The Creditor Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Creditor Trust that are required by any Governmental Unit or Tax Authority.

(b)       Allocations of Creditor Trust taxable income among the Unitholders will be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described in the Plan) if, immediately prior to such deemed distribution, the Creditor Trust had distributed all of its other assets (valued at their tax book value) to the Unitholders, in each case up to the tax book value of the assets treated as contributed by such holders, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Creditor Trust.  Similarly, taxable loss of the Creditor Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Creditor Trust Assets.  The tax book value of the Creditor Trust Assets for this purpose will equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, and applicable tax regulations, and other applicable administrative and judicial authorities and pronouncements..

(c)       The Creditor Trust shall (A) treat the Disputed Claims Reserve, and the Creditor Trust Assets allocable thereto, as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 by timely making an election, (B) file such Tax Returns and pay such Taxes as may be required consistent with such treatment, and (C) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.

(d)       The Creditor Trust may request an expedited determination of Taxes of the Creditor Trust, including the Disputed Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Creditor Trust for all taxable periods through the dissolution of the Creditor Trust.

8.3      Tax Payment.

(a)       The Creditor Trust shall be responsible for the payment, out of the Creditor Trust Administrative Expense Reserve or the Creditor Trust Litigation Expense Reserve, as appropriate, of any Taxes imposed on the Creditor Trust or the Creditor Trust Assets.

(b)       The Creditor Trust shall utilize Cash in the Disputed Claims Reserve for the payment of any Taxes imposed in respect thereof; provided that in the event, and to the extent, that the Cash in the Disputed Claims Reserve is insufficient to pay all or any portion of

such Taxes, such Taxes shall be paid by the Creditor Trust from the Creditor Trust Administrative Reserve and shall be reimbursed to the Creditor Trust Administrative Reserve by the Disputed Claims Trust to the extent that Cash subsequently becomes available therefor in the Disputed Claims Reserve.  For these purposes, the Taxes attributable to the taxable income arising from assets allocable to Units of a particular Series held in the Disputed Claims Reserve shall, to the extent practicable, be payable or reimbursed, as the case may be, only from the Cash held or becoming available in the Disputed Claims Reserve applicable to that Series.

## ARTICLE IX
## LIMITATION OF LIABILITY AND INDEMNIFICATION

9.1     Limitation of Liability.

(a)     None of the Delaware Trustee, the Creditor Trustees, the Creditor Trust Management, Creditor Trust Agents, or any Nominating Party or their respective principals, advisors or professionals, shall be liable to the Creditor Trust, any Unitholder or any holder of a Disputed General Unsecured Claim for any damages arising out of the creation, operation or termination of the Creditor Trust, including actions taken or omitted in fulfillment of his, her or its duties with respect to the Creditor Trust, except as may be determined by Final Order to have arisen out of such party's gross negligence, bad faith or willful misconduct and, in the case of the Delaware Trustee, in the performance of its express duties under this Creditor Trust Agreement; provided that in no event will any such party be liable for punitive, exemplary, consequential or special damages under any circumstances.  Furthermore, neither the Delaware Trustee nor any Creditor Trustee shall be liable to the Creditor Trust, any Unitholder or any holder of a Disputed General Unsecured Claim for any action taken in good faith reliance upon the advice of Creditor Trust Management.

(b)     None of the Delaware Trustee, the Creditor Trustees, the Creditor Trust Management or the Creditor Trust Agents, when acting in such capacities, shall be subject to any personal liability whatsoever, whether in tort, contract or otherwise, to any person, other than the Creditor Trust or the Creditor Trust Beneficiaries, in connection with the affairs of the Creditor Trust to the fullest extent provided under section 3803 of the Trust Act, and all persons claiming against any of the Delaware Trustee, the Creditor Trustees, the Creditor Trust Management or Creditor Trust Agent, or otherwise asserting claims of any nature in connection with affairs of the Creditor Trust, shall look solely to the Creditor Trust Assets for satisfaction of any such claims.

(c)     Nothing contained in the Plan Documents shall be deemed to be an assumption by the Delaware Trustee, any Creditor Trustee, the Creditor Trust Management or any Creditor Trust Agent of any of the liabilities, obligations or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by any of them to assume or accept any such liability, obligation or duty.

(d)     The exercise by a Nominating Party of its rights hereunder shall not, in any way, cause such Nominating Party to become, or result in such Nominating Party becoming, a fiduciary to the Debtors, their estates, creditors or equity holders, to the Creditor

Trust, the Creditor Trust Board or to any other person or constituency. Neither a Nominating Party nor any of its subsidiaries, affiliates, successors and assigns and its present or former employees, agents, officers, directors or principals shall have or incur any liability, nor shall any of them be subject to any claim or cause of action, of any kind in connection with, arising out of, or related to, the exercise by a Nominating Party of its rights hereunder, or any act taken or omitted to be taken in connection therewith.

