## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| RCS CAPITAL CORPORATION, et al., | ) Case No. 16–10223 (MFW) |
| | ) |
| | ) (Jointly Administered) |
| Debtors.[1] | ) |
| | ) **Ref. Docket Nos. 361, 381, 385, 386,** |
| | ) **423, 518, 544, 603, 745, 746, 749 and 750** |

**(I) ORDER APPROVING THE CETERA DEBTORS' SOLICITATION AND DISCLOSURE STATEMENT AND (II) FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE (A) FOURTH AMENDED JOINT PLAN OF REORGANIZATION FOR RCS CAPITAL CORPORATION AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AND (B) DEBTORS' SECOND AMENDED JOINT PREPACKAGED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The Bankruptcy Court having considered for the RCS Debtors:

I.    the *Fourth Amended Joint Plan of Reorganization for RCS Capital Corporation and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code*, dated May 10, 2016 [Docket No. 745], a copy of which is attached hereto as Exhibit A (the "**RCS Plan**");

---

[1]  The "**RCS Debtors**" in these Chapter 11 Cases, along with the last four digits of their respective federal tax identification numbers, are: RCS Capital Corporation (4716); American National Stock Transfer, LLC (3206); Braves Acquisition, LLC (6437); DirectVest, LLC (9461); J.P. Turner & Company Capital Management, LLC (7535); RCS Advisory Services, LLC (4319); RCS Capital Holdings, LLC (9238); Realty Capital Securities, LLC (0821); SBSI Insurance Agency of Texas, Inc. (9203); SK Research, LLC (4613); Trupoly, LLC (5836); and We R Crowdfunding, LLC (9785).

The "**Cetera Debtors**" in these Chapter 11 Cases, along with the last four digits of their respective federal tax identification numbers, are: Cetera Advisor Networks Insurance Services LLC (2417); Cetera Advisors Insurance Services LLC (5434); Cetera Financial Group, Inc. (8666); Cetera Financial Holdings, Inc. (8663); Cetera Financial Specialists Services LLC (7737); Cetera Insurance Agency LLC (0645); Chargers Acquisition, LLC (6470); FAS Holdings, Inc. (7417); First Allied Holdings Inc. (7319); ICC Insurance Agency, Inc. (9587); Investors Capital Holdings, LLC (3131); Legend Group Holdings, LLC (8262); SBS Financial Advisors, Inc. (None Assigned); SBS Insurance Agency of Florida, Inc. (5829); SBS of California Insurance Agency, Inc. (5203); Summit Capital Group, Inc. (3015); Summit Financial Services Group, Inc. (7932); Summit Holding Group, Inc. (3448); and VSR Group, LLC (0470).

The RCS Debtors' corporate headquarters and mailing address is located at 245 Park Avenue, 39th Floor, New York, NY 10167.  Correspondence directed to the Cetera Debtors in relation to these Chapter 11 Cases may be sent to this same address.  As used herein, the term "**Debtors**" refers to the RCS Debtors and Cetera Debtors.

II.     the *Disclosure Statement with Respect to Second Amended Joint Plan of Reorganization for RCS Capital Corporation and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 381-1] (the "**RCS Disclosure Statement**");

III.     the *Supplement to Disclosure Statement With Respect to Revised Second Amended Joint Plan of Reorganization for RCS Capital Corporation and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 521] (the "**RCS Disclosure Statement Supplement**");

IV.     that certain *Order (I) Approving the Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, Including (A) Approving Form and Manner of Solicitation Procedures, (B) Approving Form and Notice of the Confirmation Hearing, (C) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (D) Approving Forms of Ballot, (E) Establishing Deadline for Receipt of Ballots, and (F) Approving Procedures for Vote Tabulations; (III) Establishing Deadline and Procedures for Filing Objections to (A) Confirmation of the Plan and (B) The Debtors' Proposed Cure Amounts for Unexpired Leases and Executory Contracts Assumed Pursuant to the Plan; and (IV) Granting Related Relief* [Docket No. 361] (the "**March 21 Disclosure Statement Order**");

V.     that certain *Order Amending that Certain Order (I) Approving the Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, Including (A) Approving Form and Manner of Solicitation Procedures, (B) Approving Form and Notice of the Confirmation Hearing, (C) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (D) Approving Forms of Ballot, (E) Establishing Deadline for Receipt of Ballots, and*

*(F) Approving Procedures for Vote Tabulations; (III) Establishing Deadline and Procedures for Filing Objections to (A) Confirmation of the Plan and (B) The Debtors' Proposed Cure Amounts for Unexpired Leases and Executory Contracts Assumed Pursuant to the Plan; and (IV) Granting Related Relief* [Docket No. 381] (the "**March 24 Disclosure Statement Order**");

VI.    that certain *Order (I) Approving the Disclosure Statement Supplement, (II) Approving the Revised Class 5(A) Ballots, and (III) Authorizing Service of Supplemental Solicitation Materials in Connection with Confirmation of the Revised Second Amended RCS Plan of Reorganization* [Docket No. 518] (the "**Supplemental Disclosure Statement Order**," and together with the March 21 Disclosure Statement Order and the March 24 Disclosure Statement Order, the "**RCS Disclosure Statement Orders**");

VII.    the *Affidavit of Service of Solicitation Materials* [Docket No. 426] (the "**First RCS Solicitation Affidavit of Service**");

VIII.    the *Affidavit of Service of Supplemental Solicitation Materials* [Docket No. 606] (together with the First RCS Solicitation Affidavit of Service, the "**RCS Solicitation Affidavits of Service**");

IX.    the *Supplemental Executed Declaration of James Daloia of Prime Clerk LLC Regarding the Tabulation of Ballots Cast on the Revised Second Amended Joint Plan of Reorganization for RCS Capital Corporation and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* (the "**RCS Tabulation Declaration**");

X.    *Notice of (I) Possible Assumption or Assumption and Assignment of Executory Contracts and Unexpired Leases Under the Plan, (II) Fixing of Cure Claims Related Thereto and (III) Deadline to Objection Thereto* [Docket No. 524] (the "**Initial Cure Notice**");

XI.    *Supplemental Notice of (I) Possible Assumption or Assumption and Assignment of Executory Contracts and Unexpired Leases Under the Plan, (II) Fixing of Cure Clams Related Thereto and (III) Deadline to Object Thereto* [Docket No. 632] (the "**Supplemental Cure Notice**" and together with the Initial Cure Notice, the "**Cure Notices**"); and

XII.    the *Notice of Filing by the RCS Debtors of the Fourth Amended Joint Plan of Reorganization Eliminating the Holdings Claim Election and Deadline to Object to Confirmation of the Fourth Amended RCS Plan* [Docket No. 749] and the *Disclosure With Respect to Revised Fourth Amended Joint Plan of Reorganization for RCS Capital Corporation and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 750] (together, the "**Notice and Disclosure With Respect to Revised Fourth Amended Joint Plan of RCS**").

The Bankruptcy Court having considered for the Cetera Debtors:

I.    the *Debtors' Second Amended Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code,* dated May 10, 2016 [Docket No. 746], a copy of which is attached hereto as Exhibit B (the "**Cetera Prepackaged Plan**" and together with RCS Plan, the "**Plans**")[2];

II.    the *Solicitation and Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Cetera Financial Holdings, Inc., et. al.* [Docket No. 386] (the "**Cetera Disclosure Statement**");

III.    the *Affidavit of Service of Solicitation Materials* [Docket No. 527] (the "**First Cetera Solicitation Affidavit of Service**");

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plans.

IV.        the *Supplemental Affidavit of Service* [Docket No. 563] (together with the

First Cetera Solicitation Affidavit of Service, the "**Cetera Solicitation Affidavits of Service**,"

and together with the RCS Solicitation Affidavits of Service, the "**Solicitation Affidavits of**

**Service**");

V.        that certain *Order (I) Scheduling an Objection Deadline and Combined*

*Hearing on the Cetera Debtors' Disclosure Statement and Plan Confirmation; (II) Approving*

*Form and Notice of Confirmation Hearing; (III) Establishing Procedures for Objections to the*

*Disclosure Statement and the Plan; (IV) Approving Solicitation Procedures; (V) Waving the*

*Requirement for Meetings of Creditors or Equity Holders; (VI) Extending the Time, and, Upon*

*Plan Confirmation, Waiving the Requirement, to File Schedules and Statements; and*

*(VII) Granting Related Relief* [Docket No. 423] (the "**Cetera Interim Solicitation Order**");

VI.        that certain *Order Approving on a Final Basis Paragraphs 12 and 14 of*

*That Certain Order: (I) Scheduling an Objection Deadline and Combined Hearing on the Cetera*

*Debtors' Disclosure Statement and Plan Confirmation; (II) Approving Form and Notice of*

*Confirmation Hearing; (III) Establishing Procedures for Objections to the Disclosure Statement*

*and the Plan; (IV) Approving Solicitation Procedures; (V) Waving the Requirement for Meetings*

*of Creditors or Equity Holders; (VI) Extending the Time, and, Upon Plan Confirmation, Waiving*

*the Requirement, to File Schedules and Statements; and (VII) Granting Related Relief* [Docket

No. 544] (together with the Cetera Interim Solicitation Order, the "**Cetera Solicitation**

**Orders**"); and

VII.        the *Declaration of James Daloia of Prime Clerk LLC Regarding the*

*Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' Joint Prepackaged Plan of*

*Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 387] (the "**Cetera**

Tabulation Declaration," and together with the RCS Tabulation Declaration, the "**Tabulation Declarations**").

The Bankruptcy Court having considered for the Debtors:

I.      the *Amended Plan Supplement for Third Amended Joint Plan of Reorganization for RCS Capital Corporation and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code*, dated May 2, 2016 [Docket No. 703] (the "**Plan Supplement**");

II.      the *Order Amending Certain Confirmation and Solicitation-Related Deadlines for the RCS Debtors and the Cetera Debtors* [Docket No. 603] (the "**Order Amending Deadlines**");

III.      the *Affidavit of Service* for the Order Amending Deadlines [Docket No. 614];

IV.      the *Declaration of David Orlofsky, In Support of Confirmation of the (I) Third Amended Joint Plan of Reorganization for RCS Capital Corporation and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code and (II) Debtors' Amended Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 692] (the "**Orlofsky Declaration**");

V.      the *Declaration of Christian Tempke, In Support of Confirmation of the (I) Third Amended Joint Plan of Reorganization for RCS Capital Corporation and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code and (II) Debtors' Amended Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 693] (the "**Tempke Declaration**");

VI.      *Declaration of Shmuel Vasser In Support of Confirmation of the (I) Third Amended Joint Plan of Reorganization for RCS Capital Corporation and its Affiliated Debtors*

*Under Chapter 11 of the Bankruptcy Code; and (II) Debtors' Amended Joint Prepackaged Plan*

*of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 694] (the "**Vasser**

**Declaration**");

      VII.      all other affidavits, declarations, and witness proffers and testimony

admitted into evidence at the hearing to consider confirmation of the Plans (the "**Confirmation**

**Hearing**");

      VIII.      all objections filed with respect to confirmation of the Plans, including any

reservations of right contained therein or filed separately with respect to confirmation of the

Plans (collectively, the "**Objections**");

      IX.      The *Debtors' Joint Memorandum of Law (I) In Support of an Order*

*(A) Confirming the Third Amended Joint Plan of Reorganization for RCS Capital Corporation*

*and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code, and (B) Approving the*

*Disclosure Statement For, and Confirming, the Debtors' Amended Joint Prepackaged Plan of*

*Reorganization Under Chapter 11 of the Bankruptcy Code, and (II) In Response to Objections*

*Thereto* [Docket No. 701] (the "**Confirmation Brief**"); and

      X.      any other pleadings filed in connection with the confirmation of the Plans;

and upon the Bankruptcy Court having taken judicial notice of the docket of the Debtors'

Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court and/or its duly appointed

agent, and all pleadings and other documents filed, all orders entered, and evidence and

arguments made, proffered or adduced at the hearings held before the Bankruptcy Court during

the pendency of these Chapter 11 Cases; and the Cetera Debtors having distributed, on or about

March 11, 2016 the Cetera Prepackaged Plan and the Cetera Disclosure Statement; and the

Bankruptcy Court that having found that due and proper notice of the opportunity for any party

in interest to object to approval of the Cetera Disclosure Statement has been adequate and appropriate as to all parties affected or to be affected by the Cetera Prepackaged Plan and the transactions contemplated thereby; and the Bankruptcy Court having found that due and proper notice has been given with respect to the Confirmation Hearing and the deadlines and procedures for filing objections to the Plans or any aspects thereof; and the Bankruptcy Court having found that the deadline for voting on the Plans has been provided to holders of Claims against and Interests in the Debtors and other parties in interest, as established by the Solicitation Affidavits of Service in accordance with the RCS Disclosure Statement Orders, the Cetera Solicitation Orders, the Bankruptcy Code, and the Bankruptcy Rules; and the legal and factual bases set forth in the documents filed in support of approval of the Cetera Disclosure Statement, confirmation of the Plans and other evidence presented at the Confirmation Hearing establish just cause for the relief granted herein; and the appearance of all interest parties having been duly noted on the record of the Confirmation Hearing; and upon the record of the Confirmation Hearing and these Chapter 11 Cases; and after due deliberation thereon, and sufficient cause appearing therefor; **it is hereby DETERMINED AND FOUND:**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      Findings of Fact and Conclusions of Law.  The findings set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Judicial Notice</u>.  The Bankruptcy Court takes judicial notice of the documents

filed on the docket of the Chapter 11 Cases which were specifically itemized on the record of the

Confirmation Hearing.

C.    <u>Exclusive Jurisdiction; Core Proceeding; Venue</u>.  The Bankruptcy Court has

jurisdiction over the Chapter 11 Cases pursuant to sections 157(b)(2)(A) & (L) and 1334 of title

28 of the United States Code (the "**Judicial Code**") and the *Amended Standing Order of*

*Reference* from the United States District Court for the District of Delaware, dated February 29,

2012.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Cetera

Disclosure Statement and the Plans comply with the applicable provisions of the Bankruptcy

Code and should be approved and confirmed, respectively.  This is a core proceeding pursuant to

section 157(b)(2) of the Judicial Code.  The Bankruptcy Court has jurisdiction to enter a final

order with respect to approval of the Cetera Disclosure Statement and the confirmation of the

Plans, and all matters related thereto, and the Bankruptcy Court's exercise of such jurisdiction is

proper in all respects.  Venue for these Chapter 11 Cases is proper before the Bankruptcy Court

pursuant to sections 1408 and 1409 of the Judicial Code.  The Debtors are proper debtors under

section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plans under

section 1121(a) of the Bankruptcy Code.

D.    <u>Commencement and Administration of the Chapter 11 Cases</u>.  On January 31,

2016 (the "**RCS Petition Date**"), each of the RCS Debtors commenced a voluntary case under

Chapter 11 of the Bankruptcy Code.  On March 26, 2016 (the "**Cetera Petition Date**," and

together with the RCS Petition Date, the "**Petition Dates**"), each of the Cetera Debtors

commenced a voluntary case under Chapter 11 of the Bankruptcy Code.  By orders of the

Bankruptcy Court, the Chapter 11 Cases are being jointly administered pursuant to Bankruptcy

Rule 1015(b).  The Debtors have operated, and continue to operate, their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

      E.      <u>Official Committee of Unsecured Creditors</u>.  Pursuant to section 1102(a)(1) of the Bankruptcy Code, on February 11, 2016, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in the RCS Debtors' Chapter 11 cases (the "**Committee**").

      F.      <u>RCS Debtors: Solicitation and Notice</u>.  On March 21, 2016, March 24, 2016 and April 11, 2016, the Bankruptcy Court entered the Disclosure Statement Orders, which, among other things, approved the RCS Disclosure Statement and RCS Disclosure Statement Supplement, finding that the RCS Disclosure Statement and the RCS Disclosure Statement Supplement contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code, and established procedures for the RCS Debtors' solicitation of votes with respect to the RCS Plan.  As described in the RCS Solicitation Affidavits of Service, packages containing (i) the RCS Disclosure Statement, (ii) the RCS Disclosure Statement Supplement, (iii) the RCS Plan, (iv) the Disclosure Statement Orders, (v) ballots for voting on the RCS Plan and (vi) notice of the Confirmation Hearing ((i) – (vi), the "**RCS Solicitation Packages**") were served in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Orders.  Additionally, the RCS Debtors published the notice of the Confirmation Hearing in *The New York Times* (*National Edition*) on March 30, 2016, in compliance with the Disclosure Statement Orders and Bankruptcy Rule 2002(l), as evidenced by the affidavit of publication [Docket No. 481] (the "**Publication Notice**").  The service of the RCS Solicitation Packages, as set forth in the RCS Solicitation Affidavits of Service, and publishing of the

01:18705316.1

Publication Notice were adequate and sufficient under the circumstances of these Chapter 11

Cases, and provided due, adequate, and sufficient notice of the Confirmation Hearing, the

deadline to submit the ballots, and the deadline for objecting to the RCS Plan. Moreover, such

service was in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure

Statement Orders, and provided due process to all parties in interest in these Chapter 11 Cases.

The filing of the RCS Plan and the notice of the Confirmation Hearing constitute adequate notice

in accordance with Bankruptcy Rule 3020.

      G.     Notice and Disclosure With Respect to Revised Fourth Amended Joint Plan of

RCS. On May 10, 2016, the Bankruptcy Court so ordered on the record the approval of the

Notice and Disclosure With Respect to Revised Fourth Amended Joint Plan of RCS. Consistent

with the Bankruptcy Court's May 10, 2016 order, the RCS Debtors served the Notice and

Disclosure With Respect to Revised Fourth Amended Joint Plan of RCS via overnight mail to

any party that made the Holdings Claim Election (as such term is defined in the Notice and

Disclosure With Respect to Revised Fourth Amended Joint Plan of RCS). The service of the

Notice and Disclosure With Respect to Revised Fourth Amended Joint Plan of RCS was

adequate and sufficient under the circumstances of these Chapter 11 Cases, and provided due,

adequate, and sufficient notice of the deadline for creditors that made the Holdings Claim

Election to object to confirmation of the RCS Plan. Moreover, under the circumstances, such

service provided due process to all parties in interest in these Chapter 11 Cases. The filing and

service of the Notice and Disclosure With Respect to Revised Fourth Amended Joint Plan of

RCS in the manner identified herein constitutes adequate notice in accordance with Bankruptcy

Rule 3020.

01:18705316.1

H.    Cetera Debtors: Solicitation and Notice.  As evidenced by the Cetera Solicitation

Affidavits of Service, due, adequate and sufficient notice of the Cetera Disclosure Statement, the

Cetera Prepackaged Plan, and the Confirmation Hearing, together with all deadlines for voting to

accept or reject the Cetera Prepackaged Plan as well as objecting to the Cetera Disclosure

Statement and the Cetera Prepackaged Plan has been provided to all parties required by the

Cetera Solicitation Orders.  As described in the Cetera Solicitation Affidavits of Service, prior to

the Cetera Petition Date, packages containing (i) the Cetera Disclosure Statement, (ii) the Cetera

Prepackaged Plan, and (iii) customized ballots for voting on the Cetera Prepackaged Plan ((i) –

(iii), the "**Cetera Solicitation Packages**") were served in compliance with the Bankruptcy Code

and the Bankruptcy Rules.  Additionally, the Cetera Debtors served the notice of the

Confirmation Hearing on March 30, 2016 [Docket No. 464] and published the notice of the

Confirmation Hearing in *The New York Times* (*National Edition*) on April 1, 2016, in

compliance with the Cetera Solicitation Orders and Bankruptcy Rule 2002(l), as evidenced by

the Publication Notice.  The service of the Cetera Solicitation Packages, as set forth in the Cetera

Solicitation Affidavits of Service, and publishing of the Publication Notice were adequate and

sufficient under the circumstances of these Chapter 11 Cases, and provided due, adequate, and

sufficient notice of the Confirmation Hearing, the deadline to submit the ballots, and the deadline

for objecting to the Cetera Prepackaged Plan.  Moreover, such service was in compliance with

the Bankruptcy Code, the Bankruptcy Rules and the Cetera Solicitation Orders, and provided due

process to all parties in interest in these Chapter 11 Cases.  The filing of the Cetera Prepackaged

Plan and the notice of the Confirmation Hearing constitute adequate notice in accordance with

Bankruptcy Rule 3020.  The period during which the Cetera Debtors solicited acceptances or

rejections to the Cetera Prepackaged Plan was a reasonable and sufficient period of time for

01:18705316.1

holders in the voting classes to make an informed decision to accept or reject the Cetera Prepackaged Plan.