9.2    <u>Indemnification</u>.

(a)    The Delaware Trustee, the Creditor Trustees, the Creditor Trust Management and their respective affiliates, and the officers, directors, partners, managers, members, and employees of each of them, as the case may be (all persons so entitled to indemnification, collectively, the "<u>Covered Parties</u>"), shall be indemnified and held harmless, to the fullest extent permitted by law by the Creditor Trust from and against any and all losses, claims, taxes, damages, reasonable expenses and liabilities (including liabilities under state or federal securities laws) of any kind and nature whatsoever, to the extent that such expenses arise out of or are imposed upon or asserted against such indemnified persons with respect to the creation, operation or termination of the Creditor Trust or the execution, delivery or performance of this Creditor Trust Agreement or the transactions contemplated hereby and shall not be liable for actions taken or omitted in their capacity, as Delaware Trustee, Creditor Trustee or Creditor Trust Management, on behalf of, or in fulfillment of their duties with respect to, the Creditor Trust, except those acts or omissions that are determined by Final Order to have arisen out of such party's own gross negligence, bad faith or willful misconduct, and, in the case of the Delaware Trustee, in the performance of its express duties under this Creditor Trust Agreement, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities regarding the implementation or administration of the Plan Documents or the discharge of their respective duties hereunder or thereunder or in respect thereof, except for any actions or inactions that are determined by Final Order to have arisen out of their own gross negligence, bad faith, or willful misconduct, and, in the case of the Delaware Trustee, in the performance of its express duties under this Creditor Trust Agreement.

(b)    The Covered Parties shall be entitled to obtain advances from the Creditor Trust to cover their reasonable expenses of defending themselves in any action threatened or brought against them as a result of the acts or omissions, actual or alleged, of any such party in its capacity as such; <u>provided</u>, <u>however</u>, that the Covered Parties receiving such advances shall repay the amounts so advanced to the Creditor Trust immediately upon the entry of a Final Order finding that such parties were not entitled to any indemnity under the provisions of this <u>Section 9.2</u>.

(c)    Any claim of the Covered Parties to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Creditor Trust Assets, bonds (if any) or any applicable insurance that the Creditor Trust has purchased, as provided in <u>Section 2.11</u>. The rights of the Covered Parties under this <u>Section 9.2</u> shall survive the resignation or removal of

any Creditor Trustee or the Delaware Trustee and the termination of this Creditor Trust Agreement.

(d)     The Creditor Trust may also determine to provide indemnification to Creditor Trust Agents and their respective officers, directors, partners, managers, members and employees, on such terms as the Creditor Trust Board may determine; provided that any claim for indemnification shall be satisfied solely from the Creditor Trust Assets or insurance.

## ARTICLE X
## DURATION OF CREDITOR TRUST

10.1   Duration.

(a)     The Creditor Trust shall dissolve upon the date that is the earliest to occur of: (i) the distribution of all Creditor Trust Assets pursuant to the Plan Documents, (ii) the determination of the Creditor Trust Board that the administration of the Creditor Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all the distributions required to be made under this Creditor Trust Agreement have been completed; provided, however, that in no event shall the Creditor Trust dissolve later than five (5) years from the Effective Date, unless (x) the Bankruptcy Court or other court with jurisdiction over the Creditor Trust, within the ninety (90) days prior to the fifth (5th) anniversary of the Effective Date (or within ninety (90) days prior to the end of an extension period), determines that a fixed-period extension, not to exceed three (3) years, together with any prior extensions, is necessary to facilitate or complete the recovery on and liquidation of the Creditor Trust Assets or (y) the Creditor Trust obtains a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the trust as a Creditor Trust for United States federal income tax purposes.  Upon dissolution, the Creditor Trust Board shall wind up and liquidate the Creditor Trust in accordance with section 3808 of the Trust Act and, at the direction of Creditor Trust Board, the Delaware Trustee shall file a Certificate of Cancellation in accordance with the Trust Act and thereupon the Creditor Trust Agreement shall terminate.