      I.    The Cetera Disclosure Statement.  The Cetera Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Cetera Debtors, the Cetera Prepackaged Plan, and the transactions contemplated therein. The filing of the Cetera Disclosure Statement with the clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b).

      J.    Voting on the RCS Plan.

      (a)    As evidenced by the RCS Tabulation Declaration, votes to accept or reject the RCS Plan have been solicited and tabulated fairly, in good faith, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the **"Local Rules"**), the Disclosure Statement Orders, and all applicable non-bankruptcy laws, rules or regulations.

      (b)    According to the RCS Tabulation Declaration, (i) 100% in amount and 100% in number of holders of Allowed Claims in Class 2 that cast ballots voted to accept the RCS Plan, (ii) 100% in amount and 100% in number of holders of Allowed Claims in Class 3 that cast ballots voted to accept the RCS Plan and (iii) the number and amount of holders of Allowed Claims in the various subclasses in Class 5 that cast ballots overwhelmingly voted to accept the RCS Plan.  All procedures used to tabulate the ballots were fair, reasonable and

complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations.

(c)    The RCS Debtors solicited acceptances of the RCS Plan in good faith and in compliance with the Disclosure Statement Orders and applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

(d)    The RCS Debtors, the Committee and the Professionals have complied with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes for the RCS Plan and, therefore, shall not, on account of such solicitation, be liable at any time for the violation of any applicable law, rule or regulation governing solicitation of acceptances or rejections of the RCS Plan or distributions to be made pursuant to the RCS Plan.

K.    Voting on the Cetera Prepackaged Plan.

(a)    As evidenced by the Cetera Tabulation Declaration, votes to accept or reject the Cetera Prepackaged Plan have been solicited and tabulated fairly, in good faith, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all applicable non-bankruptcy laws, rules or regulations.

(b)    According to the Cetera Tabulation Declaration, (i) 100% in amount and 100% in number of holders of Allowed Claims in Class 2 that cast ballots voted to accept the Cetera Prepackaged Plan, and (ii) 100% in amount and 100% in number of holders of Allowed Claims in Class 3 that cast ballots voted to accept the Cetera Prepackaged Plan. All procedures used to tabulate the ballots were fair, reasonable and complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations.

01:18705316.1

(c)    The Cetera Debtors solicited acceptances of the Cetera Prepackaged Plan in good faith and in compliance with the Cetera Solicitation Statement Orders and applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

(d)    The Cetera Debtors and the Professionals have complied with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes for the Cetera Prepackaged Plan and, therefore, shall not, on account of such solicitation or distribution, be liable at any time for the violation of any applicable law, rule or regulation governing solicitation of acceptances or rejections of the Cetera Prepackaged Plan or distributions to be made pursuant to the Cetera Prepackaged Plan.

L.    <u>Plan Supplement</u>.

(a)    On April 19, 2016, the Debtors filed the Plan Supplement, which included the following documents and disclosures: (i) list identifying the Reorganized Debtors' directors and officers, (ii) the Schedule of Rejected Executory Contracts and Unexpired Leases under the RCS Plan, (iii) the New Corporate Governance Documents, (iv) the Exit Credit Agreement, (v) the New Second Lien Credit Agreement, (vi) the Shareholders' Agreement, (vii) the New Warrant Agreement; (viii) the Creditor Trust Agreement, (ix) the terms of the Retention Program, (x) the list of Excluded Parties, (xi) the Indemnification Agreement, (xii) the Litigation Assets description, and (xiii) the identity of the Creditor Trust Administrator and the members of the Creditor Trust Board.  All such materials comply with, and are necessary to the implementation of, the terms of the Plans, the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Disclosure Statement Orders, and no other or further notice is or shall be required.

(b)    All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plans.  Subject to the terms of the Plans and the RSA, and only consistent therewith, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date.  The parties receiving the Plan Supplement were provided due, adequate, and sufficient notice of the Plan Supplement.

M.    Modifications to the Plan.

(a)    Subsequent to April 12, 2016 (the "**RCS Solicitation Date**"), the RCS Debtors made certain non-material modifications to the RCS Plan.  The RCS Plan and this Confirmation Order contains modifications to the RCS Plan that were made to address Objections and informal comments received from various parties in interest.  All modifications to the RCS Plan since the entry of the Disclosure Statement Orders are consistent with all of the provisions of the Bankruptcy Code, including, but not limited to, sections 1122, 1123, 1125 and 1127 of the Bankruptcy Code, including any modifications disclosed on the record at the Confirmation Hearing.  All of the modifications made since the commencement of solicitation constitute non-material changes and do not materially adversely affect the treatment of any Claim or Interest under the RCS Plan.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019(a), none of the modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code.

(b)    Subsequent to March 11, 2016 (the "**Cetera Solicitation Date**"), the Cetera Debtors made certain non-material modifications to the Cetera Prepackaged Plan.  The Cetera Prepackaged Plan and this Confirmation Order contains modifications to the Cetera Prepackaged Plan that were made to address Objections and informal comments received from

various parties in interest. All modifications to the Cetera Prepackaged Plan are consistent with all of the provisions of the Bankruptcy Code, including, but not limited to, sections 1122, 1123, 1125 and 1127 of the Bankruptcy Code, including any modifications disclosed on the record at the Confirmation Hearing. All of the modifications made since the commencement of solicitation constitute non-material changes and do not materially adversely affect the treatment of any Claim or Interest under the Cetera Prepackaged Plan. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019(a), none of the modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code.

(c)     The disclosure of the RCS Plan and Cetera Prepackaged Plan modifications on the record at or prior to the Confirmation Hearing constitutes due and sufficient notice of any and all of such modifications.

(d)     In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the RCS Plan or who are conclusively presumed to have accepted the RCS Plan are deemed to have accepted the RCS Plan as modified by the RCS Plan modifications. No holder of a Claim shall be permitted to change its vote as a consequence of the RCS Plan modifications, unless otherwise agreed to by the holder of the Claim and the RCS Debtors. All modifications to the RCS Plan made after the RCS Solicitation Date are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. The RCS Plan as modified shall constitute the RCS Plan submitted for Confirmation.

(e)     In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Cetera Prepackaged Plan or who are conclusively presumed to have accepted the Cetera Prepackaged Plan are deemed to have

accepted the Cetera Prepackaged Plan as modified by the Cetera Prepackaged Plan modifications. No holder of a Claim shall be permitted to change its vote as a consequence of the Cetera Prepackaged Plan modifications, unless otherwise agreed to by the holder of the Claim and the Cetera Debtors. All modifications to the Cetera Prepackaged Plan made after the Cetera Solicitation Date are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. The Cetera Prepackaged Plan as modified shall constitute the Cetera Prepackaged Plan submitted for Confirmation.

### Compliance with Section 1129 of the Bankruptcy Code

N.    <u>Burden of Proof</u>. The Debtors have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation.

O.    <u>Bankruptcy Rule 3016(a)</u>. The Plans are dated and identify the Debtors as the proponents of the Plans, thereby satisfying the requirements of Bankruptcy Rule 3016(a).

P.    <u>Plans Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. As set forth below, the Plans comply fully with the requirements of sections 1122 and 1123 as well as with all other applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a)    <u>Proper Classification of Claims and Interests (11 U.S.C. §§ 1122, 1123(a)(1))</u>.

(i)    *The RCS Plan.* As required by section 1123(a)(1) of the Bankruptcy Code, in addition to General Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Claims, which need not be classified, Section 3 of the RCS Plan designates eight (8) Classes of Claims and two (2) Classes of Interests. The designated Classes

01:18705316.1

are as follows:  Class 1 (Other Priority Claims), Class 2 (First Lien Claims), Class 3 (Second

Lien Claims), Class 4 (Other Secured Claims), Class 5 (General Unsecured Claims), Class 6

(Convenience Class Claims), Class 7 (Subordinated Claims), Class 8 (Intercompany Claims),

Class 9 (Intercompany Interests) and Class 10 (Holdings Equity Interests and Purchase-Related

Claims).  As required by section 1122(a) of the Bankruptcy Code, each of the Claims or

Interests, as the case may be, in each particular Class is substantially similar to the other Claims

or Interests in such Class.  Valid business, factual, and legal reasons exist for separately

classifying the various Claims and Interests created under the RCS Plan, and such Classes do not

unfairly discriminate between holders of Claims and Interests or prejudice the rights of holders

of such Claims and Interests.  The classification of Claims and Interests in the RCS Plan is

reasonable and necessary to implement the RCS Plan.  The RCS Plan adequately and properly

classifies all Claims and Interests and therefore satisfies the requirements of sections 1122 and

1123(a)(1) of the Bankruptcy Code.

   (ii) *The Cetera Prepackaged Plan.*  As required by section 1123(a)(1)

of the Bankruptcy Code, in addition to General Administrative Claims, Professional Fee Claims,

Priority Tax Claims, and DIP Claims, which need not be classified, Section 3 of the Cetera

Prepackaged Plan designates six (6) Classes of Claims and one (1) Class of Interests.  The

designated Classes are as follows:  Class 1 (Other Priority Claims), Class 2 (First Lien Claims),

Class 3 (Second Lien Claims), Class 4 (Other Secured Claims), Class 5 (General Unsecured

Claims), Class 6 (Intercompany Claims), and Class 7 (Intercompany Interests).  As required by

section 1122(a) of the Bankruptcy Code, each of the Claims or Interests, as the case may be, in

each particular Class is substantially similar to the other Claims or Interests in such Class.  Valid

business, factual, and legal reasons exist for separately classifying the various Claims and

Interests created under the Cetera Prepackaged Plan, and such Classes do not unfairly

discriminate between holders of Claims and Interests or prejudice the rights of holders of such

Claims and Interests. The classification of Claims and Interests in the Cetera Prepackaged Plan

is reasonable and necessary to implement the Cetera Prepackaged Plan. The Cetera Prepackaged

Plan adequately and properly classifies all Claims and Interests and therefore satisfies the

requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.

      (b)      <u>Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.

      (i)      *The RCS Plan.*  Sections 4.1, 4.4, 4.6, 4.8 and 4.9 of the RCS Plan

specify that Class 1 (Priority Claims), Class 4 (Other Secured Claims), Class 6 (Convenience

Class Claims), Class 8 (Intercompany Claims) and Class 9 (Intercompany Interests) are

Unimpaired by the RCS Plan, thereby satisfying the requirements of section 1123(a)(2) of the

Bankruptcy Code.

      (ii)      *The Cetera Prepackaged Plan.*  Sections 4.1, 4.4, 4.5, 4.6 and 4.7

of the Cetera Prepackaged Plan specify that Class 1 (Priority Claims), Class 4 (Other Secured

Claims), Class 5 (General Unsecured Claims), Class 6 (Intercompany Claims) and Class 7

(Intercompany Interests) are Unimpaired by the Cetera Prepackaged Plan, thereby satisfying the

requirements of section 1123(a)(2) of the Bankruptcy Code.

      (c)      <u>Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.

      (i)      *The RCS Plan.*  Section 4 of the RCS Plan designates Class 2 (First

Lien Claims), Class 3 (Second Lien Claims), Class 5 (General Unsecured Claims), Class 7

(Subordinated Claims) and Class 10 (Holdings Equity Interests and Purchase-Related Claims) as

Impaired, and Sections 4.2, 4.3, 4.5, 4.7 and 4.10 of the RCS Plan, respectively, specify the

01:18705316.1

treatment of such Claims and Interests in such Classes, thereby satisfying the requirements of
section 1123(a)(3) of the Bankruptcy Code.

(ii)    *The Cetera Prepackaged Plan.*  Section 4 of the Cetera
Prepackaged Plan designates Class 2 (First Lien Claims) and Class 3 (Second Lien Claims) as
Impaired, and Sections 4.2 and 4.3 of the Cetera Prepackaged Plan, respectively, specify the
treatment of such Claims and Interests in such Classes, thereby satisfying the requirements of
section 1123(a)(3) of the Bankruptcy Code.

(d)    <u>Equal Treatment Within Classes (11 U.S.C. § 1123(a)(4))</u>.  The Plans and
Plan Supplement provide for the same treatment for each Claim against or Interest in each
Debtor in each respective Class unless the holder of a particular Claim or Interest has agreed to
less favorable treatment on account of such Claim or Interest, thereby satisfying the requirements
of section 1123(a)(4) of the Bankruptcy Code.

(e)    <u>Implementation of the Plans (11 U.S.C. § 1123(a)(5))</u>.  The Plans,
including Section 5 thereof, provide adequate and proper means for its implementation, thereby
satisfying the requirements of section 1123(a)(5) of the Bankruptcy Code.  All documents
necessary to implement the Plans, including, without limitation, those contained in the Plan
Supplement and all other relevant and necessary documents, have been developed and negotiated
in good faith and at arm's-length and, subject to and upon the occurrence of the Effective Date,
are valid, binding and enforceable agreements and are not in conflict with any federal or state
law.

(f)    <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.  The Plans satisfy
section 1123(a)(6) of the Bankruptcy Code's prohibition on the issuance of nonvoting equity
securities.  Section 5.5(b) of the RCS Plan and Section 5.3(b) of the Cetera Prepackaged Plan

require that each Reorganized Debtor's organizational documents shall include a prohibition against the issuance of non-voting securities. Therefore, the applicable postconfirmation organizational documents will comply with the requirements of section 1123(a)(6) of the Bankruptcy Code.

(g)    Selection of Directors (11 U.S.C. § 1123(a)(7)). As set forth in Section 5.9 of the RCS Plan and Section 5.7 of the Cetera Prepackaged Plan, the Debtors properly and adequately disclosed or otherwise identified the members of the boards of directors of the Reorganized Debtors in the Plan Supplement. The provisions of the Plans for the selection of the members of the boards of directors of the Reorganized Debtors are consistent with the interests of creditors and equity holders and with public policy. Thus, the requirements of section 1123(a)(7) of the Bankruptcy Code are satisfied.

Q.    Additional Provisions (11 U.S.C. § 1123(b)). The Plans' additional provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code. The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

(a)    Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1)). Sections 3 and 4 of the RCS Plan list Classes 1, 4, 6, 8 and 9 as Unimpaired and Classes 2, 3, 5, 7 and 10 as Impaired, and are therefore consistent with section 1123(b)(1) of the Bankruptcy Code. Sections 3 and 4 of the Cetera Prepackaged Plan list Classes 1, 4, 5, 6 and 7 as Unimpaired and Classes 2 and 3 as Impaired, and are therefore consistent with section 1123(b)(1) of the Bankruptcy Code.

01:18705316.1

(b)     Assumption of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).

(i)     *The RCS Plan.* In accordance with section 1123(b)(2) of the Bankruptcy Code, Section 8.1 of the RCS Plan provides that all Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date, other than any Executory Contract or Unexpired Lease that: (i) has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date and for which the motion was filed prior to the Confirmation Date; (ii) as to which a motion for approval of the assumption or rejection of such Executory Contract or Unexpired Lease has been filed and served prior to the Confirmation Date and remains pending before the Bankruptcy Court on such date; or (iii) that is specifically designated as an Executory Contract or Unexpired Lease to be rejected on the Schedule of Rejected Executory Contracts and Unexpired Leases. Accordingly, the RCS Plan satisfies the requirements of section 1123(b)(2) of the Bankruptcy Code. Moreover, the RCS Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption and rejection of Executory Contracts and Unexpired Leases pursuant to the RCS Plan.

(ii)     *The Cetera Prepackaged Plan.* In accordance with section 1123(b)(2) of the Bankruptcy Code, Section 8.1 of the Cetera Prepackaged Plan provides that except as otherwise provided in the Cetera Prepackaged Plan, in any contract, instrument, release or other agreement or document entered into in connection with the Cetera Prepackaged Plan, a motion pending before the Bankruptcy Court seeking authority to reject an Executory Contract or Unexpired Lease or in a Final Order of the Bankruptcy Court, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the Cetera Debtors will be deemed to assume each Executory Contract or Unexpired Lease. Accordingly, the Cetera Prepackaged Plan satisfies the

requirements of section 1123(b)(2) of the Bankruptcy Code.  Moreover, the Cetera Debtors have

satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption

and rejection of Executory Contracts and Unexpired Leases pursuant to the Cetera Prepackaged

Plan.

      (c)      <u>Settlement or Retention of Claims or Interests (11 U.S.C. § 1123(b)(3))</u>.

      (i)      *Retention of Claims or Interests*.  Section 7.5 of the RCS Plan and

Section 7.3 of the Cetera Prepackaged Plan, subject to the limitations set forth therein, including,

without limitation, the Claims released by Section 10.6(a) of the Plans, provide that except with

respect to the Company Released Causes of Action, all applicable Reorganized Debtors (with

respect to the Retained Causes of Action and any Causes of Action arising after the Petition

Dates) shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the

foregoing), and the Creditor Trust (with respect to the Litigation Assets) shall be vested with and

may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims,

rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or

unknown, that they each may respectively hold against any Person without the approval of the

Bankruptcy Court; *provided, however*, that notwithstanding Section 7.5(a) or (b) of the RCS

Plan, Section 7.3(a) or (b) of the Cetera Prepackaged Plan, or this paragraph P(c)(i), the

Reorganized Debtors shall be prohibited from commencing or prosecuting any Retained Cause

of Action (other than the RCAP Holdings Setoff Cause of Action) against any Retained Cause of

Action Party other than for setoff or defensive purposes in any suit or action commenced against

any Reorganized Debtor by any Retained Cause of Action Party.  In accordance with section 363

of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions,

settlements, and other benefits provided under the Plans, except as stated otherwise in the Plans,

the provisions of the Plans constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, subordination, and other legal rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The compromise and settlement of such Claims and Interests embodied in the Plans and reinstatement and unimpairment of other Classes identified in the Plans are in the best interests of the Debtors, the Estates, and all holders of Claims and Interests, and are fair, equitable, and reasonable.

(ii)     *RCS Plan's 9019 Settlements.*  The RCS Plan embodies various settlements and agreements among the RCS Debtors, the Required Consenting Lenders, the Committee and Luxor (the "**Settling Parties**") that are integral to the RCS Plan (the "**9019 Settlements**"). The 9019 Settlements are an integrated series of settlements reached by the Settling Parties of all RCS Plan-related issues. Each component of the 9019 Settlements is an integral, integrated, and inextricably linked part of the RCS Plan that is not severable from the entirety of the 9019 Settlements and the RCS Plan. In consideration for the distributions and other benefits provided for under the RCS Plan, including the release and exculpation provisions, the 9019 Settlements, as set forth in the RCS Plan, shall constitute a good faith compromise and settlement of, among other things, the value to be provided to holders of Allowed General Unsecured Claims under the RCS Plan and the allocation of that value among creditors of the various Debtors. The 9019 Settlements represent significant concessions from each of the Settling Parties, are fair and equitable, and will avoid the cost and expense of litigation over these issues absent a settlement, and fall well above the lowest point in the range of reasonableness. The 9019 Settlements, as incorporated in the RCS Plan (i) are a permitted means of implementing the RCS Plan pursuant to section 1123(b)(3) of the Bankruptcy Code;

(ii) are an integral element of the transactions incorporated into the RCS Plan; (iii) does not constitute substantive consolidation; (iv) confers material benefits on, and is in the best interests of, the RCS Debtors, the RCS Debtors' Estates, and their creditors; (iv) are fair and equitable and well within the range of reasonableness; and (v) are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, Bankruptcy Rule 9019, and other applicable law.

(d)      Other Provisions Not Inconsistent With Provisions of the Bankruptcy Code (11 U.S.C. § 1123(b)(6)).  Section 12.1 of the Plans provide for the Bankruptcy Court's jurisdiction over, without limitation, the enumerated matters therein consistent with applicable law.

(e)      Cure of Defaults (11 U.S.C. § 1123(d)).  Section 8.2 of the Plans provide that except to the extent that different treatment has been agreed to by the non-Debtor party or parties to any Executory Contract or Unexpired Lease to be assumed pursuant to Section 8.1 of the Cetera Prepackaged Plan, or assumed or assumed and assigned pursuant to Section 8.1 of the RCS Plan, the Reorganized Debtors, are responsible for paying any cure amounts (the "**Cure Amounts**") due under section 365 of the Bankruptcy Code.  The RCS Debtors timely filed the Cure Notices and provided the counterparties to the Executory Contracts or Unexpired Leases to be assumed or assumed and assigned the Initial Cure Notice on April 11, 2016 and the Supplemental Cure Notice on April 25, 2016.  The Reorganized Debtors will pay all Cure Amounts pursuant to the terms of the Plans and the RCS Disclosure Statement Orders.