(b)     If at any time the Creditor Trust Board determines, in reliance upon its professionals, that the expense of administering the Creditor Trust, including the making of a final distribution to the Unitholders, is likely to exceed the value of the assets remaining in the Creditor Trust, the Creditor Trust Board may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the Creditor Trust, (ii) donate any balance to an organization selected by the Creditor Trust Board which is described in section 501(c)(3) of the Tax Code and exempt from United States federal income tax under section 501(a) of the Tax Code, as provided in Section 2.8(b) hereof, and (iii) dissolve the Creditor Trust.

10.2   Post-Termination.  After the dissolution of the Creditor Trust and solely for the purpose of liquidating and winding up the affairs of the Creditor Trust, the Creditor Trustees and the Creditor Trust Management shall continue to act as such until their duties have been fully performed.  Upon distribution of all the Creditor Trust Assets, the Creditor Trust Board shall designate a Creditor Trust Agent to retain all books and records pertaining to

the Debtors or the Creditor Trust that have been delivered to or created by the Creditor Trust, subject to the provisions of Section 10.3.

10.3    Destruction of Books and Records.  If so determined by the Creditor Trust Board, or absent such determination, in the discretion of the Creditor Trust Agent appointed pursuant to Section 10.2, all books and records pertaining to the Creditor Trust that have been delivered to or created by the Creditor Trust may be destroyed at any time following (x) the date that is six (6) years after the final distribution of Creditor Trust Assets (unless such records and documents are necessary to fulfill the Creditor Trust's remaining obligations) subject to the terms of any joint prosecution and common interests agreement(s) to which the Creditor Trust may be a party, or (y) such earlier date as may approved by order of the Bankruptcy Court on application of the Creditor Trust; provided, however, that the Creditor Trust shall, upon at least ten (10) Business Days' advance written notice to the Reorganized Debtors, obtain an order of the Bankruptcy Court or the written consent of the Reorganized Debtors before disposing of any books and records that were transferred to the Creditor Trust by the Debtors, Reorganized Debtors, Non-RCS Affiliates or Registered Investment Advisors, or are reasonably likely to pertain to pending litigation in which the Debtors, Reorganized Debtors or their current or former officers or directors are a party.

10.4    Discharge.  Except as otherwise specifically provided herein, upon the final distribution of Creditor Trust Assets and the filing by the Delaware Trustee of a Certificate of Cancellation with the Secretary of State of the State of Delaware, the Delaware Trustee and the Creditor Trustees shall be deemed discharged and have no further duties or obligations hereunder, the Units shall be cancelled and the Creditor Trust will be deemed to have been dissolved.  In the event that there are Creditor Trust Assets at the termination of the Creditor Trust, the Creditor Trust Board shall cause to be donated such Creditor Trust Assets to a charitable organization of the Creditor Trust Board's choice described in section 501(c)(3) of the Tax Code and exempt from United States federal income tax under section 501(a) of the Tax Code, as provided in Section 2.8(b).

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1    Governing Law.  This Creditor Trust Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without reference to conflicts of law).

11.2    Jurisdiction.  Subject to the proviso below, the parties agree that the Bankruptcy Court shall have exclusive jurisdiction over the Creditor Trust, including, without limitation, the administration and activities of the Creditor Trust; provided, however, that notwithstanding the foregoing or anything to the contrary set forth in the Plan, the Creditor Trust Board shall have power and authority to bring (or cause to be brought) any action in any court of competent jurisdiction to prosecute any Creditor Trust Causes of Action.

11.3    Severability.  In the event that any provision of this Creditor Trust Agreement or the application thereof to any person or circumstances shall be determined by Final Order to be invalid or unenforceable to any extent, the remainder of this Creditor Trust

Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Creditor Trust Agreement shall be valid and enforceable to the fullest extent permitted by law.

       11.4    <u>Notices</u>.  Any notice or other communication required or permitted to be made under this Creditor Trust Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile, sent by nationally recognized overnight delivery service, or mailed by first-class mail:

           (i)    if to the Delaware Trustee, to:

                 [_____]
                 Attention: Trust Administration

           (iii)    if to the Creditor Trust, to:

                 [_____]; and

           (iii)    if to any Unitholder or holder of a Disputed General Unsecured Claim, to the last known address of such Unitholder or holder according to the records of the Creditor Trust.  In addition, any Unitholder or holder of a Disputed General Unsecured Claim may designate at least one counsel or other agent at any given time to receive copies of notices or other communications provided pursuant to this <u>Section 11.4(c)</u> by notifying the Creditor Trust Administrator in writing of such designation.

       11.5    <u>Headings</u>.  The headings contained in this Creditor Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Creditor Trust Agreement or of any term or provision hereof.