R.      Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The Debtors have complied with the applicable provisions of the

Bankruptcy Code, thereby satisfying the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically:

      (a)     The Debtors are proper debtors under section 109 of the Bankruptcy Code.

      (b)     The Debtors have complied with all applicable provisions of the Bankruptcy Code, including, but not limited to, the provisions of sections 1125 and 1126, regarding disclosure and plan solicitation.

      (c)     The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Orders and the Cetera Solicitation Orders in transmitting the Plans, the RCS Disclosure Statement, the RCS Disclosure Statement Supplement, the Cetera Disclosure Statement, the ballots, and related documents and notices, and in soliciting and tabulating votes to accept or reject the Plans.

      S.     <u>Plans Proposed in Good Faith and Not by Any Means Forbidden by Law (11 U.S.C. § 1129(a)(3))</u>. The Debtors have proposed and negotiated the Plans (and all other documents necessary to effectuate the Plans, including those comprising the Plan Supplement) in good faith and not by any means forbidden by law, thereby complying with section 1129(a)(3) of the Bankruptcy Code. In determining that the Plans have been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the Plans and the formulation of the Plans. Based on the evidence presented at the Confirmation Hearing, the Bankruptcy Court finds and concludes that the Plans have been proposed with the legitimate and honest purpose of accomplishing successful reorganizations and maximizing the recoveries available to creditors. The Plans are the result of extensive, arm's-length negotiations between and among the Debtors and their principal stakeholders, including the First Lien Agent, certain First Lien Lenders, the Second Lien Agent, certain Second Lien Lenders, Luxor and the

01:18705316.1

Committee. The terms of the Plans are fair, just, and reasonable under the circumstances. Consistent with the overriding purpose of Chapter 11 of the Bankruptcy Code, the Plans are designed to allow the Debtors to satisfy their obligations to the greatest extent possible. Moreover, the sufficiency of disclosure and the arm's-length negotiations among the Debtors, the First Lien Agent, certain First Lien Lenders, the Second Lien Agent, certain Second Lien Lenders, Luxor and the Committee, leading to the formulation of the Plans and the Plan Supplement, all provide independent evidence of the Debtors' good faith in proposing the Plans in compliance with section 1129(a)(3) of the Bankruptcy Code. The Plans provide for a distribution of the value of the Debtors' Estates to their creditors in accordance with the priorities and provisions of the Bankruptcy Code. Further, the Plans' classification of Claims and Interests, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length and are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and each is necessary to the Debtors' successful emergence from Chapter 11. As evidenced by the overwhelming acceptance of the Plans, the Plans achieve the goal of consensual reorganization embodied by the Bankruptcy Code. The Debtors and each of their respective officers, directors, employees, advisors and professionals (i) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plans and the agreements, compromises, settlements, transactions, and transfers contemplated thereby, and (ii) will be acting in good faith in proceeding to (a) consummate the Plans and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plans, including, but not limited to, the other matters set forth in the Plan Supplement, and (b) take any actions authorized, directed or contemplated by this Confirmation Order.

01:18705316.1

Accordingly, the Plans have been filed in good faith and the Debtors have satisfied their obligations under section 1129(a)(3) of the Bankruptcy Code.

        T.    <u>Payments Made by the Debtors for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. All payments made or to be made by the Debtors or by a person issuing securities or acquiring property under the Plans, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plans and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

        U.    <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identities and principal affiliations of the persons proposed to serve after the Effective Date of the Plans as the initial directors of the Reorganized Debtors have been adequately disclosed. The initial officers of the Debtors will be the same officers who acted as such on the Petition Dates with no change in compensation, subject to certain of those officers being replaced by the board of directors of Reorganized Holdings, as disclosed in the Plan Supplement. The compensation payable to the new unaffiliated directors has been negotiated with the parties entitled to select them, *i.e.* the Required Consenting First Lien Lenders, and the Required Consenting Second Lien Lenders, and is believed to be consistent with market rates. Those individuals' appointments to such offices are consistent with the interests of holders of Claims against and Interests in the Debtors and with public policy. Therefore, the requirements of section 1129(a)(5) of the Bankruptcy Code have been satisfied.

V.    The Plans Do Not Contain Rate Changes (11 U.S.C. § 1129(a)(6)).  Section

1129(a)(6) of the Bankruptcy Code is inapplicable to the Debtors, whose rates are not subject to

the jurisdiction of any governmental regulatory agency.

W.    The Plans are in the Best Interests of Creditors and Interest Holders (11 U.S.C.

§ 1129(a)(7)).  The Plans satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation

analyses attached as Exhibit 2 to the RCS Disclosure Statement and as Exhibit 3 to the Cetera

Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing

(i) are reasonable, persuasive, credible and accurate, (ii) utilize reasonable and appropriate

methodologies and assumptions, (iii) have not been controverted by other credible evidence or

challenged in any objection, and (iv) conclusively establish that holders of Claims and Interests

in Impaired Classes have accepted the Plans or will receive or retain under the Plans, on account

of such Claim, property of a value, as of the Effective Date, that is not less than the amount that

such holder would receive or retain if the Debtors were liquidated under chapter 7 of the

Bankruptcy Code on such date.  No election has been made under 11 U.S.C § 1111(b), and

therefore 11 U.S.C. § 1129(a)(7)(B) is inapplicable in the Chapter 11 Cases.  Accordingly, the

Plans are in the best interests of the Debtors' creditors and satisfy the requirements of section

1129(a)(7) of the Bankruptcy Code.

X.    The Plans Have Been Accepted by the Requisite Impaired Classes (11 U.S.C.

§ 1129(a)(8)).

(a)    *The RCS Plan.*

(i)    Classes 1, 4, 6, 8 and 9 are Unimpaired by the RCS Plan and,

accordingly, holders of Claims in these Classes are conclusively presumed to have accepted the

01:18705316.1

RCS Plan pursuant to section 1126(f) of the Bankruptcy Code.  Thus, as to Classes 1, 4, 6, 8 and 9 section 1129(a)(8) of the Bankruptcy Code has been satisfied.

        (ii)     Classes 2, 3 and 5 are Impaired and were entitled to vote on the RCS Plan (the "**RCS Voting Classes**").  The RCS Tabulation Declaration establishes that the RCS Voting Classes listed in the chart below (the "**RCS Accepting Classes**") have accepted the RCS Plan in accordance with section 1126(c) of the Bankruptcy Code:

| Class | Acceptance | Rejection |
|---|---|---|
| Class 2 (First Lien Claims) | 100.00%    ($463,396,923.98) *in amount*<br><br>100.00% (176) *in number* | 0.00%   ($0.00) *in amount*<br><br>0.00% (0) *in number* |
| Class 3 (Second Lien Claims) | 100.00%    ($102,365,860.00) *in amount*<br><br>100.00% (46) *in number* | 0.00%   ($0.00) *in amount*<br><br>0.00% (0) *in number* |
| Class 5A (Holdings General Unsecured Claims) | 96.98%   ($204,405,840.13) *in amount*<br><br>87.50% (42) *in number* | 3.02%    ($6,375,638.10) *in amount*<br><br>12.5% (6) *in number* |
| Class 5B (American National Stock Transfer, LLC General Unsecured Claims) | 98.56%   ($46,243,071.80) *in amount*<br><br>60.00% (9) *in number* | 1.44%   ($674,333.13) *in amount*<br><br>40.00% (6) *in number* |
| Class 5C (Braves Acquisition, LLC General Unsecured Claims) | 100.00%   ($46,227,945.21) *in amount*<br><br>100.00% (6) *in number* | 0.00%   ($0.00) *in amount*<br><br>0.00% (0) *in number* |
| Class 5D (DirectVest LLC General Unsecured Claims) | 100.00%   ($46,227,945.21) *in amount*<br><br>100.00% (6) *in number* | 0.00%   ($0.00) *in amount*<br><br>0.00% (0) *in number* |

| **Class** | **Acceptance** | **Rejection** |
|---|---|---|
| Class 5E<br>(J.P Turner & Company Capital Management, LLC General Unsecured Claims) | 100.00%   ($46,227,945.21) *in amount*<br><br>100.00% (6) *in number* | 0.00%   ($0.00) *in amount*<br><br>0.00% (0) *in number* |
| Class 5F<br>(RCS Advisory Services LLC General Unsecured Claims) | 92.48%   ($46,227,945.21) *in amount*<br><br>75.00% (6) *in number* | 7.52%   ($3,761,005.50) *in amount*<br><br>25.00% (2) *in number* |
| Class 5G<br>(RCS Capital Holdings, LLC General Unsecured Claims) | 100.00%   ($46,227,945.21) *in amount*<br><br>100.00% (6) *in number* | 0.00%   ($0.00) *in amount*<br><br>0.00% (0) *in number* |
| Class 5H<br>(Realty Capital Securities, LLC General Unsecured Claims) | 96.35%   ($49,580,257.29) *in amount*<br><br>72.41% (21) *in number* | 3.65%   ($1,879,343.49) *in amount*<br><br>27.59% (8) *in number* |
| Class 5I<br>(SBSI Insurance Agency of Texas Inc. General Unsecured Claims) | 100.00%   ($46,227,945.21) *in amount*<br><br>100.00% (6) *in number* | 0.00%   ($0.00) *in amount*<br><br>0.00% (0) *in number* |
| Class 5J<br>(SK Research LLC General Unsecured Claims) | 98.22%   ($46,230,115.19) *in amount*<br><br>77.78% (7) *in number* | 1.78%   ($837,550.00) *in amount*<br><br>22.22% (2) *in number* |
| Class 5K<br>(Trupoly, LLC General Unsecured Claims) | 100.00%   ($46,227,945.21) *in amount*<br><br>100.00% (6) *in number* | 0.00%   ($0.00) *in amount*<br><br>0.00% (0) *in number* |
| Class 5L<br>(We R Crowdfunding, LLC General Unsecured Claims) | 100.00%   ($46,227,945.21) *in amount*<br><br>100.00% (6) *in number* | 0.00%   ($0.00) *in amount*<br><br>0.00% (0) *in number* |

As to the RCS Accepting Classes, section 1129(a)(8) of the Bankruptcy Code has been satisfied.

(iii)    Classes 7 and 10 are Impaired by the RCS Plan and are not entitled to receive or retain any property under the RCS Plan on account of their Claims or Interests. Thus Classes 7 and 10 are deemed to have rejected the RCS Plan pursuant to section 1126(g) of the Bankruptcy Code.  Notwithstanding the foregoing, the RCS Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

(b)    *The Cetera Prepackaged Plan.*

(i)    Classes 1, 4, 5, 6 and 7 are Unimpaired by the Cetera Prepackaged Plan and, accordingly, holders of Claims in these Classes are conclusively presumed to have accepted the Cetera Prepackaged Plan pursuant to section 1126(f) of the Bankruptcy Code. Thus, as to Classes 1, 4, 5, 6 and 7, section 1129(a)(8) of the Bankruptcy Code has been satisfied.

(ii)    Classes 2 and 3 are Impaired and were entitled to vote on the Cetera Prepackaged Plan (the "**Cetera Voting Classes**").  The Cetera Tabulation Declaration establishes that the Cetera Voting Classes listed in the chart below (the "**Cetera Accepting Classes**," and together with the RCS Accepting Classes, the "**Accepting Classes**") have accepted the Cetera Prepackaged Plan in accordance with section 1126(c) of the Bankruptcy Code:

| Class | Acceptance | Rejection |
|---|---|---|
| Class 2 (First Lien Claims) | 100.00%    ($473,285,761.29) *in amount* <br><br> 100.00% (185) *in number* | 0.00%   ($0.00) *in amount* <br><br> 0.00% (0) *in number* |
| Class 3 (Second Lien Claims) | 100.00%    ($146,350,000.00]) *in amount* <br><br> 100.00% (65) *in number* | 0.00%   ($0.00) *in amount* <br><br> 0.00% (0) *in number* |

As to the Cetera Accepting Classes, section 1129(a)(8) of the Bankruptcy Code has been satisfied.

Y.      Treatment of General Administrative Claims, Professional Fee Claims, Priority Tax Claims and DIP Claims (11 U.S.C. § 1129(a)(9)).  The treatment of General Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Claims set forth in Sections 2.3 through 2.6 of the Plans satisfy the requirements of sections 1129(a)(9)(A), (B), (C), and (D) of the Bankruptcy Code.

Z.      At Least One Impaired Class of Claims Has Accepted Each Plan (11 U.S.C. § 1129(a)(10)).  The Accepting Classes, each of which is Impaired pursuant to the Plans and entitled to vote, voted to accept the Plans by the requisite majorities, determined without including any acceptance of the Plans by any insider, in accordance with section 1126 of the Bankruptcy Code, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

AA.     The Plans are Feasible (11 U.S.C. § 1129(a)(11)).  The RCS Disclosure Statement, the Cetera Disclosure Statement, the projections set forth in Exhibit 5 of the RCS Disclosure Statement and Exhibit 6 to the Cetera Disclosure Statement, the Orlofsky Declaration, the Tempke Declaration and other evidence proffered or adduced by the Debtors at the Confirmation Hearing or in support of confirmation of the Plans with respect to feasibility (i) are reasonable, persuasive, credible and accurate, (ii) utilize reasonable and appropriate methodologies and assumptions, (iii) have not been controverted by other credible evidence or challenged in any objection, and (iv) establish that confirmation of the Plans is not likely to be followed by the need for further financial reorganization of the Reorganized Debtors, and is not likely to be followed by a liquidation other than as specifically contemplated by the Plans.  Thus,

01:18705316.1

34

the Plans are feasible and satisfy the requirements of section 1129(a)(11) of the Bankruptcy

Code.

BB.    The Plans Provide for Payment of Fees (11 U.S.C. § 1129(a)(12)). Section 2.2 of

the Plans provides that on the Effective Date, and thereafter as may be required, the Reorganized

Debtors shall pay all U.S. Trustee Fees arising under 28 U.S.C. § 1930(a)(6) and accrued interest

thereon arising under 31 U.S.C. § 3717. Any U.S. Trustee Fees due thereafter shall be paid by

the Reorganized Debtors in the ordinary course until the earlier of the entry of a final decree

closing the applicable Chapter 11 Case, or a Bankruptcy Court order converting or dismissing

the applicable Chapter 11 Case. Therefore, the requirements of section 1129(a)(12) of the

Bankruptcy Code are satisfied.

CC.    The Plans Adequately and Properly Treat Retiree Benefits (11 U.S.C.

§ 1129(a)(13)). Notwithstanding anything herein to the contrary, pursuant to section 1129(a)(13)

of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as such term is

defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance

with applicable law. Accordingly, the Debtors submit that they have satisfied the requirements

of section 1129(a)(13) of the Bankruptcy Code.

DD.    No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtors are not

required by a judicial or administrative order, or by statute, to pay any domestic support

obligations. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these

Chapter 11 Cases.

EE.    Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)). The Debtors are not

individuals and, accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these

Chapter 11 Cases.

01:18705316.1

FF.    No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C.
§ 1129(a)(16)). The Debtors are moneyed, business, or commercial corporations or trusts, as the
case may be and, accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in
these Chapter 11 Cases.

GG.    Confirmation of the RCS Plan Over Nonacceptance of Impaired Classes (11
U.S.C. § 1129(b)). Section 1129(b) of the Bankruptcy Code is inapplicable to confirmation of
the Cetera Prepackaged Plan given that the Cetera Debtors have met all of the requirements of
section 1129(a) of the Bankruptcy Code. The RCS Debtors have requested that the Bankruptcy
Court confirm the RCS Plan notwithstanding the fact that the holders of Claims and Interests in
Classes 7 and 10 were deemed to reject the RCS Plan (collectively, the "**RCS Rejecting
Classes**"). The RCS Debtors have satisfied the requirements of sections 1129(b)(1) and (b)(2) of
the Bankruptcy Code with respect to the RCS Rejecting Classes as the RCS Plan does not
discriminate unfairly and is fair and equitable with respect to the RCS Rejecting Classes. The
RCS Plan does not discriminate unfairly with respect to holders of Claims in the RCS Rejecting
Classes because such holders are receiving the same treatment as holders of similarly situated
Claims against the applicable Debtor. The RCS Plan is fair and equitable with respect to each
RCS Rejecting Class because (i) it does not provide a recovery on account of any Claim or
Interest that is junior to any Class of unsecured claims, and (ii) no holder of a Claim or an
Interest in any Class will receive or retain property under the RCS Plan that has a value greater
than 100% of such holder's Allowed Claim or Interest. Intercompany Interests are not being
cancelled and are reinstated under the RCS Plan; however, this treatment of Intercompany
Interests is to maintain the existing corporate structure of the RCS Debtors and the administrative
convenience associated therewith. Based on the evidence adduced and admitted at the

Confirmation Hearing, including the Orlofsky Declaration, the Tempke Declaration, the Vasser

Declaration and for the reasons set forth in the Confirmation Brief, the RCS Plan does not

discriminate unfairly and is fair and equitable with respect to the RCS Rejecting Classes, as

required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code. Thus, the RCS Plan may be

confirmed notwithstanding the rejection of the RCS Plan by the RCS Rejecting Classes. Upon

confirmation and the occurrence of the Effective Date, the RCS Plan shall be binding upon the

members of the Rejecting Classes.

HH.    Only One Plan for each Debtor (11 U.S.C. § 1129(c)). Other than the RCS Plan

(including previous versions thereof), which RCS Plan constitutes a separate Chapter 11 plan for

each of the twelve RCS Debtors, no other plan has been filed in the Chapter 11 Cases for the

RCS Debtors. Other than the Cetera Prepackaged Plan (including previous versions thereof),

which Cetera Prepackaged Plan constitutes a separate Chapter 11 plan for each of the nineteen

Cetera Debtors, no other plan has been filed in the Chapter 11 Cases for the Cetera Debtors. As

a result thereof, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

II.    Principal Purpose of the Plans (11 U.S.C. § 1129(d)). The principal purpose of

the Plans are not the avoidance of taxes or the avoidance of the application of Section 5 of the

Securities Act of 1933, thereby satisfying the requirements of section 1129(d) of the Bankruptcy

Code.

JJ.    Not Small Business Cases (11 U.S.C. § 1129(e)). None of the Chapter 11 Cases

are small business cases, as that term is defined in the Bankruptcy Code, and accordingly, section

1129(e) of the Bankruptcy Code is inapplicable.

KK.    Good Faith Solicitation (11 U.S.C. § 1125(e)). Based on the record before the

Bankruptcy Court in these Chapter 11 Cases, the Tabulation Declarations, and the Solicitation

01:18705316.1

37

Affidavits of Service, the Debtors have solicited acceptances of the Plans in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125(a) and (e) of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Orders, the Cetera Solicitation Orders and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

LL.    Resolution of Objections.  All parties have had a full and fair opportunity to litigate all issues raised by Objections, or which might have been raised, and the Objections have been fully and fairly litigated.  As presented at the Confirmation Hearing and as provided herein, the consensual resolutions of certain Objections, responses, statements, and comments in opposition to the Plans satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and are in the best interests of the Debtors, and are hereby approved.

MM.    Satisfaction of Confirmation Requirements.  Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plans satisfy the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## Implementation and Consummation of the Plans

NN.    Implementation.  All documents necessary to implement the Plans and all other relevant and necessary documents have been negotiated in good faith and at arm's-length and shall, upon execution of the documents and upon the occurrence of the Effective Date, constitute legal, valid, binding, enforceable, and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms.  Without limiting the generality of the foregoing, the Exit Credit Agreement and New Second Lien Credit Agreement and all collateral security and other loan documents relating thereto (including, without limitation, any and all terms, conditions and covenants thereof) have been negotiated in good faith and at arm's-length

01:18705316.1

among the borrowers and guarantors under the Exit Credit Agreement and New Second Lien

Credit Agreement and the lenders, agents and other secured parties thereunder, and any credit

extended or loans made to the borrowers under the Exit Credit Agreement and the New Second

Lien Agreement has been extended, issued and made in good faith and for legitimate business

purposes and the lenders, agents and other secured parties thereunder have acted in good faith in

negotiating, formulating, and proposing the transactions contemplated by the Plans.  Pursuant to

section 1142(a) of the Bankruptcy Code, the Plans and the Plan Documents (as defined below)

will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

The Debtors or Reorganized Debtors, as applicable, are authorized, without any further notice to,

or action, order or approval of the Bankruptcy Court, to finalize, execute, and deliver all

agreements, documents, instruments, and certificates relating to the Plans and to perform their

obligations under such agreements, documents, instruments, and certificates.