       11.6    <u>Plan Documents</u>.  Nothing contained herein shall modify the terms of any other Plan Document, which are intended to be supplemented by the terms of this Creditor Trust Agreement.  However, to the extent that the terms of any of the other Plan Documents are inconsistent with the terms set forth in this Creditor Trust Agreement with respect to the Creditor Trust, then the terms of each Plan Document shall have controlling effect in the following order of priority (a) the Confirmation Order, (b) this Creditor Trust Agreement and (c) the Plan.

       11.7    <u>Confidentiality</u>.  The Trustees, the Creditor Trust Management and the Creditor Trust Agents, and their respective officers, directors, partners, managers, members and employees (the "<u>Confidentiality Parties</u>"), shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidentiality Party of or pertaining to the Debtors, the Reorganized Debtors, the Non-RCS Affiliates, the Registered Investment Advisors, the Creditor Trust, the Creditor Trust Beneficiaries or the Creditor Trust Assets; <u>provided</u>, <u>however</u>, that such information may be disclosed if—

(i)      it is now or in the future becomes generally available to the public other than as a result of a disclosure by any of the Confidentiality Parties;

(ii)      such disclosure is (x) required of any of the Confidentiality Parties pursuant to legal process, including subpoena or other court order or other applicable laws or regulations or (y) would have been required to produce in response to appropriate discovery measures; or

(iii)      the Creditor Trust Board determines that such disclosure is in the interests of the Creditor Trust or the Unitholders, provided, that in respect of material, non-public information pertaining to the Reorganized Debtors, Non-RCS Affiliates or the Registered Investment Advisors, the Confidentiality Parties may disclose such information only (v) to a person in accordance with the terms of any confidentiality or similar agreement between such person and the Reorganized Debtors; (w) to a person pursuant to an agreement of any other person with the Reorganized Debtors, Non-RCS Affiliates or the Registered Investment Advisors, as applicable, allowing such disclosure to such person; (x) in connection with pursuing the Causes of Action included in the Litigation Assets or otherwise pursuing, preserving or protecting the Litigation Assets, or the resolution of any Disputed Claim, to any party that has been advised of the confidential nature of such information and has agreed to comply with the provisions of this Section 11.7; (y) in a filing made  in any legal proceeding commenced in connection with the matters set forth in clause (x) of this subsection, provided that the Confidentiality Parties shall (A) provide reasonable notice to the Reorganized Debtors, Non-RCS Affiliates or the Registered Investment Advisors, as applicable, prior to such filing and (B) upon request of the Reorganized Debtors, Non-RCS Affiliates or the Registered Investment Advisors, as applicable, take reasonable measures to file or otherwise maintain such material, non-public information under seal; or (z) as otherwise agreed by the Reorganized Debtors, Non-RCS Affiliates or the Registered Investment Advisors, as applicable.

11.8    Entire Creditor Trust Agreement.    This Creditor Trust Agreement, including the Exhibits attached hereto, the Plan and the Confirmation Order contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.  For the avoidance of doubt, to the extent holders of Allowed Claims that would otherwise be entitled to receive Units have established or in the future establish trusts or other entities or vehicles to facilitate the implementation of the Plan with respect to their Units or for other purposes, the agreements governing such trusts or other entities or vehicles shall not limit or impose requirements in any way on the Creditor Trust, the Creditor Trustees, the Creditor Trust Board, the Creditor Trust Administrator, the Creditor Trust Management or any other employee, agent or representative of the Creditor Trust, and to the extent there is any conflict between the provisions of such agreements and this Creditor Trust Agreement, this Creditor Trust Agreement shall have controlling effect.

11.9    Named Party.    In pursuing any Creditor Trust Causes of Action, or in disposing of any Creditor Trust Assets, or otherwise administering the Creditor Trust or any Creditor Trust Assets, including, without limitation, the execution of documents, such as bills

of sale, releases, and agreements, the Creditor Trust Board may authorize the pursuit of such matters and/or execution of any such documents in the name of "RCS Creditor Trust" or in such other names or such representative capacities as necessary or appropriate.

11.10   Amendment.

(a)     Unless otherwise specified in this Section 11.10, this Creditor Trust Agreement may be amended with the Unanimous Consent of the Creditor Trust Board; provided, however, that Bankruptcy Court approval shall be required for any changes or amendments to this Creditor Trust Agreement that are inconsistent with the terms of the Plan or the Confirmation Order.

(b)     Any amendment, waiver, or modification of this Creditor Trust Agreement (or any provision herein) that materially and adversely affects the rights of any Reorganized Debtor shall require the reasonable consent of such Reorganized Debtor.