      OO.    <u>Good Faith</u>.  The Debtors and each of their respective officers, directors,

employees, attorneys, advisors, insurers, investment bankers, consultants, managers, members,

partners, agents, accountants, and other professionals, and their predecessors, successors, and

assigns, in each case, in their respective capacities as such, as applicable, (i) have acted in good

faith in negotiating, formulating, and proposing, where applicable, the Plans, the documents

comprising the Plan Supplement, and all agreements, compromises, settlements, transactions,

and transfers contemplated thereby and (ii) will be acting in good faith in proceeding to

(a) consummate the Plans and the agreements, compromises, settlements, transactions, transfers,

and documentation contemplated by the Plans, and (b) take any actions authorized or

contemplated by this Confirmation Order.

PP.    <u>Securities Exempt from Registration</u>.  To the maximum extent provided by

section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, (i) the issuance under

the Plans of the Reorganized Holdings Equity Interests to the First Lien Lenders and Second

Lien Lenders, (ii) the issuance of the Class A Units to the holders of General Unsecured Claims

under the RCS Plan, (iii) the issuance of the Class B Units to the holders of Second Lien

Deficiency Claims under the RCS Plan, (iv) the issuance of the New Warrants to the Creditor

Trust and the subsequent distribution of the New Warrants from the Creditor Trust to the holders

of Series A-1 Units in accordance with the Creditor Trust Agreement, and (v) any subsequent

sales, resales, transfers or other Distributions of such Reorganized Holdings Equity Interests,

Class A Units, Class B Units or New Warrants (including Reorganized Holdings Equity Interests

issuable upon exercise of any New Warrants) shall be exempt from registration under the

Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and

any state or local law requiring registration prior to the offering, issuance, distribution or sale of

securities, and such issuance is authorized without the need for any further corporate action and

without any further action.  The issuance of Reorganized Holdings Equity Interests, Class A

Units, Class B Units and New Warrants is or was in exchange for First Lien Claims, Second Lien

Claims and General Unsecured Claims.  Pursuant to section 1145(c) of the Bankruptcy Code,

any subsequent sales, resales, transfers, or other distributions of such Reorganized Holdings

Equity Interests, Class A Units, Class B Units and New Warrants shall be exempt from

registration under the Securities Act of 1933, as amended, and all rules and regulations

promulgated thereunder, and any state or local law requiring registration prior to the offering,

issuance, distribution or sale of securities, except for any restrictions set forth in section 1145(b)

of the Bankruptcy Code and any restriction contained in the Shareholders' Agreement, Creditor

Trust Agreement or New Warrant Agreement.

QQ.    Releases, Exculpation, Discharge and Permanent Injunction.

(a)    The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of

the Judicial Code and sections 105, 524, and 1141 of the Bankruptcy Code to approve the

provisions with respect to the releases by the Debtors, releases by creditors, injunction, limitation

of liability, exculpation, and discharge and injunctions set forth in Section 10 of the Plans.

(b)    The releases by the Debtors set forth in Section 10.6(a) of the Plans (the

"**Debtor Releases**") represent a valid exercise of the Debtors' business judgment and

accordingly are appropriate under section 1123(b)(3)(A) of the Bankruptcy Code. With respect

to the Debtor Releases – (i) there is an identity of interest between the Debtors and the Debtor

Released Parties, (ii) the Debtor Released Parties have made substantial contributions, (iii) the

Debtor Releases are necessary to the reorganization, and (iv) the Plans have been

overwhelmingly accepted by the RCS Voting Classes and Cetera Voting Classes. The Debtor

Released Parties provided substantial contributions to the Chapter 11 Cases and the Plans, and

provided good and valuable consideration in exchange for the Debtor Releases, including

services and funding throughout these Chapter 11 Cases, as the case may be, and otherwise

facilitating the reorganization of the Debtors and the implementation of the restructuring

contemplated by the Plans. The Debtor Releases are critically important to the success of the

Plans, which embody the terms of the RSA and, therefore, the settlement of significant claims

with the Debtors' primary stakeholders. The RSA, and in turn, the Plans, reflect and implement

the concessions and significant compromises made by the Settling Parties. Each of the Debtor

Released Parties afforded value to the Debtors and aided in the reorganization process. The

01:18705316.1

Debtor Released Parties played an integral role in the formulation and implementation of the

Plans. The Plans reflect the settlement and resolution of several complex issues, and the Debtor

Releases are an integral part of the consideration to be provided in exchange for the

compromises and resolutions embodied in the Plans. In approving the Debtor Releases based on

the record and the facts and circumstances of the Chapter 11 Cases, the Court hereby determines

that the Debtor Releases are: (i) in exchange for the good and valuable consideration provided by

the Debtor Released Parties; (ii) a good faith settlement and compromise of the claims released

by the Debtor Releases; (iii) in the best interests of the Debtors and all holders of Claims and

Interests; (iv) a fair and valid exercise of the Debtors' business judgment; (v) fair, equitable, and

reasonable; (vi) given and made after notice and opportunity for hearing; and (vii) a bar to any of

the Debtors, the Reorganized Debtors, the Estates or any other person or entity seeking to

exercise the rights of the Debtors' Estates to assert any claim released by the Debtor Releases

against any of the Debtor Released Parties.

(c)      The parties providing releases pursuant to Section 10.6(b) of the Plans

include, each holder of a Claim (solely in its capacity as such) that (i) has voted to accept the

Plans, or (ii) has voted to reject the Plans but has not checked the box on the applicable ballot

indicating that such holder opts not to grant the releases provided in the Plans (collectively, the

"**Releasing Parties**"). Those holders of Claims who submitted ballots by the deadline to vote on

the Plans and checked the applicable box indicating that they opt not to grant the releases

provided in the Plans are not Releasing Parties. The holders of Classes 2, 3 and 5 Claims with

respect to the RCS Plan and the holders of Classes 2 and 3 Claims with respect to the Cetera

Prepackaged Plan have received adequate notice and the opportunity to opt out of the releases

under Section 10.6(b) of the Plans. The third party release provisions in Section 10.6(b) are

italicized in the Plans, the RCS Disclosure Statement, and the Cetera Disclosure Statement, and the Supplemental Disclosure Statement and ballots set forth in bold text the effect of consenting to the Plans, abstaining, or voting against the Plans without opting out of the release. For all of the foregoing reasons, the Bankruptcy Court finds that the releases granted to third parties by the Releasing Parties are consensual.

(d)    Based on the record of the Chapter 11 Cases and the evidence proffered, adduced and/or presented at the Confirmation Hearing, the Bankruptcy Court finds that the non-Debtor releases set forth in Section 10.6(b) of the Plans are consistent with the Bankruptcy Code and applicable law. Each of the Released Parties shares an identity of interest with the Debtors, was instrumental to the successful prosecution of these Chapter 11 Cases and/or provided essential consideration that would not otherwise be available but for the agreement of such Released Parties. Such releases are, individually and collectively, integral to, and necessary for the successful implementation of, the Plans, essential to the Debtors' reorganization and supported by reasonable consideration. Such releases are binding upon the Releasing Parties and were appropriately disclosed in the RCS Disclosure Statement, the RCS Disclosure Statement Supplement, the Cetera Disclosure Statement, the ballots, and under the Plans.

(e)    The exculpation provision set forth in Section 10.7 of the Plans is appropriately tailored to protect the exculpated parties from inappropriate litigation and does not relieve any party of liability for gross negligence, willful misconduct, or fraud. The exculpated parties pursuant to Section 10.7 of the Plans have contributed substantial value to the Debtors and the formulation of the Plans. Such exculpated parties' efforts in negotiating and ultimately formulating the Plans enabled the Debtors to file and proceed to confirmation of the Plans. The discharge and injunctions set forth in Sections 10.3, 10.5 and 10.8 of the Plans comply with

01:18705316.1

section 524(e) of the Bankruptcy Code and are important to the overall objectives of the Plans to finally resolve all claims against the Debtors in the Chapter 11 Cases. Based upon the record of these Chapter 11 Cases and the evidence admitted at or prior to the Confirmation Hearing, the Bankruptcy Court finds that the releases, exculpations, discharge and injunctions set forth in Section 10 of the Plans are consistent with the Bankruptcy Code and applicable law.

RR. <u>Conditions Precedent to Confirmation and Consummation of the Plans</u>. The conditions precedent to confirmation of the Plans as set forth in Section 9.1 of the Plans have been satisfied or duly waived in accordance with the Section 9.4 of the Plans.

SS. <u>Likelihood of Satisfaction of Conditions Precedent to the Effective Date</u>. Each of the conditions precedent to the Effective Date, as set forth in Section 9.2 of the Plans, has been or is reasonably likely to be satisfied or waived in accordance with Section 9.4 of the Plans.

TT. <u>Retention of Jurisdiction</u>. The Bankruptcy Court may properly and shall retain jurisdiction over the matters set forth in Section 12.1 of the Plans, as modified pursuant to the terms of this Confirmation Order.

UU. <u>Separate Plan for Each Debtor</u>. The Plans are a separate plan of reorganization for each Debtor. (I) No evidence has been presented to warrant either (i) a substantive consolidation of the RCS Debtors' Estates or (ii) the piercing of the corporate veil of any Debtor under applicable non-bankruptcy law and (II) the Plans do not provide for substantive consolidation, except the substantive consolidation of the Cetera Debtors with respect to Classes 2 and 3 solely for the limited purposes of voting on the Cetera Prepackaged Plan and Distributions provided for under the Cetera Prepackaged Plan as provided therein. Classes 2 and 3 have consented to such treatment by accepting the Cetera Prepackaged Plan.

VV. <u>Waiver of Stay</u>. Given the facts and circumstances of the Chapter 11 Cases, it is

appropriate that the 14-day stay imposed by Bankruptcy Rules 3020(e) and 7062(a) be waived.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      Record Closed.  The record of the Confirmation Hearing is hereby closed.

2.      Cetera Disclosure Statement.  The Cetera Disclosure Statement is approved in all respects.

3.      Ballot.  The ballots for the Cetera Voting Classes are approved in all respects.

4.      Solicitation of the Plans.  The solicitation of votes on the Plans complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

5.      Notice of the Confirmation Hearing.  Notice of the Confirmation Hearing was appropriate and satisfactory and is approved in all respects.

6.      Confirmation.  All requirements for confirmation of the Plans have been satisfied. The Plans are **CONFIRMED** in their entirety pursuant to section 1129 of the Bankruptcy Code. The terms of the Plans, the Plan Supplement, and any other documents filed in connection with the Plans and/or executed or to be executed in connection with the transactions contemplated by the Plans, and all amendments and modifications thereof made in accordance with the Plans and this Confirmation Order, are hereby approved by this Confirmation Order.  A copy of the RCS Plan (without the Plan Supplement) in the form confirmed is attached hereto as Exhibit A.  A copy of the Cetera Prepackaged Plan (without the Plan Supplement) in the form confirmed is attached hereto as Exhibit B.

01:18705316.1

7.    Objections. All Objections that have not been withdrawn or resolved prior to the entry of this Confirmation Order are overruled in all respects for the reasons set forth in the record of the Confirmation Hearing, which record is incorporated herein by reference. All withdrawn objections, if any, are deemed withdrawn with prejudice.

8.    Omission of Reference to Particular Plans Provisions. The failure to specifically describe or include any particular provision of the Plans or the Plan Supplement in this Confirmation Order shall not diminish or impair the effectiveness of such provision, and such provision shall have the same validity, binding effect and enforceability as every other provision of the Plans and the Plan Supplement.

9.    Deemed Acceptance of Plans as Modified. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plans or who are conclusively presumed to have accepted the Plans are deemed to have accepted the Plans as modified by the Plans modifications. No holder of a Claim shall be permitted to change its vote as a consequence of the Plans modifications.

10.    9019 Settlements. The 9019 Settlements, incorporated into the RCS Plan, are approved in all respects as fair and equitable and in the best interests of the Debtors, the Debtors' Estates and creditors.

11.    Implementation; Plan Documents.

(a)    The Debtors, the Reorganized Debtors, the First Lien Agent, the Required Consenting First Lien Lenders, the Second Lien Agent, the Required Consenting Second Lien Lenders, Luxor, the Committee and all other parties bound by the Plans are authorized to take all actions necessary, appropriate, or desirable to enter into, implement, and consummate the contracts, instruments, releases, leases, agreements, or other documents created or executed in

01:18705316.1

connection with the Plans, including, but not limited to, all actions necessary, appropriate, or

desirable to enter into, implement, and consummate the contracts, instruments, releases, leases,

agreements, or other documents created or executed in connection with the Plans, including but

not limited to the Exit Credit Agreement and all collateral security and other loan documents

related thereto, the New Second Lien Credit Agreement and all collateral security and other loan

documents related thereto, the Shareholders' Agreement, the RIA Release, the New Warrant

Agreement, the Creditor Trust Agreement, the Indemnification Agreement, and the New

Corporate Governance Documents, the documents necessary or appropriate to implement

transactions contemplated or permitted under Section 5.1 of the Plans, and any amendments,

modifications and supplements thereto, and any other agreements or documents related to or

entered into in connection with same, including all Definitive Documents (collectively, the "**Plan**

**Documents**").  In accordance with section 1142 of the Bankruptcy Code and applicable

nonbankruptcy law, such actions may be taken without further action being required under

applicable law, regulation, order or rule (including, without limitation, any action by the board of

directors, stockholders, partners, members or managers of any Debtor).

(b)     Upon the Effective Date, all Plan Documents shall become, and shall

remain, effective and binding in accordance with their respective terms and conditions, in each

case without further notice to or order of the Bankruptcy Court, act or action under applicable

law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other

than as expressly required by such applicable agreement).

(c)     Following the execution and delivery of the Plan Documents, the

appropriate officers of the Reorganized Debtors, any one of whom may act without the joinder of

any of the others, are hereby authorized and empowered, in the name and on behalf of the

Reorganized Debtors, to consummate the transactions contemplated by, and to perform and fulfill the Reorganized Debtors' agreements, undertakings and obligations contained in, the Plan Documents.

(d)    Execution versions of the Plan Documents shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and shall create, as of the Effective Date, all liens and security interests created thereby without the necessity of further filings, recordings, approvals or consents.

(e)    The Debtors shall make Distributions to holders of Allowed Claims in accordance with and subject to the terms of the Plans.  As set forth in the RCS Disclosure Statement and Cetera Disclosure Statement, the Plans estimate that the value of the consideration to be distributed is less than the principal amount of the First Lien Claims.  As such, no portion of any distribution on account of First Lien Claims shall constitute a payment on prepetition interest or fees.

12.    <u>Modifications or Alterations to Plans and Plan Documents</u>.  Subject to the prior written consent of the Required Consenting Lenders, the First Lien Agent and the Second Lien Agent, and Luxor, each to the extent provided for in the RSA, and, solely with respect to the RCS Plan, to the extent affecting Distributions to holders of General Unsecured Claims against the RCS Debtors, the Committee, the Plans may be amended, modified or supplemented at any time after the Confirmation Date and before substantial consummation, provided that the Plans, as amended, modified or supplemented, satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and hearing confirms the Plans as modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such amendment, modification or supplement.  Any holder of a Claim that has accepted the Plans

prior to any amendment, modification or supplement will be deemed to have accepted the Plans,

as amended, modified or supplemented, if the proposed amendment, modification or supplement

does not materially and adversely change the treatment of such holder's Claim.  Notwithstanding

the foregoing, prior to the Effective Date, the Debtors, with the consent of the Required

Consenting Lenders, and, to the extent provided in the RSA, the First Lien Agent, Second Lien

Agent and Luxor, solely with respect to the RCS Plan and to the extent affecting Distributions to

holders of General Unsecured Claims against the RCS Debtors, the Committee, which consent

shall not be unreasonably withheld, may make appropriate technical adjustment and

modifications to the Plans without further order or approval of the Bankruptcy Court; provided,

however, that the Debtors shall File with the Bankruptcy Court a notice of any such modification

to the Plans.  After the Effective Date, the Debtors, and the Reorganized Debtors may institute

proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any

inconsistencies in the Plans or this Confirmation Order, with respect to such matters as may be

necessary to carry out the purposes and effects of the Plans.

   13. <u>DIP Order and DIP Facility</u>.  On the Effective Date, the Debtors are authorized to

satisfy their outstanding obligations under the DIP Order and the DIP Facility, if any, in full in

Cash, and upon such payment, all of the Debtors' respective outstanding obligations, liabilities

and indebtedness in respect of the DIP Order and the DIP Facility and all liens and security

interests securing the same shall be satisfied, discharged, and terminated in full and the Debtors

shall have no further obligations, liabilities or indebtedness under the DIP Order, the DIP Facility

or any documents relating thereto, other than any obligations that may survive termination of the

DIP Order and DIP Facility in accordance with its terms, including, without limitation, any

indemnification and expense reimbursement obligations.  For the avoidance of doubt, and to the

01:18705316.1

extent set forth in the DIP Order, nothing in the Plans or in this Confirmation Order shall discharge any claims arising under the DIP Facility or the DIP Order, all of which shall remain in full force and effect until satisfied in full in Cash.

14.    Restructuring Transactions.  The Debtors are authorized to enter into and perform under the Restructuring Transactions.  In addition to, or instead of the Restructuring Transactions, the Debtors or the Reorganized Debtors, subject to the prior written consent of the Required Consenting Lenders and, solely with respect to the RCS Plan to the extent affecting Distributions to holders of General Unsecured Claims, the Committee, and to the extent set forth in the RSA, Luxor, may cause any of the Debtors or the Reorganized Debtors to engage in additional corporate restructuring transactions necessary or appropriate for the purposes of implementing the Plans, including, without limitation, converting corporate entities into limited liability companies, forming new entities within the corporate organizational structure of the Debtors or Reorganized Debtors, cancelling the existing equity at another of the Debtor entities and issuing new equity therefrom, consolidating, reorganizing, restructuring, merging, dissolving, liquidating or transferring assets between or among the Debtors and the Reorganized Debtors, including Reorganized Holdings.  The actions to effect these transactions may include (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, reorganization, transfer, disposition, conversion, liquidation, or dissolution containing terms that are consistent with the terms of the Plans and such other terms to which the applicable Persons may agree; (b) on terms consistent with the terms of the Plans and having such other terms to which the applicable Persons may agree, the execution and delivery of appropriate instruments of transfer, conversion, assignment, assumption, or delegation of any asset, property, right, liability, duty, or obligation; (c) pursuant to applicable

state law, the filing of appropriate certificates or articles of merger, consolidation, conversion, dissolution, or change in corporate form; and (d) the taking of all other actions that the applicable Persons determine to be necessary or appropriate, including (i) making filings or recordings that may be required by applicable state law in connection with such transactions and (ii) any appropriate positions on one or more tax returns.  On the Effective Date, the transactions contemplated by Section 5 of the Plans shall be consummated in the following order: (i) first, the RIA Release, and (ii) second, following the satisfaction of all other conditions to the occurrence of the Effective Date and consummation of the Plans, and only after the RIA Release, simultaneous consummation of the other restructuring transactions contemplated by each Plan.

15.    <u>Transfer of Assets Under the RCS Plan and Dissolution of Dissolving RCS Debtors</u>.  Except as otherwise provided in the RCS Plan, all assets, (other than Creditor Trust Assets which shall be transferred to and vested in the Creditor Trust free and clear of all Liens, Claims, mortgages, options, rights, encumbrances and interests of any kind or nature whatsoever), of each of the Dissolving Debtors shall be transferred to Reorganized Holdings free and clear of all Liens, Claims, mortgages, options, rights, encumbrances and interests of any kind or nature whatsoever other than Other Secured Claims and Unimpaired Claims and shall vest in Reorganized Holdings as of the Effective Date, or such later date as determined by the board of directors of Reorganized Holdings.  Subject to the Restructuring Transactions, as soon as practicable after the transfer of assets pursuant to the immediately preceding sentence, each of the Dissolving Debtors shall be dissolved upon the filing of appropriate certificates of dissolution, or other appropriate documents as necessary, with the appropriate governmental authorities under applicable law and all agreements, instruments, and other documents evidencing any equity Interest in any of the Dissolving Debtors, and any right of any holder of

01:18705316.1

51

such equity Interest in respect thereof, including any Claim related thereto, shall be deemed

cancelled, discharged and of no force or effect.

     16.   <u>New Second Lien Facility and Exit Facility</u>.