(c)     Any amendment, waiver, or modification (i) of this Creditor Trust Agreement (or any provision herein, other than Section 4.8 or Section 4.9) that materially, adversely and disproportionately affects the rights of any Class of Units, shall be subject to reasonable consent by Unitholders holding greater than fifty percent (50%) in number of the Units in such Class, and (ii) to Section 4.8 or Section 4.9 shall be subject to reasonable consent by Unitholders holding greater than fifty percent (50%) in number of Series A-1 Units, to the extent the Series A-1 Units are materially and adversely affected by such amendment, waiver, or modification, and Unitholders holding greater than fifty percent (50%) in number of Class B Units, to the extent the Class B Units are materially and adversely affected by such amendment, waiver, or modification.  For the avoidance of doubt, Class A Units and Class B Units shall be treated as separate Classes with respect to all amendments pursuant to this Section 11.10(c).

(d)     Any amendment to Section 11.6 or this Section 11.10 shall require the reasonable consent of (i) the Reorganized Debtors and (ii) Unitholders holding greater than fifty percent (50%) in number of the Class A Units and fifty percent (50%) in number of the Class B Units.

(e)     Notwithstanding anything to the contrary in this Section **11.10**, this Creditor Trust Agreement may be amended upon motion of the Creditor Trust Administrator at the direction of the Creditor Trust Board and approval of the Bankruptcy Court.

(f)     Notwithstanding this Section 11.10, no amendments to this Creditor Trust Agreement shall be inconsistent with the purpose and intention of the Creditor Trust to liquidate in an orderly manner the Creditor Trust Assets (which will maximize the value of such assets) in accordance with Treasury Regulations section 301.7701-4(d).  In the event that the Creditor Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations section 301.7701-4(d), this Creditor Trust Agreement may be amended with the Majority Consent of the Creditor Trust Board, to the extent necessary to take such action as the Creditor Trust Board deem appropriate to have the Creditor Trust classified as a partnership for federal tax purposes under Treasury Regulations section 301.7701-3 (but not a

publicly traded partnership under section 7704 of the Tax Code), including, if necessary, creating or converting it into a Delaware limited liability partnership or limited liability company that is so classified. Notice of any amendment, waiver or modification to this Creditor Trust Agreement shall be delivered to each Unitholder in accordance with Section 11.4, unless such amendment, waiver or modification is immaterial.

        11.11 <u>Counterparts</u>. This Creditor Trust Agreement may be executed in any number of counterparts, each of which shall be deemed original, but such counterparts shall together constitute one and the same instrument. A facsimile or portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

**[REMAINDER OF PAGE BLANK]**

01:18593549.3

**IN WITNESS WHEREOF**, the parties hereto have executed this Creditor Trust Agreement or caused this Creditor Trust Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

> RCS Capital Corporation, American National Stock Transfer, LLC, Braves Acquisition, LLC, DirectVest, LLC, J.P. Turner & Company Capital Management, LLC, RCS Advisory Services, LLC, RCS Capital Holdings, LLC, Realty Capital Securities, LLC, SBSI Insurance Agency of Texas Inc., SK Research LLC, Trupoly, LLC and We R Crowdfunding, LLC

By: _____

Name:

Title:

[_____], as Delaware Trustee

By: _____

Name:

Title:

_____, as Creditor Trustee

_____, as Creditor Trustee

_____, as Creditor Trustee

01:18593549.3

**EXHIBIT A**

**FORM OF**
**CERTIFICATE OF TRUST**
**OF**
**RCS CREDITOR TRUST**

This Certificate of Trust of RCS Creditor Trust is being duly executed and filed on behalf of such trust by the undersigned, as trustee, to form a statutory trust under the Delaware Statutory Trust Act (12 Del. C. § 3801 et seq.) (the "Trust Act").

1.      Name.  The name of the Delaware statutory trust formed by this Certificate of Trust is RCS Creditor Trust.

2.      Delaware Trustee.  The name and business address of the trustee of the Trust with a principal place of business in the State of Delaware are [_____].

3.      Effective Date.  This Certificate of Trust shall be effective upon its filing with the Secretary of State of the State of Delaware.

IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Trust in accordance with section 3811(a)(1) of the Trust Act.

[DELAWARE TRUSTEE], not in its individual capacity but solely as trustee

By:_____
Name:
Title:

_____
[_____], not in [his/her] individual capacity but solely as trustee

_____
[_____], not in [his/her] individual capacity but solely as trustee

_____
[_____], not in [his/her] individual capacity but solely as trustee

## SCHEDULE A

Creditor Trust Administrator Compensation

[To Come]