     (a)   Subject to, and upon the occurrence of, the Effective Date, and without

further notice to any party, or further order or other approval of the Bankruptcy Court, or further

act or action under applicable law, regulation, order or rule, or the vote, consent, authorization or

approval of any Person (including any holders of Claims or Interests or the directors of the

Reorganized Debtors), the Reorganized Debtors shall, and are hereby authorized to, enter into

and perform under the New Second Lien Credit Agreement and each "Loan Document" (as

defined in the New Second Lien Credit Agreement) and the Exit Credit Agreement and each

"Loan Document" (as defined in the Exit Credit Agreement), (the "**New Financing**

**Agreements**"), including, without limitation, payment of the Exit Backstop Discount and the

Exit Base Discount and all other fees thereunder, the incurrence of any subsidiary guarantees and

the provision of any indemnities thereunder, to execute and deliver the New Financing

Agreements and related documentation, including but not limited to any documents necessary to

grant the requisite liens, guarantees and security interests, in each case consistent with the terms

of the Plans and the New Financing Agreements, and any indemnification or expense

reimbursement provision.  For the avoidance of doubt, and to the extent set forth in the DIP

Order, nothing in the Plans or in the Confirmation Order shall discharge any claims arising under

the DIP Facility or the DIP Order, all of which shall remain in full force and effect until satisfied

in full in cash.  This Confirmation Order shall constitute (a) the approval by this Bankruptcy

Court of the New Financing Agreements, together with any related guarantees, security and other

ancillary documents (collectively, the "**Financing Documents**"), and all transactions

01:18705316.1

52

contemplated thereby, including, without limitation, any supplemental or additional syndication or subscription for the Exit Facility and the New Second Lien Facility, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including, without limitation, incurrence of any guaranties, the payment of all fees, indemnities, and expenses and the granting of any liens and security interests provided for in the Financing Documents, and (b) authorization by this Bankruptcy Court for the Reorganized Debtors to enter into and execute the New Financing Agreements, the other Financing Documents and such other documents as may be required to effectuate the New Financing Agreements, provide guarantees and grant the security interests pursuant to the New Financing Agreements and other Financing Documents.

      (b)    Executed versions of the New Financing Agreements and other Financing Documents shall constitute legal, valid, binding and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. The New Financing Agreements and the other Financing Documents, as well any liens granted or guaranties incurred, shall be deemed to have been entered in good faith, for legitimate business purposes, are reasonable, shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances or fraudulent transfers under the Bankruptcy Code or any other applicable nonbankruptcy law. On the Effective Date, all of the liens and security interests to be granted in accordance with the New Financing Agreements and the other Financing Documents shall be legal, binding and enforceable liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Financing Agreements and the other Financing Documents, shall be deemed properly perfected on the Effective Date, subject only to such liens and security interests as may be permitted under the

New Financing Agreements and shall not be subject to re-characterization or equitable

subordination and shall not constitute preferential transfers or fraudulent conveyances or

fraudulent transfers under the Bankruptcy Code or any other applicable nonbankruptcy law.

Executed versions of the New Financing Agreements and other Financing Documents shall

constitute legal, valid, binding and authorized obligations of the Reorganized Debtors,

enforceable in accordance with their terms.  The New Financing Agreements and the other

Financing Documents, as well any liens granted or guaranties incurred, shall be deemed to have

been entered in good faith, for legitimate business purposes, are reasonable, shall not be subject

to recharacterization or equitable subordination for any purposes whatsoever and shall not

constitute preferential transfers or fraudulent conveyances or fraudulent transfers under the

Bankruptcy Code or any other applicable nonbankruptcy law.  On the Effective Date, all of the

liens and security interests to be granted in accordance with the New Financing Agreements and

the other Financing Documents shall be legal, binding and enforceable liens on, and security

interests in, the collateral granted thereunder in accordance with the terms of the New Financing

Agreements and the other Financing Documents, shall be deemed properly perfected on the

Effective Date, subject only to such liens and security interests as may be permitted under the

New Financing Agreements and shall not be subject to re-characterization or equitable

subordination and shall not constitute preferential transfers or fraudulent conveyances or

fraudulent transfers under the Bankruptcy Code or any other applicable nonbankruptcy law.  The

Reorganized Debtors and the Persons granted such liens and security interests are authorized to

make all filings and recordings, and to obtain any governmental approvals and consents

necessary to establish and perfect such liens and security interests under the provisions of the

applicable state, provincial, federal or other law (whether domestic or foreign) that would be

applicable in the absence of the Plans and this Confirmation Order (it being understood that

perfection shall occur automatically as of the Effective Date by virtue of this Confirmation

Order, and any such filings, recordings, approvals and consents shall not be required) and will

thereafter cooperate to make all other filings and recordings that otherwise would be necessary

under applicable law to give notice of such liens and security interests to third parties.

     17.    <u>Reorganized Holdings Equity Interests</u>.

     (a)    Upon the effectiveness of its amended certificate of incorporation or

equivalent corporate governance document, on the Effective Date, Reorganized Holdings is

hereby authorized to issue and deliver shares of Reorganized Holdings Equity Interests as

provided in the Plans. The Reorganized Holdings Equity Interests when issued by Reorganized

Holdings shall be deemed duly authorized, validly issued, fully paid and non-assessable.

     (b)    The appropriate officers and directors of Reorganized Holdings, any one

of whom may act without the joinder of any of the others, are hereby authorized and empowered,

in the name and on behalf of Reorganized Holdings, to do and perform all acts and deliver all

instruments deemed by such officers or directors to be necessary or appropriate for the proper

issuance of the Reorganized Holdings Equity Interests and to deliver the shares of the

Reorganized Holdings Equity Interests pursuant to the Plans.

     18.    <u>Shareholders' Agreement</u>. Subject to, and upon the occurrence of, the Effective

Date, and without further notice to any party, or further order or other approval of the

Bankruptcy Court, or further act or action under applicable law, regulation, order or rule, or the

vote, consent, authorization or approval of any Person (including any holders of Claims or

Interests or the directors of the Reorganized Debtors), the Shareholders' Agreement is hereby

approved and shall be valid and binding on Reorganized Holdings and all holders of Reorganized

Holdings Equity Interests, and all Reorganized Holdings Equity Interests issued pursuant to the Plans shall be subject to the terms of the Shareholders' Agreement. Each holder of Reorganized Holdings Equity Interests shall be deemed to be bound to the terms of the Shareholders' Agreement from and after the Effective Date even if not a signatory thereto. Without limiting the foregoing, each holder of the Reorganized Holdings Equity Interests shall be required to sign the Shareholders' Agreement as a condition to the issuance to such holder of the Reorganized Holdings Equity Interests.

19.    New Warrant Agreement. Subject to, and upon the occurrence of, the Effective Date, and without further notice to any party, or further order or other approval of the Bankruptcy Court, or further act or action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of any Person (including any holders of Claims or Interests or the directors of the Reorganized Debtors), the New Warrant Agreement is hereby approved and shall be valid and binding on Reorganized Holdings and all holders of the New Warrants, and all New Warrants issued pursuant to the RCS Plan shall be subject to the terms in the New Warrant Agreement. Each party entitled to a Distribution of New Warrants under the Plan shall take any and all actions necessary to be bound by the New Warrant Agreement.

20.    Creditor Trust. Subject to, and upon the occurrence of, the Effective Date, and without further notice to any party, or further order or other approval of the Bankruptcy Court, or further act or action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of any Person (including any holders of Claims or Interests or the directors of the Reorganized Debtors), the Creditor Trust Agreement is hereby approved and shall be valid and binding on the Debtors or the Reorganized Debtors as the case may be, and the Creditor Trust shall be subject to the terms in the Creditor Trust Agreement and the RCS Plan.

On or before the Effective Date, the Debtors or the Reorganized Debtors, as the case may be,

shall execute the Creditor Trust Agreement and take all other necessary steps to establish the

Creditor Trust and allow the Creditor Trust to issue the applicable Series of Class A Units to

holders of Allowed General Unsecured Claims against the applicable RCS Debtor, and Class B

Units to holders of Allowed Second Lien Deficiency Claims.  As of the Effective Date, Holdings

or Reorganized Holdings, as the case may be, shall assign and transfer to, and shall vest in, the

Creditor Trust all of its rights, title and interest in and to the Creditor Assets for the benefit of

holders of Allowed Holdings General Unsecured Claims under the Creditor Trust Agreement and

the RCS Plan (whether allowed on or after the Effective Date).  The Debtors or the Reorganized

Debtors, and the Registered Investment Advisors shall assign and transfer to, and shall vest in,

the Creditor Trust all of their rights, title and interest in and to the Litigation Assets, as

applicable, for the benefit of the holders of the applicable Allowed General Unsecured Claims

under the Creditor Trust Agreement and the RCS Plan (whether Allowed on or after the

Effective Date) and the holders of Allowed Second Lien Deficiency Claims under the Creditor

Trust Agreement and the RCS Plan.  Each such transfer shall be exempt from any stamp, real

estate transfer, mortgage reporting, sales, use or other similar tax, and shall be free and clear of

any liens, claims and encumbrances, and no other entity, including the Debtors or Reorganized

Debtors, shall have any interest, legal, beneficial, or otherwise, in the Creditor Trust or the

Creditor Trust Assets upon their assignment and transfer to the Creditor Trust (other than as

provided herein or in the Creditor Trust Agreement).  Subject to the terms of the Creditor Trust

Agreement, to the extent that any Creditor Trust Assets cannot be transferred to the Creditor

Trust because of a restriction on transferability under applicable non-bankruptcy law that is not

superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the

Bankruptcy Code, such Creditor Trust Assets shall be deemed to have been retained by the Reorganized Debtors on behalf of the Creditor Trust and the Creditor Trust shall be deemed to have been designated as a representative of the Reorganized Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Creditor Trust Assets on behalf of the Reorganized Debtors for the benefit of the beneficiaries of the Creditor Trust, until such transfer restrictions are removed or the Reorganized Debtors receive, or become entitled to receive, net proceeds of such Creditor Trust Assets that can be so distributed. Anything in this Confirmation Order to the contrary notwithstanding, all net proceeds of such Creditor Trust Assets shall be transferred to the Creditor Trust to be distributed in accordance with the RCS Plan and the Creditor Trust Agreement. In accordance with the terms of the RCS Plan and the Creditor Trust Agreement, the Reorganized Debtors shall (i) cooperate with the Creditor Trust with respect to the transfer to the Creditor Trust of the Litigation Assets and the channeling to the Creditor Trust of all General Unsecured Claims, including by providing copies of all books and records of the Reorganized Debtors in connection therewith, and (ii) shall reasonably cooperate with the Creditor Trust as reasonably requested regarding the Litigation Assets, including by providing documentation, access to employees for interviews and testimony and/or other evidence. Such cooperation will be without charge to the Creditor Trust, except that the Creditor Trust shall reimburse the Reorganized Debtors for their reasonable out-of-pocket expenses.

21.    <u>Management Incentive Plan</u>. On the Effective Date, 5.0% of the Reorganized Holdings Equity Interests shall be reserved for distribution to members of management of Reorganized Holdings in accordance with the Management Incentive Plan, the terms of which shall be developed by the Board of Reorganized Holdings. Any Reorganized Holdings Equity

Interests provided to management in excess of the reserved 5.0% shall dilute all holders of Reorganized Holdings Equity Interests pro rata.

22.     Retention Program. On the Effective Date, the Reorganized Debtors are authorized to adopt the Retention Program.

23.     Indemnification Agreement. The Indemnification Agreement is hereby approved and each of Reorganized Holdings and each of the guarantors under the DIP Facility are authorized to execute and deliver the Indemnification Agreement and perform any and all obligations thereunder. The Indemnification Agreement (and any obligations thereunder) shall not be subject to avoidance as a fraudulent transfer or fraudulent conveyance under the Bankruptcy Code or otherwise. The indemnity set forth in the Indemnification Agreement (including, without limitation, any rights and Claims thereunder) (i) is in addition to, and not in lieu of, all other rights of the Indemnified Parties under the First Lien Credit Agreement, the Second Lien Credit Agreement, each Loan Document (as defined in the First Lien Credit Agreement or the Second Lien Credit Agreement, as applicable), the Restructuring Support Agreement, the RSA Assumption Order, the DIP Facility, DIP Order, the Plans, and this Confirmation Order, including all rights to assert a General Administrative Claim in the Chapter 11 Cases and (ii) shall not be released, discharged or dischargeable by either of the Plans or by this Confirmation Order.

24.     Retiree Benefits. Notwithstanding anything herein to the contrary, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

01:18705316.1

25.    <u>Plans Classification Controlling</u>.  The classifications of Claims and Interests for

purposes of the distributions to be made pursuant to the Plans shall be governed solely by the

terms of the Plans.  The classifications set forth on the ballots: (i) were set forth on the ballots

solely for purposes of voting to accept or reject the Plans, (ii) do not necessarily represent, and in

no event shall be deemed to modify or otherwise affect, the actual classification of such Claims

and Interests under the Plans for distribution purposes, and (iii) shall not be binding on the

Debtors, the Reorganized Debtors, and holders of Claims or Interests for purposes other than

voting on the Plans (although, for the avoidance of doubt, any releases granted by holders of

Class 2, 3 and 5 Claims against the RCS Debtors and Class 2 and 3 Claims against the Cetera

Debtors by not opting out of the applicable release provisions shall be binding on such holders).

All rights of the Debtors and the Reorganized Debtors to seek to reclassify Claims are expressly

reserved.

26.    <u>Substantive Consolidation for Limited Purposes Under the Cetera Prepackaged</u>

<u>Plan</u>.  Entry of this Confirmation Order shall constitute the approval, pursuant to sections 105(a)

and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, of the substantive

consolidation of the Cetera Debtors with respect to Classes 2 and 3 solely for the limited

purposes of voting on the Cetera Prepackaged Plan and Distributions provided for under the

Cetera Prepackaged Plan as provided therein.  The Cetera Debtors shall not be substantively

consolidated for any other purpose.  With respect to Classes 1 and 4 through 7, the classifications

of Claims and Interests set forth in the Cetera Prepackaged Plan shall be deemed to apply

separately with respect to each Cetera Debtor, as applicable.   Limited substantive consolidation

pursuant to Section 5.10 of the Cetera Prepackaged Plan shall not affect: (i) the legal and

corporate structures of the Cetera Debtors; (ii) pre- and post-Effective Date guarantees, liens and

01:18705316.1

security interests that are required to be maintained (a) in connection with contracts or leases that were entered into during the Chapter 11 Cases or Executory Contracts and Unexpired Leases that have been or will be assumed by the Cetera Debtors or (b) pursuant to the Cetera Prepackaged Plan; (iii) Intercompany Interests; (iv) distributions from any insurance policies or proceeds of such policies; or (v) the revesting of assets in the separate Reorganized Debtors. In addition, such consolidation shall not constitute a waiver of the mutuality requirement for setoff under section 553 of the Bankruptcy Code.

27.    General Administrative Claims Bar Date. Unless previously Filed, requests for payment of General Administrative Claims (other than Professional Fee Claims and Claims arising under section 503(b)(9) of the Bankruptcy Code) must be Filed with the Bankruptcy Court and served on the (x) Debtors or the Reorganized Debtors, as applicable, (y) First Lien Agent and (z) the Second Lien Agent, proof of such Administrative Claim within thirty (30) days after the Effective Date (the "**Administrative Claims Bar Date**"). Absent further order of the Bankruptcy Court, holders of General Administrative Claims that are required to, but do not, File and serve a request for payment of such General Administrative Claims by such date shall not be entitled to distributions on such General Administrative Claim. Objections to requests for payment of General Administrative Claims, if any, must be Filed and served on the Reorganized Debtors and the requesting party no later than one-hundred twenty (120) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court, after notice and a hearing, with notice only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 and parties who have submitted a General Administrative Claim that remains unpaid and subject to an unfiled dispute. Notwithstanding the foregoing, no request for payment of a General Administrative Claim need be Filed (i) with respect to a General Administrative Claim

previously Allowed by Final Order, (ii) with respect to any Cure Claim related to amounts due

and payable in the ordinary course of business and pursuant to ordinary trade terms, (iii) by any

other trade creditor or customer of the Debtors whose Claim is on account of ordinary course of

business goods or services provided to the Debtors during the course of these Chapter 11 Cases,

(iv) by any party holding any Claims Allowed under the Plans, (v) with respect to any General

Administrative Claim held by a current officer, director or employee of the Debtors for

indemnification, contribution, or legal fees in connection with such indemnification or

contribution claims pursuant to (A) any Debtor's operating agreement, certificate of

incorporation, by-laws, or similar organizational document or (B) any indemnification or

contribution agreement approved by the Bankruptcy Court, (vi) with respect to any General

Administrative Claim arising, in the ordinary course of business, out of the employment by one

or more Debtors of an individual from and after their respective Petition Dates, but only to the

extent that such Administrative Claim is solely for outstanding wages, commissions, accrued

benefits, or reimbursement of business expenses, or (vii) with respect to 503(b)(9) Claims

against the RCS Debtors (which shall be subject to the applicable Claims Bar Date).  For the

avoidance of doubt, General Administrative Claims related to breach of contract, tort or any

other Claim not related to amounts due and payable in the ordinary course of business and

pursuant to ordinary trade terms held by any party, including parties to any Executory Contract

or Unexpired Lease that is not rejected by the Debtors, or any trade creditor or customer, must be

filed by the Administrative Claims Bar Date set forth in Section 5.13 of the RCS Plan and

Section 5.11 of the Cetera Prepackaged Plan.  For the further avoidance of doubt and

notwithstanding the foregoing, no holder of a DIP Claim or General Administrative Claim

arising under the DIP Order shall be required to File a request for payment of its Administrative Claim.

28.    <u>Distributions</u>.  All distributions pursuant to the Plans shall be made in accordance with Section 6 of the Plans and such methods of distribution are approved.  Notwithstanding anything to the contrary in the Plans, all distributions of Trust Units to holders of Allowed Second Lien Claims and Allowed General Unsecured Claims shall occur as soon as practicable on or after the Effective Date.

29.    <u>Treatment Is in Full Satisfaction</u>.  All distributions under the Plans made to Persons holding Allowed Claims in any Class are intended to be and shall be in full and final satisfaction of the Debtors' obligations to such Class under the Plans.

30.    <u>Resolution of Claims</u>.  The provisions of Section 7 of the Plans, including, without limitation, the provisions governing procedures for resolving Disputed Claims, are fair and reasonable and are approved.

31.    <u>Preservation of Rights to Pursue and Settle Claims</u>.  Except with respect to the Company Released Causes of Action, the applicable Reorganized Debtors (with respect to the Retained Causes of Action and any Causes of Action arising after their respective Petition Dates) and the Creditor Trust (with respect to the Litigation Assets), in accordance with section 1123(b) of the Bankruptcy Code, shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that they each may respectively hold against any Person without the approval of the Bankruptcy Court and the Reorganized Debtors' and the Creditor Trust's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, subject to the terms of Section

7.2 of the Plans, this Confirmation Order and any contract, instrument, release, Convertible

Notes Indenture, or other agreement entered into in connection with the Plans. Except as

otherwise provided in the Plans, including, without limitation, with respect to any Company

Released Causes of Action, nothing contained in the Plans or in this Confirmation Order shall be

deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other

legal or equitable defense which the Debtors had immediately prior to their respective Petition

Dates, against or with respect to any Claim left Unimpaired by the Plans. On and after the

Effective Date, the Reorganized Debtors (with respect to the Retained Causes of Action and any

Causes of Action arising after their respective Petition Dates) and the Creditor Trust (with

respect to the Litigation Assets) shall have, retain, reserve and be entitled to assert all such

claims, Causes of Action, rights of setoff, and other legal or equitable defenses which the

Debtors had immediately prior to their Petition Dates fully as if the Chapter 11 Cases had not

been commenced, and all of the Debtors' and the Reorganized Debtors' legal and equitable

rights respecting any Claim left Unimpaired by the Plans may be asserted after the Confirmation

Date to the same extent as if the Chapter 11 Cases had not been commenced. Nothing in the

Cetera Prepackaged Plan or this Confirmation Order shall alter or impair any rights of any third

party to the extent such third party would have any defenses, rights of setoff or rights of

recoupment under applicable non-bankruptcy law against any holder of an Unimpaired Claim

against the Cetera Debtors with respect to any such Unimpaired Claim against the Cetera

Debtors.  No Person may rely on the absence of a specific reference in the Plans, the Plan

Supplement, the RCS Disclosure Statement, the RCS Disclosure Statement Supplement, or the

Cetera Disclosure Statement to any Cause of Action against them as any indication that the

Debtors, the Reorganized Debtors, or the Creditor Trust Administrator, as applicable, will not

01:18705316.1

pursue any and all available Causes of Action against them. Except with respect to Causes of Action as to which the Debtors or Reorganized Debtors have released any Person on or before the Effective Date (including the Company Released Causes of Action and otherwise), the Debtors, the Reorganized Debtors, and the Creditor Trust, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plans. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plans or a Bankruptcy Court order, the Reorganized Debtors (with respect to the Retained Causes of Action and any Causes of Action arising after their respective Petition Dates) and the Creditor Trust (with respect to the Litigation Assets) expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation, or effectiveness of the Plans. Notwithstanding anything contained in Section 7.5(a) or (b) of the RCS Plan or Section 7.3(a) or (b) of the Cetera Prepackaged Plan, the Reorganized Debtors shall be prohibited from commencing or prosecuting any Retained Cause of Action (other than the RCAP Holdings Setoff Cause of Action) against any Retained Cause of Action Party other than for setoff or defensive purposes in any suit or action commenced against any Reorganized Debtor by any Retained Cause of Action Party.

32.    <u>Cancellation of Agreements and Securities</u>. Except (i) with respect to Unimpaired Claims; (ii) for purposes of evidencing a right to a Distribution under the Plans, (iii) with respect to Executory Contracts or Unexpired Leases assumed by the Debtors, or (iv) as otherwise provided in the Plans, all the agreements, instruments and other documents evidencing the

01:18705316.1

Claims, Interests or rights of any holder of an Impaired Claim or prepetition Interest under the

Plans shall be cancelled on the Effective Date, solely with respect to the Debtors and the

Reorganized Debtors.  Notwithstanding Confirmation or the occurrence of the Effective Date,

the First Lien Credit Agreement, the Second Lien Credit Agreement, the Intercreditor Agreement

and the Convertible Notes Indenture shall continue in effect solely for the purposes of (a) with

respect to the First Lien Credit Agreement and the Second Lien Credit Agreement, any

obligations thereunder (i) governing the relationship between (x) the First Lien Agent and the

First Lien Lenders and (y) the Second Lien Agent and the Second Lien Lenders (including, but

not limited to those provisions relating to the rights of the First Lien Agent or Second Lien Agent

to expense reimbursement, indemnification and similar amounts) or (ii) that may survive

termination or maturity of the First Lien Facility or Second Lien Facility in accordance with the

terms thereof, (b) with respect to the Convertible Notes Indenture, any obligations (i) governing

the relationship between the Convertible Notes Indenture Trustee and the holders of Convertible

Note Claims (including but not limited to those provisions relating to the Convertible Notes

Indenture Trustee's rights to expense reimbursement, indemnification and similar amounts) or

(ii) that may survive termination or maturity of the Convertible Notes Indenture, and (c) with

respect to all of the First Lien Credit Agreement, the Second Lien Credit Agreement, and the

Convertible Notes Indenture, (i) allowing holders of First Lien Claims, Second Lien Claims, and

Convertible Note Claims, respectively, to receive Distributions under the Plans, (ii) allowing the

First Lien Agent, the Second Lien Agent, and the Convertible Notes Indenture Trustee,

respectively to make Distributions under the Plans to the extent provided under the Plans, and

(iii) allowing the First Lien Agent, the Second Lien Agent, and Convertible Notes Indenture

Trustee to seek compensation and/or reimbursement of reasonable fees and expenses in

01:18705316.1

accordance with the terms of the First Lien Credit Agreement, the Second Lien Credit

Agreement, and the Convertible Notes Indenture, respectively, and the Plans, including, without

limitation, through the exercise of any charging lien.  For the avoidance of doubt, the exercise of

its charging lien by the First Lien Agent, the Second Lien Agent or the Convertible Notes

Indenture Trustee shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy

Code, this Confirmation Order or the Plans, or result in any expense or liability to the Debtors,

except to the extent set forth in or provided for under the Plans.  On and after the Effective Date,

all duties and responsibilities of the First Lien Agent, the Second Lien Agent, and the

Convertible Notes Indenture Trustee with respect to the Debtors under the First Lien Credit

Agreement, the Second Lien Credit Agreement, and the Convertible Notes Indenture,

respectively, shall be discharged except to the extent required in order to effectuate the Plans.

Notwithstanding the forgoing, the Plans shall not impair or alter the rights of the DIP Secured

Parties, the First Lien Secured Parties or the Second Lien Secured Parties with respect to any

liens or security interests they hold in property of Non-Debtor Guarantors.

     33.    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.  Entry

of this Confirmation Order shall, subject to and upon the occurrence of the Effective Date,

constitute (i) the authorization and approval, pursuant to sections 365(a) and 1123(b)(2) of the

Bankruptcy Code, of the assumption of the Executory Contracts and Unexpired Leases

(including any related guarantees) assumed pursuant to Section 8.1 of the Plans and (ii) the

authorization and approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code,

of the rejection of the Executory Contracts and Unexpired Leases of the Debtors rejected

pursuant to Section 8.1 of the Plans.  Until the Effective Date, the Debtors, at the direction of or

subject to the prior written consent of, as applicable, the Required Consenting Lenders, shall

01:18705316.1

retain the right to reject any of the Executory Contracts or Unexpired Leases, including such contracts or leases that are subject to a dispute concerning amounts necessary to cure any defaults.

34.    Cure Notice and Cure Amounts.  Any Person receiving an Initial Cure Notice that failed to object to the assumption of an Executory Contract or an Unexpired Lease, or that failed to object to the Cure Amount specified in the Initial Cure Notice, prior to April 25, 2016 at 4:00 p.m. (prevailing Eastern Time), unless otherwise extended, shall be forever barred from (i) objecting to the Initial Cure Notice and to the assumption of the Executory Contract or Unexpired Lease designated in the Initial Cure Notice, (ii) asserting any other, additional or different amount on account of such obligation against the Debtors, the Reorganized Debtors, or the Estate assets, and (iii) sharing in any other, additional or different distribution under the Plans on account of such obligation, and the Debtors and the Reorganized Debtors shall be deemed to have satisfied each element required for assumption under sections 365 and 1123(b)(2) of the Bankruptcy Code.  Except as may otherwise be agreed to by the parties, the Cure Amounts listed on the Initial Cure Notice shall be satisfied by the Debtors by making a Cash payment in the manner provided in Section 2.3 of the Plans or as otherwise permitted by section 365(b)(1)(B) of the Bankruptcy Code, equal to the amount specified in the Initial Cure Notice.  Any Person receiving a Supplemental Cure Notice that failed to object to the assumption of an Executory Contract or an Unexpired Lease, or that failed to object to the Cure Amount specified in the Supplemental Cure Notice, prior to May 2, 2016 at 4:00 p.m. (prevailing Eastern Time), unless otherwise extended, shall be forever barred from (i) objecting to the Supplemental Cure Notice and to the assumption of the Executory Contract or Unexpired Lease designated in the Supplemental Cure Notice, (ii) asserting any other, additional or different amount on account of

such obligation against the Debtors, the Reorganized Debtors, or the Estate assets, and

(iii) sharing in any other, additional or different distribution under the Plans on account of such

obligation, and the Debtors and the Reorganized Debtors shall be deemed to have satisfied each

element required for assumption under sections 365 and 1123(b)(2) of the Bankruptcy Code.

Except as may otherwise be agreed to by the parties, the Cure Amounts listed on the

Supplemental Cure Notice shall be satisfied by the Debtors by making a Cash payment in the

manner provided in Section 2.3 of the Plans or as otherwise permitted by section 365(b)(1)(B) of

the Bankruptcy Code, equal to the amount specified in the Supplemental Cure Notice.

35.   Docupace Order.  Notwithstanding anything in the Plans or the Bankruptcy Code

to the contrary, (x) nothing herein, the Plans or the Bankruptcy Code shall amend, modify, or

alter (i) that certain *Order (A) Approving Settlement of Claims With MPAP Holdings, LLC,*

*Regarding Docupace Technologies, LLC Pursuant to Federal Rule of Bankruptcy Procedure*

*9019, (B) Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Liens,*

*Claims, Encumbrances, and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b),*

*(f) and (m), (C) Approving the Assumption and Assignment of Related Executory Contract*

*Pursuant to Bankruptcy Code Section 365 and (D) Granting Related Relief* [Docket No. 589]

(the "**Docupace Order**") or (ii) any of the parties' rights or remedies under the Purchase

Agreement or with respect to the Interests (each as defined in the Docupace Order), (y) pursuant

to the Docupace Order, the Debtors will assume and assign the Interests to the Purchaser (as

defined in the Docupace Order) pursuant to the terms of the Purchase Agreement and the

Docupace Order and (z) the Bankruptcy Court shall retain jurisdiction over the Interests as set

forth in the Docupace Order and the Debtors shall retain their rights under the Bankruptcy Code,

including Bankruptcy Code section 365, with respect to the Interests should any party terminate the Purchase Agreement in accordance with its terms.

36.    Lazard Engagement.  The Reorganized Debtors shall be bound by and deemed parties to that certain Engagement Letter between the Debtors and Lazard Freres & Co. LLC ("**Lazard**"), dated as of November 15, 2015, as approved and modified by those certain orders approving Lazard's retention by the Debtors dated February 23, 2016 [Docket No. 191] and April 18, 2016 [Docket No. 594] (the "**Lazard Retention Orders**"), including, without limitation, with respect to any Minority Asset Sale (as defined in the Lazard Retention Orders) that may be consummated after the Effective Date.

37.    Assumption of Certain Employment Agreements.  To the extent that the Debtors assume, or assume and assign, in accordance with the Plans and this Confirmation Order any agreement between the Debtors and an employee (each, an "**Assumed Employment Agreement**") and such Assumed Employment Agreement awards or grants any Equity Interests in the Debtors, such Equity Interests shall be cancelled by the Plans.  For the avoidance of doubt (a) upon the Effective Date, such Equity Interests awarded or granted pursuant to any Assumed Employment Agreement and the applicable employee's rights thereto shall be extinguished, and (b) such extinguishment shall not constitute a default or other violation of the Assumed Employment Agreement.

38.    Bar Date for Rejection Claims of RCS; Turnover of Excess Security.

(a)    Claims arising out of the rejection of an Executory Contract or Unexpired Lease pursuant to the RCS Plan must be filed with the Bankruptcy Court and served upon the Reorganized Debtors no later than thirty (30) days after the effective date of such rejection (which, (a) for Executory Contracts and Unexpired Leases listed on the Schedule of Rejected

Executory Contracts and Unexpired Leases, shall be the Effective Date, and (b) for all other

Executory Contracts and Unexpired Leases rejected pursuant to Section 8 of the RCS Plan, shall

be (i) the date on which the Debtors reject the applicable Executory Contract or Unexpired Lease

as provided in Section 8.1 or Section 8.2(c) of the RCS Plan, or (ii) pursuant to an order of the

Bankruptcy Court).

      (b)     All Claims arising from the rejection by any RCS Debtor of any Executory

Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code may be objected to

in accordance with the provisions of Section 7.2 of the RCS Plan and the applicable provisions

of the Bankruptcy Code and Bankruptcy Rules.  Unless otherwise ordered by the Bankruptcy

Court, all such Claims not filed within such time shall not be entitled to a Distribution.

      (c)     The RCS Debtors reserve all rights to seek accounting and return of any

security for any of the RCS Debtors' obligations under rejected Executory Contracts or

Unexpired Leases.

      39.     <u>Contracts and Leases Entered Into After the Cetera Petition Date Under the Cetera</u>

<u>Prepackaged Plan</u>.  Contracts and leases entered into after the Cetera Petition Date by a Cetera

Debtor will be performed by such Cetera Debtor or Reorganized Debtor in the ordinary course of

its business.  Accordingly, such contracts and leases will survive and remain unaffected by entry

of this Confirmation Order.

      40.     <u>Restrictions on Assignment Void</u>.  Any Executory Contract or Unexpired Lease

assumed or assumed and assigned shall remain in full force and effect to the benefit of the

transferee or assignee in accordance with its terms, notwithstanding any provision in such

Executory Contract or Unexpired Lease (including those of the type described in sections

365(b)(2) and 541(c)(1)of the Bankruptcy Code) that prohibits, restricts, or conditions such

transfer or assignment, including based on any change of control provision. Any provision that prohibits, restricts, or conditions the assignment or transfer of any such Executory Contract or Unexpired Lease, terminates or modifies such Executory Contract or Unexpired Lease or allows the counterparty to such Executory Contract or Unexpired Lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition thereof on any such transfer or assignment (including on account of any change of control provision), constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

41.    Workers' Compensation Programs. All applicable workers' compensation laws in states in which the Reorganized Debtors operate and the Debtors' written contracts, agreements, agreements of indemnity, self-insurer workers' compensation bonds and any other policies, programs and plans regarding or relating to workers' compensation and workers' compensation insurance are treated as Executory Contracts under the Plans and on the Effective Date will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, with a cure amount of zero dollars.

42.    Return of Adequate Assurance Deposit. Upon the Effective Date, the Cetera Debtors may release all funds in the adequate assurance deposit account established by the Cetera Debtors pursuant to the *Final Order, Pursuant to Sections 105(a) and 366 of the Bankruptcy Code, (I) Prohibiting Utility Companies from Altering, Refusing or Discontinuing Utility Services, (II) Deeming Utility Companies Adequately Assured of Future Payment and (III) Establishing Procedures for Determining Additional Adequate Assurance of Payment* [Docket No. 584] (the "**Utilities Order**") into any other account(s) of the Cetera Debtors, to be used, applied or invested in the ordinary course of business. Any funds held by a third party as

an adequate assurance deposits pursuant to the Utilities Order shall be returned to the Cetera

Debtors on or prior to the Effective Date.

    43.    <u>Vesting of Assets</u>.

    a.    *The RCS Plan.*  Except as otherwise provided in the RCS Plan, on the

Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, (i) all property of

the RCS Debtors' Estates (including, all Retained Causes of Action which may be asserted by or

on behalf of the RCS Debtors but excluding the Creditor Trust Assets to be transferred to the

Creditor Trust and any right to proceeds thereof with respect to any Creditor Trust Asset subject

to transfer restrictions) shall be vested in the Reorganized Debtors and (ii) all Creditor Trust

Assets (other than any Creditor Trust Asset subject to a transfer restriction described in

paragraph 20, in which event (x) the right to the transfer thereof if and when such transfer

restrictions are removed and (y) the right to the proceeds thereof) shall be vested in the Creditor

Trust, in each case free and clear of all Claims, liens, encumbrances, charges, and other interests,

other than Unimpaired and Other Secured Claims with respect to property vested in the

Reorganized Debtors pursuant to this paragraph.  After the Effective Date, the Reorganized

Debtors and the Creditor Trust shall not have any liability to holders of Claims or Interests other

than as expressly provided for in the RCS Plan.  As of the Effective Date, each of the

Reorganized Debtors shall be deemed to have incurred the Exit Facility Obligations and the New

Second Lien Facility Obligations pursuant to the Exit Credit Agreement and the New Second

Lien Credit Agreement, respectively.  As of the Effective Date, the Reorganized Debtors may

operate their businesses and may use, acquire, and dispose of property free of any restrictions of

the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending

cases under any chapter or provision of the Bankruptcy Code, except as provided in the RCS Plan.

   b. *The Cetera Prepackaged Plan.*  Except as otherwise provided in the Cetera Prepackaged Plan, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, (i) all property of the Debtors' Estates (including, all Retained Causes of Action which may be asserted by or on behalf of the Cetera Debtors but excluding the Litigation Assets contributed to the Creditor Trust pursuant to Section 5.1(a)(1) of the Cetera Prepackaged Plan) shall be vested in the Reorganized Debtors and (ii) all Litigation Assets transferred by the Cetera Debtors pursuant to Section 5.1(a)(1) of the Cetera Prepackaged Plan shall be vested in the Creditor Trust, in each case free and clear of all Claims, liens, encumbrances, charges, and other interests other than Unimpaired and Other Secured Claims with respect to property vested in the Reorganized Debtors pursuant to this paragraph.  As of the Effective Date, (a) 100% of the Interests in Reorganized Chargers Acquisition, LLC, Reorganized First Allied Holdings Inc., and Reorganized VSR Group, LLC shall vest in Reorganized RCS Capital Holdings, LLC and (b) 100% of the Interests in Reorganized Summit Financial Services Group, Inc., Reorganized Investors Capital Holdings, LLC and Reorganized Cetera Financial Holdings shall vest in Reorganized Holdings and the Reorganized Holdings Equity Interests shall be distributed to First Lien Lenders, Second Lien Lenders, Exit Facility Lenders and Backstop Parties in accordance with the RCS Plan.  After the Effective Date, the Reorganized Debtors shall not have any liability to holders of Claims or Interests other than as expressly provided for in the Cetera Prepackaged Plan.  As of the Effective Date, each of the Reorganized Debtors shall be deemed to have incurred the Exit Facility Obligations and the New Second Lien Facility Obligations pursuant to the Exit Credit Agreement and the New Second Lien Credit Agreement, respectively.

As of the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided in the Cetera Prepackaged Plan.

44.    Settlement of Certain Intercreditor Issues.  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, Distribution and other benefits provided under the Plans, the provisions of the Plans shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plans, including, without limitation, all Claims arising prior to the Petition Dates, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against any Released Party, arising out of, relating to or in connection with the business or affairs of or transactions with the Debtors, subject to Section 10.6 of the Plans.  The entry of this Confirmation Order constitutes the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plans, and the compromises and settlements are in the best interests of the Debtors, the Estates, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.  The provisions of the Plans, including, without limitation, each of the Plans' release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

45.    Discharge of Claims Against the Debtors and Termination of Interests.

(a)    Except as otherwise provided in the Plans or this Confirmation Order, upon the Effective Date and in consideration of the rights afforded herein and the payments and Distributions to be made hereunder, each holder (as well as any trustees and agents on behalf of each holder) of a Claim against the Debtors (a "**Discharged Claim**") or an Interest in the

Debtors (a "**Discharged Interest**") shall be deemed to have such Discharged Claim or

Discharged Interest forever discharged.  On the Effective Date, all holders of Discharged Claims

and Discharged Interests shall be forever precluded and enjoined, pursuant to section 524 of the

Bankruptcy Code, from prosecuting or asserting any Discharged Claim or Discharged Interest

against the Debtors, their Estates, the Reorganized Debtors, the Creditor Trust, the Creditor Trust

Administrator, the Creditor Trust Board, or any of their assets or properties based on any act or

omission, transaction, or other activity of any kind or nature that occurred prior to the Effective

Date, whether or not such holder has filed a proof of Claim or proof of Interest.

(b)  Notwithstanding anything contained herein or in the Plans, the Debtors are

not entitled to a discharge of claims subject to 1141(d)(6) (the "**Non-Discharged Claims**").

Nothing in this Confirmation Order, the Plans or the Definitive Documents shall discharge,

release, enjoin or affect the Non-Discharged Claims.

(c)  Except as otherwise provided in the Plans or in this Confirmation Order, all

Persons who have held, now hold or may hold Discharged Claims against any of the Debtors or

Discharged Interests in any of the Debtors, and any other parties that may purport to assert such

Discharged Claims or Discharged Interests by, through, for or because of such Persons, along

with their respective present and former Representatives, are permanently enjoined, from and

after the Effective Date, from: (a) commencing or continuing in any manner any action or other

proceeding of any kind with respect to such Discharged Claim or Discharged Interest against the

Debtors, their Estates, the Reorganized Debtors, the Creditor Trust, the Creditor Trust

Administrator, or the Creditor Trust Board; (b) the enforcement, attachment, collection or

recovery by any manner or means of any judgment, award, decree or order against the Debtors,

their Estates, the Reorganized Debtors, the Creditor Trust, the Creditor Trust Administrator, or

the Creditor Trust Board with respect to such Discharged Claim or Discharged Interest; or

(c) creating, perfecting or enforcing any encumbrance of any kind against the Debtors, their

Estates, the Reorganized Debtors, the Creditor Trust, the Creditor Trust Administrator, or the

Creditor Trust Board, or against the property or interests in property of the Debtors, their Estates,

the Reorganized Debtors, the Creditor Trust, the Creditor Trust Administrator, or the Creditor

Trust Board with respect to such Discharged Claim or Discharged Interest; provided, however,

that the foregoing provisions shall have no effect on the liability of the Creditor Trust, the

Creditor Trust Administrator, or the Creditor Trust Board that would otherwise result from any

such act or omission of the Creditor Trust, the Creditor Trust Administrator, or the Creditor Trust

Board to the extent that such act or omission is determined in a Final Order to have constituted

gross negligence, fraud, theft or willful misconduct.  Such injunction shall extend to any

successors of the Debtors, their Estates, the Reorganized Debtors, the Creditor Trust, the

Creditor Trust Administrator, the Creditor Trust Board and their respective properties and

interest in properties.

     46.     Term of Injunctions or Stays.  Unless otherwise provided, all injunctions or stays

arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy

Code, or otherwise, and in existence on the date hereof, shall remain in full force and effect with

respect to the Debtors, until the Effective Date.

     47.     Injunction against Interference with the Plans.  Upon the entry of this

Confirmation Order, all holders of Claims and Interests and other parties in interest, along with

their respective present or former employees, agents, officers, directors, or principals, shall be

enjoined from taking any actions to interfere with the implementation or consummation of the

Plans.

01:18705316.1

48.    <u>Releases</u>.

(a)    Except as otherwise provided in the Plans or this Confirmation Order, and without limiting any other applicable provisions of, or releases contained in, the Plans, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, for good and valuable consideration, including the Distributions to be made hereunder, the Debtors and the Reorganized Debtors, on behalf of themselves and the Estates, and any and all entities acting on behalf of the Debtors, the Reorganized Debtors or the Estates shall forever release, waive and discharge all Causes of Action that they have, or had against any Debtor Released Party (the "**Company Released Causes of Action**") except with respect to any obligations arising under the Plans, the Definitive Documents that by their terms survive the Effective Date, and any applicable orders of the Bankruptcy Court or other court of competent jurisdiction in the Chapter 11 Cases; <u>provided</u>, <u>however</u>, that the foregoing provisions shall have no effect on the liability of any entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted fraud, theft or willful misconduct.

(b)    Except as otherwise provided in the Plans or this Confirmation Order, as of the Effective Date, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plans and the Cash, contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plans, each holder of a Claim (solely in its capacity as such) (i) that has voted to accept the Plans, or (ii) that has voted to reject the Plans but has not checked the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plans, (provided that the each of the parties to the RSA are and shall be deemed to elect to grant the releases provided in the Plans if the RSA has not terminated in

accordance with its terms), will be deemed to forever release, waive and discharge all Causes of Action in any way relating to a Debtor, the Chapter 11 Cases, the Estates, the Plans, the exhibits to the Plans, the Plan Supplement, the RCS Disclosure Statement, the RCS Disclosure Statement Supplement, the Cetera Disclosure Statement, the RSA and the Term Sheets, the First Lien Facility, the Second Lien Facility or the Convertible Notes Indenture that such Person has, had or may have against any Released Party or their representatives or any employees, agents or partners of the Debtors (which release will be in addition to the discharge of Claims provided in the Plans and under this Confirmation Order and the Bankruptcy Code), except with respect to any obligations arising under the Plans, the Exit Credit Documents, the New Second Lien Credit Documents, or any of the Definitive Documents that by their terms survive the Effective Date, or any act, event, injury, omission, transaction, or agreement arising after the Effective Date (other than Causes of Action relating to such act, event, injury, omission, transaction or agreement first arising or occurring prior to the Effective Date); provided, however, that the foregoing provisions will have no effect on the liability of any entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted fraud, theft or willful misconduct.  For the avoidance of doubt, with respect to the RCS Plan, the foregoing release shall not release or enjoin the claims and causes of action asserted, or that could be asserted, against any non-Debtor in the Securities Litigation.

(c)    Entry of this Confirmation Order constitutes the Bankruptcy Court's approval, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, of the releases in Sections 10.6(a) and (b) of the Plans, which includes, by reference, each of the related provisions and definitions contained in the Plans and, further, constitutes the Bankruptcy Court's finding that such releases are (i) in exchange for the good and valuable consideration provided

by the Debtors and the other applicable Released Parties, representing a good faith settlement and compromise of the Claims released in the Plans, (ii) in the best interests of the Debtors and all holders of Claims, (iii) fair, equitable, and reasonable, (iv) approved after due notice and opportunity for hearing, and (v) a bar to any of the releasing parties asserting any Claim released by the releasing parties against any of the Debtors or the other applicable Released Parties or their respective property.

(d)    Each Person to which Sections 10.6(a) and/or (b) of the Plans apply shall be deemed to have granted the releases set forth in those Sections notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of execution of the release.

(e)    Without limiting the foregoing, all releases set forth in the Plans are approved in their entirety, and such releases shall be effective on the Effective Date.

49.    Exculpation.  From and after the Effective Date, the Exculpated Parties will neither have nor incur any liability to any entity, and no holder of a Claim or Interest, no other party in interest and none of their respective Representatives, shall have any right of action against any Exculpated Party, for any act taken or omitted to be taken in connection with, related to or arising out of the Chapter 11 Cases or the consideration, formulation, preparation, dissemination, implementation, confirmation or consummation of the Plans, the exhibits to the Plans, the Plan Supplement, the RCS Disclosure Statement, the RCS Disclosure Statement

01:18705316.1

Supplement, the Cetera Disclosure Statement, any transaction proposed in connection with the

Chapter 11 Cases or any contract, instrument, release, or other agreement or document created or

entered into or any other act taken or omitted to be taken, in connection therewith; provided,

however, that the foregoing provisions will have no effect on: (a) the liability of any entity that

would otherwise result from the failure to perform or pay any obligation or liability under the

Plans or any contract, instrument, release or other agreement or document to be entered into or

delivered in connection with the Plans or (b) the liability of any entity that would otherwise

result from any such act or omission to the extent that such act or omission is determined in a

Final Order to have constituted fraud, gross negligence or willful misconduct.

     50.    <u>Injunction Related to Releases and Exculpation</u>.

     a.    Except as otherwise expressly provided in the Plans or this Confirmation

Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all

Persons who have held, hold or may hold Discharged Claims or Discharged Interests are, with

respect to any such Discharged Claims or Discharged Interests, permanently enjoined after the

Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or

indirectly, any suit, action or other proceeding of any kind (including, without limitation, any

proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors,

the Reorganized Debtors, the Creditor Trust Administrator, the Creditor Trust, the Creditor Trust

Board, the Creditor Trust Assets, the Debtors' Estates or any of their property, or any direct or

indirect transferee of any property of, or direct or indirect successor in interest to, any of the

foregoing Persons or any property of any such transferee or successor; (ii) enforcing, levying,

attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise

recovering by any manner or means, whether directly or indirectly, any judgment, award, decree

or order against the Debtors, the Reorganized Debtors, the Creditor Trust Administrator, the

Creditor Trust, the Creditor Trust Board, the Creditor Trust Assets, or the Debtors' Estates or any

of their property, or any direct or indirect transferee of any property of, or direct or indirect

successor in interest to, any of the foregoing Persons, or any property of any such transferee or

successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly,

any encumbrance of any kind against the Debtors, the Reorganized Debtors, the Creditor Trust

Administrator, the Creditor Trust, the Creditor Trust Board, the Creditor Trust Assets, or the

Debtors' Estates or any of their property, or any direct or indirect transferee of any property of,

or successor in interest to, any of the foregoing Persons; (iv) acting or proceeding in any manner,

in any place whatsoever, that does not conform to or comply with the provisions of the Plans to

the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or

in any place, any action that does not comply with or is inconsistent with the provisions of the

Plans; provided, however, that the foregoing provisions shall have no effect on the liability of the

Creditor Trust, the Creditor Trust Administrator, or the Creditor Trust Board that would

otherwise result from any such act or omission of the Creditor Trust, the Creditor Trust

Administrator, or the Creditor Trust Board to the extent that such act or omission is determined

in a Final Order to have constituted gross negligence, fraud, theft or willful misconduct provided

further, however, that nothing contained in the Plans shall preclude such Persons from exercising

their rights, or obtaining benefits, pursuant to and consistent with the terms of the Plans.  For the

avoidance of doubt and except as otherwise set forth in the Plans, this Confirmation Order

permanently enjoins the commencement or prosecution by any Person, whether directly,

derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts,

rights, Causes of Action or liabilities discharged pursuant to Section 10.3, released pursuant to Section 10.6, or exculpated pursuant to Section 10.7 of the Plans.

      b.    <u>Limitation on Injunction Related to Releases and Exculpation Specific to the RCS Plan</u>. Nothing in the RCS Plan, this Confirmation Order or in any Plan Document shall (a) enjoin or otherwise impact the continued prosecution of the claims and causes of action asserted or that could be asserted against any non-Debtor in the Securities Litigation, including but not limited to entering into or enforcing any settlement or judgment obtained in connection with or relating to the Securities Litigation involving any relevant insurance policy or coverage or any proceeds thereof; (b) preclude the plaintiffs or lead plaintiffs in the Securities Litigation from conducting discovery of the Reorganized Debtors, including seeking production of documents from the Reorganized Debtors through a third-party subpoena with respect to any documents in the possession, custody, or control of the Reorganized Debtors or their agents; or (c) preclude the plaintiffs, lead plaintiffs, and/or the putative classes in the Securities Litigation from prosecuting their Securities Litigation Claims through settlement or final judgment in the courts where such Securities Litigation is pending (including any appeals therefrom) and seeking and/or obtaining recovery from the Debtors (including pursuant to any insurance coverage available to the Debtors) on account thereof, solely to the extent of available insurance coverage and any proceeds thereof, it being understood that the plan discharge and injunction provisions set forth in any confirmed Chapter 11 plan for the RCS Debtors shall not apply to the prosecution or settlement of such Securities Litigation Claims as set forth in the RCS Plan. Nothing in the RCS Plan shall alter the Bankruptcy Court's reservation of jurisdiction pursuant to Section 12.1 of the RCS Plan. For the avoidance of doubt, any recoveries on account of such Securities Litigation Claims against the RCS Debtors shall be limited to, and any payments or

settlements shall only be provided by available insurance coverage, if any, and no action shall be taken to collect any portion of any settlement, judgment, or other costs from the assets or properties of the RCS Debtors or the Reorganized Debtors.

51.    <u>Setoff</u>.

a.    *The RCS Plan*.  Except as otherwise provided for in the RCS Plan or this Confirmation Order, in no event shall any holder of a Claim be entitled to setoff any Claim against any claim, right, or Cause of Action of the Debtors, the Reorganized Debtors, or the Creditor Trust, as applicable, unless such holder obtains an order from the Bankruptcy Court authorizing such setoff notwithstanding any indication in any proof of claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

b.    *The Cetera Prepackaged Plan*.  Notwithstanding anything in the Cetera Prepackaged Plan, nothing in the Cetera Prepackaged Plan, the Definitive Documents, or this Confirmation Order shall affect creditors' setoff and recoupment rights under applicable nonbankruptcy law, subject to sections 365(c), 365(e), 502(b)(4), 502(b)(6), 502(b)(7) and 541(c) of the Bankruptcy Code.

52.    <u>Exemption from Certain Transfer Taxes</u>.  Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange (or deemed issuance, transfer or exchange) of a security, including the issuance of the Reorganized Holdings Equity Interests and the New Warrants (under the RCS Plan), (b) the creation of any mortgage, deed of trust, Lien, pledge or other security interest, including pursuant to the Exit Facility or the New Second Lien Facility, (c) the making or assignment of any lease or sublease, (d) the assignment and transfer of the Creditor Trust Asset to the Creditor Trust as provided in

the Plans, (e) the making or delivery of any deed or other instrument of transfer under, in

furtherance of, or in connection with the Plans (including, without limitation, any merger

agreements, agreements of consolidation, restructuring, disposition, liquidation, dissolution,

deeds, bills of sale and transfers of tangible property), including the restructuring transactions

contemplated by the Plans, will not be subject to any stamp tax, recording tax, personal property

tax, real estate transfer tax, sales tax, use tax, transaction privilege tax, privilege taxes, or other

similar taxes, and the appropriate state or local government officials or agents shall, and shall be

directed to, forgo the collection of any such tax, recordation fee or government assessment and to

accept for filing and recordation any of the foregoing instruments or other documents without the

payment of any such tax, recordation fee or government assessment.  Unless the Bankruptcy

Court orders otherwise, all sales, transfers and assignments (including, without limitation, any

transfers or assignments for collateral purposes) of owned and leased property approved by the

Bankruptcy Court on or prior to the Effective Date shall be deemed to have been in furtherance

of or in connection with the Plans.

53.     Transfers by Debtors.  Any and all transfers of property of the Debtors' estates

pursuant to the Plans shall be free and clear of all liens, charges, Claims, encumbrances, and

interests, other than Unimpaired Claims and Other Secured Claims with respect to property

vested in the Reorganized Debtors pursuant to paragraph 43 herein, except as expressly provided

in the Plans, the Definitive Documents, and/or this Confirmation Order.

54.     Creditor Trust Investigation of Purchaser Causes of Action.  Notwithstanding

anything to the contrary in the RCS Plan or this Confirmation Order, the Creditor Trust shall

retain the right, in its sole discretion, to: (a) investigate the Causes of Action with the reasonable

cooperation of the Reorganized Debtors, in accordance with Section 5.17(l) of the RCS Plan

01:18705316.1

(including, without limitation, any Avoidance Actions) against or that may be brought against each of the purchasers (collectively, the "**Purchasers**") of (i) StratCap Holdings, LLC and its direct and indirect subsidiaries, (ii) SK Research LLC's assets, and (iii) Hatteras Funds, LLC (collectively, the "**Purchaser Causes of Action**"); and (b) file a notice on the docket of the Bankruptcy Court requesting that some or all of the Purchaser Causes of Action (which, under the RCS Plan, are Retained Causes of Action that will vest in the Reorganized Debtors subject to the terms and conditions of this paragraph 55 be deemed Litigation Assets and transferred to the Creditor Trust to be pursued solely (if at all) by the Creditor Trust (such notice, the "**Purchaser Election Notice**"). The Creditor Trust shall file any Purchaser Election Notice no later than the date that is ninety (90) days after the Effective Date, or such other later date as may be agreed to by the Creditor Trust and the Reorganized Debtors or established pursuant to an order of the Bankruptcy Court (such date, the "**Election Deadline**"). If a Purchaser Election Notice is filed with the Bankruptcy Court on or before the Election Deadline, the Reorganized Debtors shall have ten (10) Business Days to object to such Purchaser Election Notice (an "**Election Objection**"). If the Debtors or Reorganized Debtors do not file a timely Election Objection, the Reorganized Debtors shall be deemed to consent to any and all relief requested in such Purchaser Election Notice and the Purchaser Causes of Action described in the Purchaser Election Notice shall automatically vest in the Creditor Trust without further order of the Bankruptcy Court. The Bankruptcy Court shall retain jurisdiction to adjudicate any Election Objection or other dispute concerning a Purchaser Election Notice or failure of the Reorganized Debtors to reasonably cooperate with the Creditor Trust's investigation of the Purchaser Causes of Action in accordance with Section 5.17(l) of the RCS Plan. Notwithstanding the foregoing, the Reorganized Debtors shall be deemed to have transferred the applicable Purchaser Causes of

Action against a Purchaser to the Creditor Trust and such Purchaser Causes of Action shall be deemed Litigation Assets without further order of the Bankruptcy Court if, prior to the Election Deadline, such Purchaser fails to fully execute and return to the Creditor Trust an agreement providing that such Purchaser shall reasonably cooperate with the Creditor Trust as reasonably requested regarding the Litigation Assets, including by providing information, documentation, access to employees for interviews and testimony and/or other evidence. Such cooperation will be without charge to the Creditor Trust, except that the Creditor Trust shall reimburse the Purchaser for its reasonable and documented out-of-pocket expenses. Any Purchaser Causes of Action transferred to the Creditor Trust in accordance with this paragraph 54 shall not be subject to any claim, defense, restriction or limitation arising from or related to such Purchaser Causes of Action having previously constituted a Retained Cause of Action vested in the Reorganized Debtors, including, without limitation, the limitation imposed on the Reorganized Debtors pursuant to Section 7.5(c) of the RCS Plan.

55.    <u>Issuance of New Securities under the RCS Plan</u>.  The issuance under the RCS Plan of (i) the Reorganized Holdings Equity Interests to the holders of Allowed First Lien Claims, Allowed Second Lien Claims, the Backstop Parties, and the parties entitled to receive the Exit Base Discount and Exit Backstop Discount and (ii) the New Warrants to the Creditor Trust and the subsequent distribution of the New Warrants from the Creditor Trust to the holders of Series A-1 Units, if the Creditor Trust Administrator at the direction of the Creditor Trust Board determines to make such distribution, and any subsequent sales, resales, transfers or other Distributions of such Reorganized Holdings Equity Interests or New Warrants (including Reorganized Holdings Equity Interests issuable upon exercise of any New Warrants) shall be exempt from any federal or state securities law registration requirements (and all rules and

regulations promulgated thereunder) to the fullest extent permitted by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law.

56.    <u>Plan-Related Documents</u>.  Upon the Effective Date, all documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plans, and any other agreements or documents related to or entered into in connection with same, shall become, and shall remain, effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by such applicable agreement).

57.    <u>Other Exemptions Under the RCS Plan</u>.  The issuance under the RCS Plan of (i) the Reorganized Holdings Equity Interests to the holders of Allowed First Lien Claims, Allowed Second Lien Claims, the Backstop Parties, and the parties entitled to receive the Exit Base Discount and (ii) the New Warrants shall be exempt from the requirements of section 16(b) of the Securities and Exchange Act of 1934 (pursuant to Rule 16b-3 promulgated thereunder) with respect to any acquisition of such securities by an officer or director (or a director deputized for purposes thereof) as of the Effective Date.

58.    <u>SEC Enforcement Under the Plans</u>.  Notwithstanding anything to the contrary contained in the RCS Disclosure Statement, the RCS Disclosure Statement Supplement, the Cetera Disclosure Statement, the Plans or this Confirmation Order, no provision shall preclude the U.S. Securities and Exchange Commission from enforcing its police or regulatory powers; and provided further, notwithstanding any language to the contrary contained in the RCS Disclosure Statement, RCS Disclosure Statement Supplement, the RCS Plan or this

Confirmation Order, no provision shall release any non-Debtor from liability in connection with any legal action or claim brought by the U.S. Securities and Exchange Commission or enjoin the U.S. Securities and Exchange Commission from bringing any action against a non-Debtor.

59.    Internal Revenue Service. Notwithstanding any provision to the contrary in the Plans, this Confirmation Order, and any implementing Plan Documents, nothing shall: (1) affect the ability of the Internal Revenue Service ("**IRS**") to pursue any non-debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors or the Debtors' Estates; (2) affect the rights of the United States to assert setoff and recoupment and such rights are expressly preserved; (3) discharge any claim of the IRS described in section 1141(d)(6) of the Bankruptcy Code; (4) be deemed to disallow any IRS non-pecuniary loss penalty claim, such penalty claim shall be paid as a general unsecured claim to the extent it is an allowed claim, and nothing shall compromise the ability of the IRS to assess or collect such penalties from the Reorganized Debtors or their respective property to the extent otherwise allowed by applicable bankruptcy and non-bankruptcy law; (5) expand the scope of section 505 of the Bankruptcy Code; (6) require the IRS to file an administrative claim in order to receive payment for any liability described in sections 503(b)(1)(B) and (C) of the Bankruptcy Code; or (7) preclude the IRS from amending, in accordance with applicable bankruptcy law, any pre-petition or post-petition claim even if the IRS has not obtained prior Bankruptcy Court approval or the authorization of the Creditor Trust Administrator for such amendment. To the extent the IRS Priority Tax Claims (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code), if any, are not paid in full in cash on the Effective Date, the IRS Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate and method set forth in 26 U.S.C. Sections 6621 and 6622. IRS administrative expense claims

allowed pursuant to the Plan or section 503 of the Bankruptcy Code shall accrue interest and penalties as provided by non-bankruptcy law until paid in full.  Moreover, nothing in this Confirmation Order or the Plan Documents shall: (a) be construed as a compromise or settlement of any IRS claim or interest; (b) effect a release, discharge or otherwise preclude any claim whatsoever against any Debtor by or on behalf of the IRS for any liability arising out of pre-petition or post-petition tax periods for which a required return has not been filed  or as a result of any pending audit or audit that may be performed with respect to any pre-petition or post-petition tax return; and (c) nothing shall enjoin the IRS from amending, in accordance with applicable bankruptcy law, any claim against any Debtor with respect to any tax liability arising out of pre-petition or post-petition tax periods for which a required tax return has not been filed or from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax return.  Further, any liability arising out of pre-petition or post-petition tax periods for which a required return has not been filed or as a result of a pending audit or audit that may be performed with respect to any pre-petition tax or post-petition tax return shall be paid in accordance with the Plans.

60.    Access to Insurance Coverage.

(a)  Except as otherwise provided by applicable nonbankruptcy law , no Distributions under the Plans shall be made on account of an  Impaired Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Impaired Claim has exhausted all remedies with respect to such insurance policy.

(b) Notwithstanding anything to the contrary in the Plans: (x) any recoveries against any of the Debtors on account of Securities Litigation Claims shall be limited solely to the proceeds of the RCS Debtors' insurance policies, except as provided in Section 5.17(s) of the

RCS Plan; and (y) subject to paragraph 60(a) herein, any parties claiming an entitlement to proceeds of, or coverage under the RCS Debtors' insurance policies are authorized to liquidate and enforce any rights, judgments or settlements in connection with any such available insurance coverage.

(c) The *Order Allowing for the Advancement and Payment of Defense Costs Under Insurance Policies* [Docket No. 517] and the *Order Allowing for the Advancement and Payment of Defense Costs Under Insurance Policies* [Docket No. 699], shall remain in full force and effect and shall not be subject to the injunction contained in Section 10.8 of the RCS Plan.

61.    Spinello Action.    Notwithstanding any provisions to the contrary, and for the avoidance of doubt, nothing in the Cetera Prepackaged Plan or this Confirmation Order, or any amendments thereto, shall: (i) discharge, release, exculpate or enjoin any claims which could have been asserted, are currently asserted or which may hereafter be asserted by Mark Spinello ("**Spinello**") against any Cetera Debtor or Cetera Reorganized Debtor including, but not limited to, Legend Group Holdings, LLC and First Allied Holdings Inc. and any of such Cetera Debtors or Reorganized Debtors, and any of their respective current or former officers, directors, or employees including, but not limited to, Enrique Vasquez, or Adam Antoniades (collectively, the "**Spinello Defendants**") in that certain action, including any appeals thereof, filed by Spinello in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "**Spinello Action**"); (ii) alter or impair the settlement or the enforcement of any judgment in the Spinello Action with or against any of the Spinello Defendants with respect to any applicable insurance coverage and proceeds thereof or with or from any of the Spinello Defendants; (iii) alter any legal or equitable rights or defenses of Spinello, the Spinello Defendants or the Cetera Debtors with respect to the Spinello Action, or be construed as an admission as to the

existence of any fact or the validity of any rights or claims with respect to the Spinello Action; or (iv) alter any otherwise applicable obligation by the Spinello Defendants to maintain or produce records or documents in connection with the Spinello Action.  Any stay or injunction imposed by the commencement of the Cetera Debtors' Chapter 11 Cases, the Cetera Prepackaged Plan or this Confirmation Order is vacated as of the Effective Date, and Spinello may proceed to prosecute and litigate the Spinello Action.

62.    <u>655 WB Operating LLC</u>.  Notwithstanding any provisions to the contrary in the Cetera Prepackaged Plan or this Confirmation Order, or any amendments to either of the foregoing:  (i) the applicable Cetera Debtors' lease agreement with 655 WB Operating LLC ("**655 WB**") concerning the premises located at 655 West Broadway, San Diego, California (as amended, modified or supplemented from time to time, the "**655 WB Lease**") shall be treated as an Unexpired Lease under the Cetera Prepackaged Plan and this Confirmation Order, and any amendments to either of the foregoing, and on the Effective Date of the Cetera Prepackaged Plan, 655 WB Lease shall be assumed by the applicable Cetera Debtors pursuant to section 365(a) of the Bankruptcy Code and this Confirmation Order, with any Cure Claim to be paid by the applicable Reorganized Cetera Debtors in the ordinary course of business, and all rights of 655 WB, the Cetera Debtors, the Reorganized Cetera Debtors and other parties in interest with respect to any such Cure Claim are reserved; (ii) nothing in the Cetera Prepackaged Plan or this Confirmation Order, or any amendments to either of the foregoing, shall discharge, release, exculpate or enjoin any rights, claims or causes of 655 WB related to the 655 WB Lease or that certain Irrevocable Letter of Credit issued by Barclays dated October 2, 2015 (the "**655 WB LOC**"); (iii) the 655 WB Lease and the 655 WB LOC shall not be deemed to be modified, amended or in any way impaired by the Cetera Prepackaged Plan or this Confirmation Order, or

any amendments to either of the foregoing; and (iv) neither the Cetera Prepackaged Plan, nor this Confirmation Order, nor any amendments to either of the foregoing, shall impair, modify, prejudice, waive or otherwise affect any rights, defenses or obligations of 655 WB, the Cetera Debtors, the Reorganized Cetera Debtors, Barclays or any other party in interest with respect to the 655 WB Lease and the 655 WB LOC.

63.     _Brian Nygaard_.  Unless otherwise agreed to by the Debtors or the Reorganized Debtors, as applicable, and Brian Nygaard ("**Nygaard**"), notwithstanding anything to the contrary in the Cetera Prepackaged Plan or this Confirmation Order, (i) without waiver of any parties' jurisdictional arguments, the treatment of the agreements (the "**Nygaard Agreements**") between Cetera Financial Group, Inc. and Nygaard identified in that certain _Notice of Filing of Rejection Schedule for Cetera Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code_ [Docket No. 629] under the Bankruptcy Code, the Cetera Prepackaged Plan and this Confirmation Order shall remain subject to further order of the Bankruptcy Court or other applicable forum, and (ii) all rights, claims and interests of the Debtors, the Reorganized Debtors, Nygaard and other parties in interest (to the extent they have any rights, claims or interests) with respect to all matters arising from or related to the Nygaard Agreements shall be reserved, and nothing in the Cetera Prepackaged Plan or this Confirmation Order shall impair, modify, prejudice, waive or otherwise affect any such rights, claims or interests.

64.     _Severability_.  Each term and provision of the Plans, as it may have been altered or interpreted in accordance with Section 11.4 of the Plans, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plans and may not be deleted or modified without the reasonable consent of the Debtors, the First Lien Agent, the Second Lien Agent the Required Consenting

01:18705316.1

Lenders, and Luxor, each as provided in the RSA, and, solely with respect to the RCS Plan, to

the extent affecting Distributions to holders of General Unsecured Claims, the Committee; and

(3) nonseverable and mutually dependent.

65.    Retention of Jurisdiction.  On and after the Effective Date, to the extent

permissible under applicable law, the Bankruptcy Court shall retain jurisdiction over the

Chapter 11 Cases and all matters arising in, arising under, and related to the Chapter 11 Cases

and the Plans for the purposes set forth in Section 12.1 of the Plans.  If the Bankruptcy Court

abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction

over any matter arising in, arising under, or related to the Chapter 11 Cases, then Section 12.1 of

the Plans shall have no effect upon and shall not control, prohibit, or limit the exercise of

jurisdiction by any other court having jurisdiction with respect to such matter.

66.    Immediate Binding Effect of Plans.  Notwithstanding Bankruptcy Rules 3020(e),

6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plans,

the Plan Supplement and this Confirmation Order shall be immediately effective and enforceable

and deemed binding upon the Debtors and any and all holders of Claims or Interests (regardless

of whether such Claims or Interests are deemed to have accepted or rejected the Plans), all

entities that are parties to or are subject to the settlements, compromises, releases, and

injunctions described in the Plans, and any and all non-Debtor parties to the Executory Contracts

and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or

compromised, as applicable, pursuant to the Plans regardless of whether any holder of a Claim or

debt has voted on the Plans.

67.    Dissolution of Committee; Termination of Professionals.  On the Effective Date,

with respect to the RCS Plan, the Committee shall dissolve and all members, employees, or

01:18705316.1

agents thereof, shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases and, with respect to the Plans, the engagement of each Professional retained by the Debtors and the Committee under the RCS Plan shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, (a) each Professional shall be entitled to prosecute its respective Professional Fee Claims and represent its respective constituents with respect to applications for payment of such Professional Fee Claims, and (b) nothing in the Plans shall prevent the Reorganized Debtors or the Creditor Trust from retaining any such professional on or after the Effective Date, which retention shall not require Bankruptcy Court approval.

68.    No Change in Ownership or Control.  Consummation of the Plans is not intended to and shall not constitute a change in ownership or change in control, as defined in any employment or other agreement or plan in effect on the Effective Date to which a Debtor is a party.

69.    Unenforceable Contracts.  Notwithstanding anything to the contrary in the Plans, no provision in any contract, agreement or other document with the Debtors that is rendered unenforceable against the Debtors, the Reorganized Debtors, or the Creditor Trust pursuant to sections 541(c), 363(l) or 365(e)(1) of the Bankruptcy Code, or any analogous decisional law, shall be enforceable against the Debtors, the Reorganized Debtors, or the Creditor Trust as a result of the Plans.

70.    Injunction Regarding Worthless Stock Deductions.  The injunctions set forth in Section 13.5 of the RCS Plan are approved and are deemed incorporated herein by reference.

71.    Preservation of Documents Under the Plans.  Notwithstanding anything to the contrary in the Plans or in this Confirmation Order, the Debtors, the Reorganized Debtors, and/or

01:18705316.1

any transferee of their books and records (including books, records, documents, files, electronic data in whatever format (including native format), and tangible objects) relevant or potentially relevant to the Securities Litigation (collectively, "**Books and Records**") shall preserve and maintain such Books and Records in a manner consistent with the applicable provisions of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u(b)(3)(C), and Federal Rules of Civil Procedure 26 and 34 as if the Debtors or the Reorganized Debtors, as applicable, were parties to the Securities Litigation and subject to a continuing request for the production of documents with respect thereto, until the earlier to occur of (a) entry of a final and nonappealable order of judgment or settlement with respect to all defendants in the Securities Litigation and (b) entry of an order of the Bankruptcy Court or the court in which the Securities Litigation is pending authorizing the destruction of certain Books and Records.  Any motion seeking the order referenced in subparagraph 13.6(b) of the RCS Plan shall be on reasonable notice to counsel of record for all plaintiffs and defendants in the Securities Litigation with an opportunity to be heard.  Notwithstanding anything to the contrary in the Plans or in this Confirmation Order, nothing in the Plans or this Confirmation Order shall affect the obligations of the Debtors, the Reorganized Debtors, and/or any transferee or custodian to maintain all books and records that are subject to any governmental subpoena, document preservation letter or other investigative request.

72.    Governing Law.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plans or the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plans shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.  To the extent a rule of law or procedure is

01:18705316.1

supplied by federal bankruptcy law, the Bankruptcy Code, the Bankruptcy Rules, and the

decisions and standards of the United States Supreme Court, the United States Court of Appeals

for the Third Circuit, the United States District Court for the District of Delaware, and the

Bankruptcy Court, as applicable, shall govern and control.

73.     Time. In computing any period of time prescribed or allowed by the Plans, unless

otherwise set forth in the Plans or determined by the Bankruptcy Court, the provisions of

Bankruptcy Rule 9006 shall apply.

74.     Binding Effect. The Plans shall be binding on and inure to the benefit of the

Debtors, the holders of Claims and Interests, and each of their respective successors and assigns,

including, without limitation, the Reorganized Debtors or the Creditor Trust, and all other parties

in interest in the Chapter 11 Cases. The rights, benefits, and obligations of any entity named or

referred to in the Plans or this Confirmation Order shall be binding on, and shall inure to the

benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director,

manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each entity.

75.     Reservation of Rights. Except as expressly set forth in the Plans, the Plans shall

have no force or effect until the Bankruptcy Court has entered this Confirmation Order and the

Effective Date has occurred. Neither the Plans, any statement or provision contained in the

Plans, nor any action taken or not taken by any Debtor with respect to the Plans, the RCS

Disclosure Statement, the RCS Disclosure Statement Supplement, the Cetera Disclosure

Statement, this Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an

admission or waiver of any rights of the Debtors, the First Lien Agent, the Second Lien Agent,

Luxor, the Committee (under the RCS Plan), or the Required Consenting Lenders with respect to

the holders of Claims or Interests prior to the Effective Date.

01:18705316.1

97

76.    <u>Confirmation Order and Plans Control</u>.  To the extent this Confirmation Order is inconsistent with the Plans or any Definitive Document, this Confirmation Order shall control over the Plans and any such Definitive Document for all purposes.  To the extent the RCS Plan is inconsistent with the RCS Disclosure Statement or the RCS Disclosure Statement Supplement, the RCS Plan shall control over the RCS Disclosure Statement or the RCS Disclosure Statement Supplement for all purposes.  To the extent the Cetera Prepackaged Plan is inconsistent with the Cetera Disclosure Statement, the Cetera Prepackaged Plan shall control over the Cetera Disclosure Statement for all purposes.  To the extent the Plans are inconsistent with any other Definitive Document other than the Plans, the RCS Disclosure Statement, the RCS Disclosure Statement Supplement and the Cetera Disclosure Statement (the "**Other Definitive Documents**"), the Plans shall control for all purposes; it being understood that to the extent there is additional language in the Other Definitive Documents that is not in the Plans, such additional language does not create an inconsistency.

77.    <u>Plan Supplement</u>.  Each document that comprises the Plan Supplement is part of the Plans and is hereby approved.  On or prior to the Effective Date, but subject to the occurrence of the Effective Date, the Debtors are hereby authorized to execute and deliver each of the documents that comprises the Plan Supplement, in substantially the respective forms included in the Plan Supplement, including such changes thereto as are consistent with the Plans and the approval standards set forth therein, without the need for any further corporate or shareholder action.  Each of the documents that comprises the Plan Supplement, once executed, shall constitute a legal, valid binding and authorized obligation of the respective parties thereto, enforceable in accordance with its terms (except as enforceability may be limited by any

bankruptcy or insolvency proceeding filed by any party thereto subsequent to the date of the execution of such document).

78.     Authorizations.  Any action under the Plans or this Confirmation Order to be taken by, or required of, the Debtors or the Reorganized Debtors, including, without limitation, the adoption or amendment of certificates of incorporation, by-laws, limited liability company agreements or limited partnership agreements, the issuance of securities and instruments, or the selection of officers or directors, shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors' or Reorganized Debtors' boards of directors or managers, as applicable, or security holders.

79.     Payment of U.S. Trustee Fees.  On the Effective Date, and thereafter as may be required, the Reorganized Debtors shall pay all U.S. Trustee Fees in an amount agreed to by the U.S. Trustee or ordered by the Bankruptcy Court.  Any U.S. Trustee Fees due thereafter shall be paid by the Reorganized Debtors in the ordinary course, in an amount agreed to by the U.S. Trustee or ordered by the Bankruptcy Court, until the earlier of the entry of a final decree closing the applicable Chapter 11 Case, or a Bankruptcy Court order converting or dismissing the applicable Chapter 11 Case.  Any deadline for filing Administrative Claims or Professional Fee Claims shall not apply to claims for U.S. Trustee Fees.

80.     Professional Fee Claims.  The holders of Professional Fee Claims shall file their respective final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred from and after the respective Petition Dates through the Effective Date by no later than the date that is forty-five (45) days after the Effective Date, or such other date that may be fixed by the Bankruptcy Court.  Allowed Professional Fee Claims shall be paid in full in Cash by the Reorganized Debtors either (a) within five (5) Business Days

01:18705316.1

of the date such Professional Fee Claim is approved by a Final Order issued by the Bankruptcy

Court, or (b) upon such other terms as may be mutually agreed upon by such holder of an

Allowed Professional Fee Claim and the Reorganized Debtors.  Professionals shall not be

required to seek Bankruptcy Court approval of any fees and expenses incurred after the Effective

Date in connection with the Debtors, Reorganized Debtors or the Chapter 11 Cases.  Failure to

file a final fee application by the deadline set forth above shall result in the relevant Professional

Fee Claim being forever barred and disallowed.  Objections to any Professional Fee Claim must

be filed and served on the Reorganized Debtors and the requesting party no later than sixty-five

(65) days after the Effective Date or such other date as established by the Bankruptcy Court.  For

the avoidance of doubt, the fees and expenses incurred by the professionals and advisors to the

DIP Agent, the First Lien Agent, the Second Lien Agent, the Required Consenting Lenders, and

Luxor shall be paid pursuant to the terms of the DIP Order and/or RSA, and such parties shall

not be required to file an application for allowance of such fees and expenses.

      81.    <u>Payment of Certain Fees and Expenses</u>.  Notwithstanding any provision in the

Plans to the contrary, on the Effective Date or as soon thereafter as agreed to by the Debtors and

the Required Consenting Lenders, the Debtors or the Reorganized Debtors, as applicable, shall

promptly pay in full in Cash (i) the reasonable fees and out-of-pocket expenses incurred by the

First Lien Agent, including payment of the accrued, unpaid reasonable, invoiced fees and out-of-

pocket expenses of Shearman & Sterling LLP and Richards, Layton & Finger, P.A., (ii) the

reasonable fees and out-of-pocket expenses incurred by the Required Consenting First Lien

Lenders, including payment of the accrued, unpaid reasonable, invoiced fees and out-of-pocket

expenses of Jones Day, Houlihan Lokey, Inc. and Morris, Nichols, Arsht & Tunnell LLP,

(iii) the reasonable fees and out-of-pocket expenses incurred by the Second Lien Agent,

including payment of the accrued, unpaid reasonable, invoiced fees and out-of-pocket expenses

of Covington & Burling LLP and Fox Rothschild LLP, (iv) the reasonable fees and out-of-pocket

expenses incurred by the Required Consenting Second Lien Lenders, including payment of the

accrued, unpaid reasonable, invoiced fees and out-of-pocket expenses of Davis Polk & Wardwell

LLP, GLC Advisors & Co., LLC and Landis Rath & Cobb LLP, (v) the reasonable fees and out-

of-pocket expenses incurred by Luxor, including payment of the accrued, unpaid reasonable,

invoiced fees and out-of-pocket expenses of Kramer Levin Naftalis & Frankel LLP and Ashby &

Gedes, P.A., (vi) the reasonable fees and out-of-pocket expenses incurred by the Convertible

Notes Indenture Trustee, including payment of the accrued, unpaid reasonable, invoiced fees and

out-of-pocket expenses of Pryor Cashman LLP and Sullivan Hazeltine Allinson LLC, (vii) the

reasonable fees and out-of-pocket expenses incurred by each of the foregoing parties' respective

Affiliates, and (viii) to the extent allowable by law, the accrued, unpaid fees and out-of-pocket

expenses of counsel for each Committee member not otherwise provided for herein, in each case,

(i) in connection with the preparation, negotiation, and documentation evidencing and relating to

the restructuring of the Debtors pursuant to the Plans, and (ii) without the need of such parties to

file fee applications with the Bankruptcy Court; provided that each party and its counsel shall

provide the Debtors' counsel with summary invoices (redacted for any potentially privileged

material) (or such other documentation as the Debtors may reasonably request) for which it seeks

payment on a monthly basis and provided that the Debtors have no objection to such fees, such

fees shall be paid within five (5) Business Days of receipt of such invoices.  To the extent that

the Debtors object to any of the fees and expenses of the parties listed in (i)-(viii) above, the

Debtors shall not be required to pay any disputed portion of such fees and expenses until a

resolution of such objection is agreed to by the Debtors and such party, balance paid or an order

of the Bankruptcy Court upon a motion by such party.

82.    Conditions to Effective Date.  The Plans shall not become effective unless and

until the conditions set forth in Section 9.2 of the Plans are satisfied or waived pursuant to

Section 9.4 of each Plan.

83.    Substantial Consummation.  On the Effective Date, the Plans shall be deemed to

be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

84.    Notice of Confirmation of the Plans and the Occurrence of the Effective Date.

The Debtors or the Reorganized Debtors are directed to serve a notice of the entry of this

Confirmation Order and the occurrence of the Effective Date, substantially in the form annexed

hereto as Exhibit C, which is hereby approved (the "**Effective Date Notice**"), on all parties that

they have served with notice of the Confirmation Hearing no later than ten (10) days after the

Effective Date; provided, however, that the Debtors or the Reorganized Debtors shall be

obligated to serve the Effective Date Notice only on the record holders of Claims or Interests as

of the Distribution Record Date.  As soon as practicable after the entry of this Confirmation

Order, the Debtors shall make copies of this Confirmation Order available on their

reorganization website http://cases.primeclerk.com/RCSCapital.  Service of the Effective Date

Notice as provided herein shall constitute good and sufficient notice pursuant to Bankruptcy

Rules 2002 and 3020(e) of the entry of this Confirmation Order and the occurrence of the

Effective Date and no other or further notice need be given.

85.    Headings.  The headings contained within this Confirmation Order are used for

the convenience of the parties and shall not alter or affect the meaning of the text of this

Confirmation Order.

01:18705316.1

86.     _Final Order_.  The 14-day stay of this Confirmation Order, as set forth in

Bankruptcy Rule 3020(e), is hereby waived, and this Confirmation Order shall be effective and

enforceable immediately upon its entry by the Bankruptcy Court.

Dated: May 19 , 2016
      Wilmington, Delaware

                              Mary F. Walrath
                              United States Bankruptcy Judge